# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE ELLEN WARTLUFT, et al.,** | : | Civil No. 1:16-CV-2145 |
| **Plaintiffs** | : | **(Chief Judge Conner)** |
| | : | **(Magistrate Judge Carlson)** |
| v. | : | |
| **THE MILTON HERSHEY SCHOOL AND SCHOOL TRUST, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

This case comes before us for consideration of a motion to compel filed by the defendant, Milton Hershey School, that seeks to compel a non-party Rule 30(b)(6) deponent, an advocacy group known as Protect Hershey's Children, Inc., (PHC) to designate a proper and fully informed witness to testify regarding the factual basis for certain allegations and claims made by PHC, allegations and claims which now form part of the foundation for this lawsuit. (Doc. 60.) While the motion raises discrete discovery issues in the context of a lawsuit brought by Julie Ellen Wartluft and Frederick Bartels in the wake of the death of their daughter who was a student at the Milton Hershey School, the parties' briefs and arguments

reveal that the particular discovery dispute is part of a longstanding and intractable conflict between the Milton Hershey School and PHC. This conflict has spanned years and is marked by competing accusations, mutual recriminations and shared, profound, and unshakeable suspicions. For its part, the Milton Hershey School apparently views PHC, and its President, an attorney named Ric Fouad, as unscrupulous provocateurs, who disseminate baseless allegations against the Milton Hershey School, and then instigate grieving families to file meritless lawsuits in pursuit of their ideological goals. PHC and Fouad, in turn, identify themselves as public spirited whistle-blowers, who believe that they are the victims of a campaign of harassment, oppression and unwarranted calumny orchestrated by a multi-billion dollar corporate monolith.

As they litigate this narrow discovery dispute each of these protagonists invites us to adopt their characterization of this on-going, and intractable conflict, and rule upon this motion through the prism of their very different perspectives regarding the broader motives and motivations they ascribe to one another. We will decline this invitation to foray deeply into the longstanding and mutual grudges that divide PHC and the Milton Hershey School. Instead, we choose to simply address the two specific legal questions raised by this motion to compel; namely: First, did PHC fail to properly designate an informed corporate official as a Rule 30(b)(6) deponent to respond to Milton Hershey's inquiries into the factual basis of

that organization's allegations which form part of the foundation for this lawsuit? Second, should PHC now be compelled to re-designate a fully informed corporate Rule 30(b)(6) deponent to answer these questions?

For the reasons set forth below we answer these two questions, yes and yes, and therefore will grant this motion to compel, in part.

## II. Factual Background

On June 29, 2016, the plaintiffs, Julie Ellen Wartluft and Frederick Bartels, acting individually and on behalf of the estate of their deceased daughter, filed this lawsuit against the Milton Hershey School and the Hershey Trust. (Doc. 1.) This lawsuit arose out of a singular tragedy, the suicide of the plaintiffs' 14 year-old daughter in June of 2013, at about the time of her expulsion from the Milton Hershey School, following two episodes of hospitalization for severe depression. (Id.) The plaintiffs alleged that this suicide was a result of unlawful discriminatory practices by the defendants, and specifically alleged that the Milton Hershey School had a two-hospitalization policy which led to the expulsion of emotionally fragile students once those students underwent two hospitalizations for mental illness. These allegations formed one of the legal and factual pillars for this lawsuit. (Id.)

The deposition of the plaintiff, Julie Ellen Wartluft, revealed that the primary basis for these allegations by Wartluft was information that was publicly

disseminated by Protect Hershey's Children, Inc., (PHC), a non-profit corporation which engages in public education and advocacy aimed at highlighting what it believes to be malfeasance, misfeasance, and nonfeasance at the Milton Hershey School. PHC is a non-profit corporation, whose President is Ric Fouad, an attorney. According to the initial Rule 30(b)(6) deponent offered by PHC in this lawsuit, Fouad is also the principal author of many of the white papers, reports, and statements issued publicly by PHC, statements which describe and decry the alleged practices at the Milton Hershey School, including this alleged two-hospitalization expulsion policy which the plaintiffs allege led to their daughter's suicide.

With Julie Ellen Wartluft having identified statements issued by PHC as the source and basis for many of the allegations contained in her complaint, the factual underpinning for these allegations has now become a relevant issue in this lawsuit. In an effort to explore the factual basis for PHC's statements concerning these alleged practices, the Milton Hershey School served subpoenas on Fouad individually,[1] and a Rule 30(b)(6) subpoena upon PHC which called for a

---

[1] For their part, Fouad and PHC invite us to engage in an extensive consideration of proceedings in federal court in the Southern District of New York relating to subpoenas issued to him personally, arguing that these proceedings reveal the Milton Hershey's School's bad faith since the issuance of a Rule 30(b)(6) deponent subpoena somehow in Fouad's and PHC's views conflicts with the rulings made by other courts on the subpoenas served upon Fouad in his individual capacity. Just has we have declined to embrace the Milton Hershey School's characterization of

knowledgeable corporate designee to appear and testify regarding matters relevant to this lawsuit.

