# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE ELLEN WARTLUFT, et al.,** | : | Civil No. 1:16-CV-2145 |
| **Plaintiffs** | : | (Chief Judge Conner) |
| | : | (Magistrate Judge Carlson) |
| v. | : | |
| **THE MILTON HERSHEY SCHOOL AND SCHOOL TRUST, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM ORDER

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On June 29, 2016, the plaintiffs, Julie Ellen Wartluft and Frederick Bartels, acting individually and on behalf of the estate of their deceased daughter, filed this lawsuit against the Milton Hershey School and the Hershey Trust. (Doc. 1.) This lawsuit arose out of a singular tragedy, the suicide of the plaintiffs' 14 year old daughter in June of 2013, at about the time of her expulsion from the Milton Hershey School, following two episodes of hospitalization for severe depression. (Id.) The plaintiffs alleged that this suicide was a result of unlawful discriminatory practices by the defendants, and specifically alleged that the Milton Hershey School had a two-hospitalization policy which led to the expulsion of emotionally

fragile students once those students underwent two hospitalizations for mental illness. These allegations formed one of the legal and factual pillars for this lawsuit. (Id.)

This case now comes before us for consideration of a motion to compel production of documents filed by the defendant, Milton Hershey School, (Doc. 135), that seeks to compel production of what the plaintiff describes as communications with Ric Fouad, an attorney who is also the President of an advocacy group known as Protect Hershey's Children, Inc., (PHC). While the motion raises discrete discovery issues regarding the scope of the attorney-client privilege as it applies to specific documents in the context of a lawsuit brought by Julie Ellen Wartluft and Frederick Bartels in the wake of the death of their daughter who was a student at the Milton Hershey School, the parties' briefs and arguments range far beyond this narrow issue and plunge into a longstanding and intractable conflict between the Milton Hershey School and PHC. This conflict has spanned years and is marked by competing accusations, mutual recriminations and shared, profound, and unshakeable suspicions.

For its part, the Milton Hershey School apparently views PHC, and Fouad, as unscrupulous provocateurs, who disseminate baseless allegations against the Milton Hershey School, and then instigate grieving families to file meritless lawsuits in pursuit of their ideological goals. In the view of the Milton Hershey

2

School, Fouad opportunistically asserts his attorney status to frustrate legitimate discovery, while disclaiming the role of counsel to avoid the ethical constraints the role imposes when engaging unwarranted attacks upon the school. PHC and Fouad, in turn, identify themselves as public spirited whistle-blowers, who believe that they are the victims of a campaign of harassment, oppression and unwarranted calumny orchestrated by a multi-billion dollar corporate monolith. Moreover, while acknowledging the mantle of an investigative reformer, Fouad, an attorney, also cloaks himself as an unpaid *pro bono* legal advisor to various individuals who are allegedly wronged by the Milton Hershey School, including the plaintiffs. In that capacity Fouad and the plaintiffs insist that the assertion of privilege over certain contested documents is entirely appropriate.

As they litigate this, their latest discovery dispute, each of these protagonists invites us to adopt their characterization of this underlying, on-going, and intractable conflict, and rule upon this motion through the prism of their very different perspectives regarding the broader motives and motivations they ascribe to one another. As we have done in the past when considering other discovery dispute, we will decline this invitation to foray deeply into the longstanding and mutual grudges that divide PHC and the Milton Hershey School, and adopt either of the categorical characterizations made by the parties in this case regarding the motives and actions of the opposing party. Instead, following our review of the

3

parties' initial submissions (Docs. 144, 149, 150), we choose to address the legal question regarding whether the attorney-client or work-product privileges applies to particular documents in the fashion described by the Supreme Court which has stated that: "claims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion." United States v. Rockwell Int'l, 897 F.2d 1255, 1265 (3d Cir. 1990).

Toward that end IT IS ORDERED as follows:

1.  On or before **August 1, 2018**, the plaintiffs shall provide the court and opposing counsel with a comprehensive privilege log identifying all of the documents in its possession custody or control which are responsive to the defendants' discovery demands and motion to compel over which claims of privilege are being asserted.

2.  In addition, on or before **August 8, 2018**, the plaintiffs shall provide to the court, for its *in camera* inspection unredacted and redacted copies of all responsive documents which have been withheld so we may assess the claims of privilege in the manner prescribed by the Supreme Court "document by document, rather than as a single, blanket assertion." United States v. Rockwell Int'l, 897 F.2d 1255, 1265 (3d Cir. 1990). The court will then evaluate the individual claims of privilege.

So ordered this 12th day of July, 2018.

                                            */s/ Martin C. Carlson*
                                            Martin C. Carlson
                                            United States Magistrate Judge