Appended to this Rule 30(b)(6) non-party corporate deposition subpoena was a notice which detailed some 19 specific subject matter areas into which the Milton Hershey School wished to inquire. (Doc. 60, Ex. 5.) This listing enumerated a number of matters relating to the plaintiffs, their daughter, her death, Fouad, PHC, and its involvement by disseminating information relating to this incident. (Id.) In our view this notice was sufficient to place PHC on notice that the Milton Hershey School wished to question a knowledgeable corporate deponent on those factual matters averred by the plaintiffs which were allegedly derived from PHC's own investigations, reports and white papers, all of which had been broadly disseminated by that organization as part of its advocacy mission. This subpoena was issued on June 20, 2017, and the Rule 30(b)(6) deposition of PHC's designated corporate deponent took place three weeks later, on July 13, 2017. (Doc. 60, Ex. 6.)

At that time, PHC presented Michael Kronenberg, a member of the PHC board, and its newly appointed treasurer as the Rule 30(b)(6) deponent. (Id.)

---

Fouad's motives, we will decline the invitation of PHC to have us infer a nefarious motive from this litigation of other subpoenas in other courts. Suffice it to say that in our view no ruling by those courts limits us in our consideration of this motion, a matter that the New York courts seem to have recognized fell within our jurisdiction.

Given the apparent focus of the deposition, which sought to examine the factual underpinning for various statements publicly disseminated by PHC relating to the June 2013 death of the plaintiffs' daughter, and how Milton Hershey School policies may have contributed to that death, Kronenberg was a curious choice as a Rule 30(b)(6) deponent for several reasons.

First, Kronenberg had only become a member of PHC in May of 2013 or 2014, and did not join the board of this organization until late 2015. (Doc. 60, Ex. 6, pp. 66, 72.) Thus, Kronenberg's participation in the governance of this organization began years after the events set forth in this lawsuit. Moreover, in the course of this deposition it became abundantly clear that as a corporate deponent Kronenberg completely lacked any knowledge regarding the factual basis for the assertions and allegations made by PHC that related to the matters encompassed in this lawsuit.

In addition to being an ill-suited corporate designee, it was apparent that Kronenberg was ill-prepared to perform this function. According to Kronenberg's testimony at this deposition, he had learned of his proposed role in this litigation only a few days before the scheduled deposition. Further, the counsel who was retained to represent Kronenberg in this matter was also retained shortly before the deposition itself. Even more troubling, it appeared that Kronenberg was singularly uninformed regarding what he would be expected to testify to on behalf of PHC,

6

and had only reviewed the Rule 30(b)(6) deposition notice immediately prior to the deposition itself. (Id. at 15:3-22.)

During the course of this deposition, these shortcomings were cast in sharp relief as the Milton Hershey School sought information concerning the factual basis for a host of representations publicly disseminated by PHC, representations which formed many of the legal and factual grounds for the plaintiffs' complaint. In response to these inquiries, Kronenberg was repeatedly compelled to disclaim any knowledge of these factual matters reported by PHC. (Id. at 62:8-9, 62:23, 64:11, 79:3, 79:7, 81:15, 84:19-22, 114:24-115:3, 156:15, 193:13-17, 204:8, 207:4, 214:5-9, 215:4-5, 215:11, 215:18, 219:23-220:2, 222:16, 222:19, 222:22, 223:1, 223:4, 223:7, 255:5-6, 264:18, 281:2, 285:17.) Kronenberg's lack of personal knowledge regarding these relevant matters in the instant lawsuit was coupled with repeated assertions that PHC's President, Ric Fouad, was the source of this information, the author of these reports, and the corporate officer with personal knowledge of the matters which were the subject of the Milton Hershey School's inquiries. (Id. at 141:21-23, 147:3-6, 148:7-12, 154:17-18, 157:8-11, 162:16-18, 180:3-10, 184:4-6, 191:11-13, 192:13-18, 193:10-21, 201:4-5, 202:22-23, 214:5-9.) Indeed, according to Kronenberg, Fouad was the author of these documents and was responsible for the public postings and dissemination of this information on behalf of PHC. (Id., at 138:9-139:21, 141:21-23, 229:18-233:16.) Moreover,

7

notably, Kronenberg testified as PHC's corporate designee that, while Fouad was an attorney, Fouad's dissemination of this information was done "for PHC, not [in] his capacity as an attorney." (Id. at 26:23-24.)

It is in the wake of this Rule 30(b)(6) non-party corporate designee deposition, that the Milton Hershey School filed this motion to compel which sought multi-facetted relief in the form of an order "compel[ling] PHC to designate F. Frederic Fouad to appear as PHC's 30(b)(6) corporate designee and testify on the topics previously delineated in the Notice of Deposition, and sanction Protect the Hershey's Children, Inc., F. Frederic Fouad, Royer Cooper Cohen Braundfeld, LLC, and Alexander J. Nassar, Esq, ordering them to pay the costs and fees associated with this filing,, as well as Defendants' costs and fees associated with the July 13, 2017 deposition of Protect the Hershey's Children, Inc.'s inadequate Rule 30(b)(6) witness." (Doc. 60, p. 19.) This motion has been fully-briefed, (Docs. 60, 61, 70-72, 79, 80, 85 and 86), and is therefore ripe for resolution.

For the reasons set forth below this motion will be granted in part, as follows: Finding that PHC has not previously designated an adequate corporate designee deponent pursuant to Rule 30(b)(6), PHC will be ordered to re-designate an appropriate Rule 30(b)(6) deponent within 20 days, and the parties shall schedule a mutually convenient place, date and time for this deposition within the next 45 days. The defendant's request for further sanctions will be deferred

pending completion of this deposition, since the nature of PHC's compliance with this order will greatly inform the court's determination regarding whether further sanctions are necessary or appropriate in this matter.

**III. Discussion**

Several basic guiding principles inform our resolution of the instant motion to compel. At the outset, rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under

abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

Although the scope of discovery is to be interpreted broadly, it "is not without limits." Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 149 (M.D. Pa. 2017) (quoting Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996)). Federal Rule of Civil Procedure 26(b)(1), as amended, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). In determining "the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings." Trask v. Olin Corp., 298 F.R.D. 244, 263 (W.D. Pa. 2014). Furthermore, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Thus, "all relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is

discoverable, however, is defeasible." Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009). Likewise, "[i]n deciding whether a federal privilege against discovery exists, plaintiffs as the objecting party have the burden of establishing the privilege." Bayges v. Se. Pennsylvania Transp. Auth., 144 F.R.D. 269, 271 (E.D. Pa. 1992). Indeed, because the assertion of a claim of privilege "may result in the withholding of relevant information and so may obstruct the search for truth," In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011), it is well-established that, " 'The burden of proving that the . . . privilege applies is placed upon the party asserting the privilege.' United States v. Landof, 591 F.2d 36, 38 (9th Cir. 1978)." Matter of Grand Jury Empanelled February 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979).

In this case we are called upon to examine a motion to compel brought in the context of a deposition of a corporate designee. Such depositions are governed by Rule 30(b)(6) of the Federal Rules of Civil Procedure, which provides as follows:

> **(6)** *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6).

By its terms Rule 30(b)(6) requires the party issuing a corporate designee subpoena to "describe with reasonable particularity the matters for examination." Id. However, this aspect of Rule 30(b)(6) requiring the party noticing deposition of a corporate designee to "describe with reasonable particularity the matters on which the examination is requested" does not limit the scope of the deposition to the contents of the notice. Instead, Rule 26's definition of relevance is what defines the proper scope of such a deposition. Cabot Corp. v. Yamulla Enterprises, Inc., 194 F.R.D. 499 (M.D. Pa. 2000). Thus, "[t]he scope of topics a 30(b)(6) witness can be expected to testify to is defined by Rule 26(b)(1), which allows a party to

12

obtain information concerning 'any matter, not privileged, which is relevant to the subject matter involved in the pending action.' " New Jersey Dep't of Envtl. Prot. v. Am. Thermoplastics Corp., No. 98CV4781WHWCLW, 2017 WL 498710, at *3 (D.N.J. Feb. 7, 2017).

Case law construing Rule 30(b)(6) also prescribes certain substantive standards of knowledge and responsiveness that a corporate deposition designee must satisfy. On this score it is important to note that:

> A Rule 30(b)(6) designee "is not simply testifying about matters within his or her personal knowledge, but rather is speaking for the corporation about matters to which the corporation has reasonable access." Linerboard, 237 F.R.D. at 382 (quotation omitted). Therefore, a corollary to the corporation's duty to designate a Rule 30(b)(6) witness is that the corporation must "prepare its designee to be able to give binding answers on its behalf ... [and] perform a reasonable inquiry for information" that is noticed and reasonably available to it. Id. (quotation omitted).

State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 216 (E.D. Pa. 2008).

Thus, when presented with a motion to compel relating to what is alleged to have been an uninformed and uninformative corporate deposition designees we are reminded to apply:

> Rule 37(d) pragmatically in light of the purposes of Rule 30(b)(6) and the parties' obligations thereunder. See, e.g., Starlight Int'l Inc. v.

Herlihy, 186 F.R.D. 626, 639 (D.Kan.1999) ("Corporations, partnerships, and joint ventures have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter."); The Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D.N.Y.1997) (" 'Producing an unprepared witness is tantamount to a failure to appear.' ") (quoting United States v. Taylor, 166 F.R.D. 356, 363 (M.D.N.C.1996)); Taylor, 166 F.R.D. at 363 ("[I]nadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings."); Zappia Middle East Constr. Co. v. The Emirate of Abu Dhabi, No. 94 CIV. 1942, 1995 WL 686715, at *8 (S.D.N.Y. Nov. 17, 1995) (agreeing with rule announced in Southern Union that providing a wholly inadequate witness may amount to non-appearance under Rule 30(b)(6), but finding that sanctions were not warranted in the circumstances of that case); Municipal Subdistrict, Northern Colo. Water Conservancy District v. OXY USA, Inc., 990 P.2d 701, 710 (Colo.1999) (en banc) (following Southern Union, 985 F.2d at 197, and holding that trial court may issue sanctions for failure to appear under Col.R.Civ.P. 37(d)—the state's analogue to Fed.R.Civ.P. 37(d)—when a corporation designates a deponent who appears but is unable to answer all the questions specified in the Col.R.Civ.P. 30(b)(6) notice); see also, e.g., Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 78–79 (S.D.N.Y.1991) ("[A] party that fails to provide witnesses knowledgeable in the areas requested in a Rule 30(b)(6) notice is likewise subject to sanctions."); Thomas v. Hoffmann–LaRoche, Inc., 126 F.R.D. 522, 525 (N.D.Miss.1989) ("Sanctions are appropriate when a party fails to comply with a request under Rule 30(b)(6) to provide a knowledgeable deponent to testify on behalf of the organization."); see generally Boland Marine & Mfg. Co. v. M/V Bright Field, No. 97–3097, 1999 WL 280451, at *3 (E.D.La. May 3, 1999) (acknowledging the rule announced in *Southern Union* but finding that deponent was prepared adequately and that sanctions were not warranted).

Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 303–04 (3d Cir. 2000).

Embracing this pragmatic view, "[i]n reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it. Indeed, we believe that the purpose behind Rule 30(b)(6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf." Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 304 (3d Cir. 2000). When this occurs and a corporation presents an inadequate and unprepared corporate deposition designee, the court has broad discretion in framing a remedy for a violation of Rile 30(b)(6)'s obligation to provide an informed corporate designee, and may in the exercise of that discretion order the corporation to produce another fully informed and appropriately prepared designee. State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 223 (E.D. Pa. 2008).

Judged against these legal guideposts we have little difficulty in finding at the outset that Milton Hershey's inquiries into the factual basis of PHC's allegations which form part of the foundation for this lawsuit was a relevant, proper line of inquiry. Indeed, Julie Ellen Wartluft had testified that PHC's reports and public statements formed the basis for a number of her claims. Given this acknowledgement by the plaintiff that she based her claims on PHC public

15

reporting, the evidentiary underpinning for that reporting was plainly relevant to this lawsuit.

We also conclude that PHC had adequate notice that this field would be a topic of questioning for its corporate designee. This Rule 30(b)(6) non-party corporate deposition subpoena served upon PHC was accompanied by a notice which detailed some 19 specific subject matter areas into which the Milton Hershey School wished to inquire. (Doc. 60, Ex. 5.) This listing enumerated a number of matters relating to the plaintiffs, their daughter, her death, Fouad, PHC, and its involvement by disseminating information relating to this incident. (Id.) Thus, Milton Hershey's subpoena fully satisfied the dual requirements of relevance under Rule 26 and notice under Rule 30(b)(6).

We also are constrained to conclude that PHC's corporate deponent designation in this case was woefully inadequate. In this regard, we do not individually fault Mr. Kronenberg, who agreed on short notice to serve as this corporate deponent. The fact remains, however, that Kronenberg was ill-suited and wholly unprepared to undertake the task set before him. He had not served on the board of PHC at the time of the events set forth in this lawsuit. He was completely unprepared for this deposition and had in fact only reviewed the notice prepared by Milton Hershey detailing the topics upon which he needed to be prepared to testify

at the time of the deposition itself. Further, he was completely unfamiliar with the factual basis for the reports, white papers and other public pronouncements made by PHC relating to the issues in this case, since those documents were prepared and posted by Mr. Fouad. Thus, as to these matters of critical evidentiary relevance in this case, Mr. Kronenberg was repeatedly left to assert that he did not know what the facts were, but that Ric Fouad would be fully conversant about those factual matters. Therefore, our review of this deposition of Mr. Kronenberg leaves us convinced that "[i]n reality [this] Rule 30(b)(6) witness [wa]s unable to give useful information [and] he [was]s no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it. [Having made these findings] we believe that the purpose behind Rule 30(b)(6) undoubtedly [wa]s frustrated in th[is] situation in which a corporate party produces a witness who is unable . . . to provide the necessary factual information on the entity's behalf." Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 304 (3d Cir. 2000).

Having reached these conclusions we find that an order directing PHC to produce another fully informed and appropriately prepared designee is appropriate here. State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 223 (E.D. Pa. 2008). In its motion Milton Hershey School invites us to specifically direct that Ric Fouad sit for this Rule 30(b)(6) deposition. We will decline this

request because we read Rule 30(b)(6) as providing that "*the named organization must then designate one or more officers*" to serve as the deponent. Fed. R. Civ. P. 30(b)(6)(emphasis added.) Yet while we decline to specifically order the appearance of Mr. Fouad as this Rule 30(b)(6) deponent, PHC and its counsel should remain mindful of the fact "the corporation must 'prepare its designee to be able to give binding answers on its behalf ... [and] perform a reasonable inquiry for information' that is noticed and reasonably available to it." State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 216 (E.D. Pa. 2008). As PHC, Fouad and PHC's counsel undertakes this important legal and ethical obligation they should recognize that PHC's prior corporate designee, Mr. Kronenberg, has plainly and repeatedly stated under oath that Mr. Fouad, as the President of PHC, would be the sole and exclusive repository of the information which Milton Hershey School seeks in this deposition. PHC, Mr. Fouad and his counsel should also keep in mind that the testimony of Mr. Kronenberg, on its face, seems to undermine any sweeping claim of privilege regarding the factual underpinning for the public pronouncements made by Mr. Fouad on behalf of PHC since Mr. Kronenberg has testified that Fouad's dissemination of this information was done "for PHC, not [in] his capacity as an attorney." ( Doc. 60, Ex. 6 at 26:23-24.) Given this factual background, while we believe that Rule 30(b)(6) permits PHC to choose its own corporate deposition designee, we are compelled to note that PHC

acts at its legal peril if it elects to discount the testimony of its first corporate deponent and produce someone other than Mr. Fouad to serve in this capacity.

Finally, we note that in its motion Milton Hershey asks that we also "sanction Protect the Hershey's Children, Inc., F. Frederic Fouad, Royer Cooper Cohen Braundfeld, LLC, and Alexander J. Nassar, Esq, ordering them to pay the costs and fees associated with this filing,, as well as Defendants' costs and fees associated with the July 13, 2017 deposition of Protect the Hershey's Children, Inc.'s inadequate Rule 30(b) (6) witness." (Doc. 60, p.19.) We will defer ruling upon this request at this time. In our view, many factors may have contributed to the missteps which led to the presentation of an inadequate corporate deposition designee in this case. However, having now clearly outlined our expectations in the future, we believe that it is appropriate to defer any action on this aspect of the defendant's motion to compel, since the course of this discovery moving forward will greatly inform whether, and to what degree, any sanctions may be necessary or appropriate here.

An appropriate order follows.

### III. Order

For the foregoing reasons, the Defendants' Motion to Compel is GRANTED in part and DENIED in part as follows:

Finding that PHC has not previously designated an adequate corporate designee deponent pursuant to Rule 30(b) (6), PHC is ORDERED to re-designate an appropriate Rule 30(b)(6) deponent within 20 days.

IT IS FUTHER ORDERED that the parties shall schedule a mutually convenient place, date and time for this Rule 30(b)(6) deposition within the next 45 days.

Finally IT IS ORDERED that the defendant's request for further sanctions will be deferred pending completion of this deposition, since the nature of PHC's compliance with this order will greatly inform the court's determination regarding whether further sanctions are necessary or appropriate in this matter.

So ordered this 19th day of October, 2017.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge