# Elliott Greenleaf

A Professional Corporation
JARAD W. HANDELMAN, ESQUIRE
KYLE M. ELLIOTT, ESQUIRE
JWH@elliottgreenleaf.com
KME@elliottgreenleaf.com

925 Harvest Drive - Suite 300
Blue Bell, Pennsylvania 19422
Phone: (215) 977-1000 • Fax: (215) 977-1099
www.elliottgreenleaf.com

August 10, 2018

<u>Via ECF</u>

Magistrate Judge Martin C. Carlson
Ronald Reagan Federal Bldg. & U.S. Courthouse
228 Walnut Street
Harrisburg, PA 17108-0983
magistrate_judge_carlson@pamd.uscourts.gov

    Re:   *Julie Ellen Wartluft f/k/a Julie Ellen Bartels and Frederick L. Bartels, Jr., Individually and as Administrators of the Estate of Abrielle Kira Bartels, Deceased v. Milton Hershey School, et al.*
Civil Action No. 1:16-cv-2145-CCC (M.D. Pa.), (Carlson, J.)

Dear Judge Carlson:

We represent Defendants The Milton Hershey School ("MHS"), and The Hershey Trust Company, as Trustee of The Milton Hershey School Trust (collectively, "Defendants") in the above-referenced action filed by Plaintiffs Julie Ellen Wartluft f/k/a Julie Ellen Bartels and Frederick L. Bartels, Jr., Individually and as Administrators of the Estate of Abrielle Kira Bartels ("AB"), Deceased (collectively, "Plaintiffs").

Your Honor has previously conducted conferences with Defendants, Plaintiffs, and counsel for Protect the Hersheys' Children, Inc. ("PHC"), Jeffrey

Case 1:16-cv-02145-JEJ-MCC   Document 172   Filed 08/10/18   Page 2 of 13

Hon. Martin C. Carlson
August 10, 2018

Schreiber, Esq., concerning PHC's failure to comply with Defendants' December 13, 2017 document subpoena, with a return date of December 28, 2017.

On July 26, 2018, the Court entered an Order setting forth a briefing schedule concerning Request No. 17 of the subpoena. (Doc. 169.)

The **only** outstanding issue pertaining to PHC's failure to comply with the subpoena is Request No. 17, seeking:

> All documents relating to any drafts of PHC's writings and/or publications, including, but not limited to: (a) PHC's May 29, 2013 Open Letter to the Pennsylvania Attorney General, (b) PHC's Change.org petition concerning AB and/or Plaintiffs and/or Defendants, (c) PHC's November 11, 2014 Letter to the Department of Justice, (d) PHC's October 27, 2017 Open Letter to the Pennsylvania Attorney General, and (e) any other writings contained on PHC's website.

(Ex. "A", ¶ 17.)[1]

PHC has prominently featured all of these documents on the front page of PHC's website, (Ex. "N"), except for the October 27, 2017, letter to Attorney General Shapiro, which was disseminated via PHC's Facebook account. All of these discoverable materials are highly relevant to the factually disingenuous and legally unsupported theories of liability contrived by F. Frederic Fouad ("Fouad"),[2]

---

[1] Defendants are not moving to enforce ¶ 17(e) of the document subpoena, thereby further narrowing the materials subject to production.

[2] The Court is aware of PHC and its President, Fouad, through various filings in this action, including Defendants' Motion to Compel, the Introduction and Factual Background sections of which are incorporated herein by reference. *See, eg.* (Defs.' Mot. to Compel, Doc. 144 at 1-7.) In June 2018, Fouad improperly filed a New York state court summons against Elliott Greenleaf, P.C., Jarad W. Handelman, Esq., and various Milton Hershey Defendants.

Hon. Martin C. Carlson
August 10, 2018

PHC, and Plaintiffs, concerning the purported "facts" asserted by Plaintiffs attempting to hold Defendants liable.

PHC's November 11, 2014, letter to Attorney General Holder, PHC features AB, alleging that MHS discriminated against her based on depression – the same claim alleged here by Plaintiffs in the Amended Complaint. (Ex. "B", Nov. 11, 2014, Letter at 2-3.)

Likewise, PHC's Change.org petition asserts that AB "committed suicide after facing indefensible policies at the Milton Hershey School." This also mirrors the allegations in Plaintiffs' Amended Complaint. (Ex. "C", Change.org Petition.) Similarly, PHC's May 29, 2013, letter to Attorney General Kane, attacks MHS for "improper expulsions," (Ex. "D", May 29, 2013, Letter at 4), and "irrational enrollment practices[.]" (*Id.* at 11.)

Finally, PHC's October 27, 2017, letter to Attorney General Shapiro claims that MHS mistreated "children suffering from depression[,]" (Ex. "E", Oct. 27, 2017, Letter at 4), features the death of AB ("the last few years at MHS have seen the death[] of a 14-year old child (immediately after she was callously expelled)", (*id.* at 7)), cites a CNN segment on the *Anderson Cooper 360* program lobbied for and arranged by Fouad and Plaintiffs' counsel concerning AB's suicide, (*id.* at 8

---

Elliott Greenleaf and Attorney Handelman removed it to the United States District Court for the Southern District of New York, based on process issued from the United States District Court in the Middle District of Pennsylvania, *F. Frederic Fouad v. Milton Hershey School and School Trust, et al.*, No. 1:18-cv-05674-PAC (S.D.N.Y.), where it is pending before Judge Paul A. Crotty. Defendants will request transfer to the Middle District of Pennsylvania.

3

n.19), alleges that MHS is responsible for AB's death, stating that MHS caused "the tragic death of a 14-year-old MHS student . . . after she was cruelly mistreated by MHS administrators[,]" (*id.* at 15), and specifically discusses the alleged facts of this case, (*id.* at 16).

Thus, all of the documents sought in the narrowly tailored Request No. 17 will reveal the purported "factual" bases for these allegations contrived by Fouad and his PHC, and repeated by Plaintiffs' Amended Complaint as "facts." This discoverable information *will confirm the lack of any material support for these same allegations* and belie Plaintiffs' claims at trial (should Plaintiffs' claims somehow survive Summary Judgment).

In short, Defendants have already significantly narrowed the scope of the subpoena, including Request No. 17, which seeks highly relevant and discoverable material going to the crux of Plaintiffs' claims. Significantly, PHC failed to timely object to the subpoena. Regardless, had PHC timely objected (which it did not), any objection would have lacked merit. Accordingly, Defendants submit this Letter Brief seeking PHC's compliance with Request No. 17 of the subpoena.

I.  **STATEMENT OF FACTS**

    A.  **Factual Background.**

After PHC was served with the subpoena, on December 21, 2017, PHC's counsel requested a thirty-day extension of time to respond to the subpoena. (Ex.

"F".) Following the date of production in light of PHC's requested extension, on January 31, 2018, Defendants contacted PHC's counsel requesting the status of PHC's document production. (Ex. "G"). In response, on February 1, 2018, PHC for the first time contended (but did not attach a copy of) that it had already served **"blanket objections"** to the subpoena. (Ex. "H") (emphasis added). Defendants' counsel understood PHC to be referring to its December 21, 2017, letter (which would not have qualified as an objection, as that term is absent from the letter), the only correspondence that they had received concerning the subpoena.

Indeed, Defendants *had never previously seen, and were not served with, PHC's purported objections to the subpoena, until March 29, 2018*, (Ex. "L", PHC's Purported Dec. 28, 2017, Cover Letter and Objections), *after* Defendants were compelled to seek relief from the Court concerning the subpoena. Although all of PHC's previous correspondence was sent via email to Defendants, the purported December 28, 2017, cover letter addressed to defense counsel did not specify the means of transmittal, indicating that PHC's alleged "blanket objections" were purportedly sent via First Class U.S. Mail. Defendants *never received PHC's objections* at its Harrisburg office, or any other office.[4]

---

[4] To the extent that PHC's counsel contends that he was required to serve the objections via First Class U.S. Mail, there was nothing foreclosing him from also serving Defendants with an alleged copy via email, or any other type of service that would have generated a confirmation of delivery (i.e., Certified Mail Return Receipt Requested, Federal Express).

Hon. Martin C. Carlson
August 10, 2018

Significantly, these purported "blanket objections" also lack a certificate of service.

PHC's counsel cover letter further states that Fouad, Plaintiffs' attorneys, and Golkow Litigation Services ("Golkow") were served with PHC's objections via email with enclosures. Defendants' counsel confirmed with Golkow that it never received PHC's objections.

### B. Previous Court Memorandum Orders.

This Court has already found that PHC's allegations form part of the foundation of Plaintiffs' lawsuit, including the alleged "two-hospitalization rule." Indeed, on October 19, 2017, after PHC provided Michael Kronenberg ("Kronenberg"), a woefully deficient Federal Rule of Civil Procedure 30(b)(6) corporate representative, for a deposition, the Court found that PHC provided the "primary basis" for the purported "two-hospitalization rule" allegations in Plaintiffs' Amended Complaint. (Ex. "J", Doc. 95 at 3-4.) The Court further observed that Kronenberg identified Fouad is the "principal author" of the writings Defendants seek in Request No. 17. (*Id.* at 4.)

Moreover, on July 12, 2018, while directing Plaintiffs' counsel to produce materials for an *in camera* review pertaining to Fouad, the Court noted that Plaintiffs' "two-hospitalization rule" allegations form "one of the legal and factual pillars for this lawsuit." (Ex. "K", Doc. 164 at 1-2.)

## II. ARGUMENT

### A. PHC Has Waived Any Objections to the Subpoena By Failing to Timely Object.

Rule 45(d)(2)(B) provides that a party may serve an objection to a subpoena. Any such objection, however, "*must* be served *before the earlier* of the time specified for compliance or 14 days after the subpoena was served." Fed. R. Civ. P. 45(d)(2)(B) (emphasis added); *Barnes Found. v. Twp. of Lower Merion*, 1997 U.S. Dist. LEXIS 4444, at *10 (E.D. Pa. Apr. 4, 1997) ("a non-party served with a subpoena requesting the production of documents must serve any objection in writing to the requesting party's counsel within 14 days of service of the subpoena.").

Significantly, the time to object is construed "strictly" and if no objections are timely served, any objections "to the subpoena are waived." *Barnes Found.*, 1997 U.S. Dist. LEXIS 4444, at *10 (holding that untimely objections to subpoena were waived and noting that the 1991 amendment changing the objection period from 10 days to 14 days gives parties more time to respond, but also means the timeline must be construed "more strictly"); *see also United States v. Davison*, 2009 U.S. Dist. LEXIS 11655, at *4 (D. Colo. Jan. 27, 2009) (finding that objections served 15 days after service were "untimely, and . . . waived"); *Wang v. Hsu*, 919 F.2d 130, 131 (10th Cir. 1990); *Brogren v. Pohlad*, 1994 U.S. Dist. LEXIS 16244, at *1 (N.D. Ill. Nov. 10, 1994).

7

Hon. Martin C. Carlson
August 10, 2018

Here, the instant subpoena was served on December 13, 2017, and required compliance by December 28, 2017. (Ex. "A", Subp.; Ex. " L", J. Schreiber Mar. 29, 2018, Letter to J. Carlson admitting subpoena was served on Dec. 13, 2017.) Thus, Federal Rule of Civil Procedure 45(d)(2)(B) required that any objections to the subpoena "***must be served***" by December 27, 2017. Fed. R. Civ. P. 45(d)(2)(B) (emphasis added). However, PHC did not timely serve any purported objections, and Defendants did not receive any written objections from PHC until months after the compliance date when PHC provided a copy of the purported objections as an attachment to a letter to this Court on March 29, 2018. (Ex. "L".) Accordingly, any objections to the subpoena have been waived, and PHC must comply with Request No. 17. *Barnes Found.*, 1997 U.S. Dist. LEXIS 4444, at *10; *Davison*, 2009 U.S. Dist. LEXIS 11655, at *4; *Wang*, 919 F.2d at 131; *Brogren*, 1994 U.S. Dist. LEXIS 16244, at *1.

To the extent that PHC alleges that it served these objections on Defendants via regular mail on December 28, 2017, curiously, previous communications between Defendants' counsel and PHC's counsel has been via email, *except for PHC's purported objections*. The only communication that PHC did not send by email is the only communication that Defendants never received – the alleged

Hon. Martin C. Carlson
August 10, 2018

objections.[5] Moreover, Golkow, copied on PHC's alleged December 28, 2017, cover letter, confirmed that it was never served with PHC's purported objections.

Regardless, even if PHC did serve these objections on December 28, 2017, which it did not, PHC's improper "blanket objections" are nonetheless untimely and waived because PHC did not assert any objections within the fourteen-day period that expired on December 27, 2017, as proscribed by Rule 45(d)(2)(B) between service on December 13, 2017, and fifteen days later on the December 28, 2017, return date. *Davison*, 2009 U.S. Dist. LEXIS 11655, at *4 (finding that objections served fifteen days after service were "untimely, and . . . waived"); *Barnes Found.*, 1997 U.S. Dist. LEXIS 4444, at *10; *Wang*, 919 F.2d at 131; *Brogren*, 1994 U.S. Dist. LEXIS 16244, at *1.

Consequently, the Court should reject any belated untimely objections to produce documents responsive to Request No. 17.[6]

---

[5] The cover letter accompanying the objections is dated December 28, 2017, but does not indicate how the letter and accompanying objections were served. In contrast, every other letter PHC sent to Defendants indicates that it was sent via email, and the purported objections were copied to other individuals by email.

[6] Any belated and self-serving attempt by PHC to request attorney's fees or costs related to compliance with the subpoena must also be rejected. *See McCabe v. Ernst & Young, LLP*, 221 F.R.D. 423, 426 (D.N.J. 2004) (stating that when a non-party fails to timely object to a subpoena it is precluded from recovering its discovery costs associated with compliance).

### B. Any Objections Are Frivolous As the Court Has Already Ruled that the "Factual Underpinning" for PHC's Writings Are Relevant and Non-Privileged.

"The general framework for determining the scope of allowable discovery for cases in federal courts is provided by Federal Rule of Civil Procedure 26, which provides that 'parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.'" *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (quoting Fed. R. Civ. P. 26(b)(1)). "As an initial matter, therefore, all relevant material is discoverable unless an applicable evidentiary privilege is asserted." *Id.*

Once the party seeking discovery carries the initial burden of showing the "relevance of the requested information," the burden shifts to the party resisting the discovery "to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." (Doc. 95, at 11) (quoting *In re Urethane Antitrust Litigation*, 261 F.R.D. 570, 573 (D. Kan. 2009)).

Here, the information at issue – "documents relating to any drafts of PHC's writings and/or publications" – is plainly relevant to this action, and any argument to the contrary is frivolous on its face. Indeed, this Court has already found that it

Hon. Martin C. Carlson
August 10, 2018

had "little difficultly" in concluding that "Milton Hershey's inquiries into the factual basis of PHC's allegations which form part of the foundation for this lawsuit was a relevant, proper line of inquiry." (*Id.* at 15.) This Court explained that the "*evidentiary underpinning*" for PHC's public statements is "plainly relevant to this lawsuit" and that the "factual basis" for PHC's reports are "of *critical evidentiary relevance.*" (*Id.* at 15, 17) (emphasis added).

Likewise, it is undisputed that the documents responsive to Request No. 17 are not privileged. This Court has already ruled that the testimony of PHC's initial corporate designee, Kronenberg, "undermine[s] any sweeping claim of privilege regarding the factual underpinning for the public pronouncements made by Mr. Fouad on behalf of PHC since Mr. Kronenberg has testified that Fouad's dissemination of this information was done 'for PHC, not [in] his capacity as an attorney.'" (*Id.* at 18.) Moreover, any privilege that PHC may attempt to assert has long since been waived, as Fouad testified that he had a practice of "circulating the drafts and getting input," and giving others "an opportunity to review it." (Ex. "M", F. Fouad Nov. 27, 2017, Dep. Trans. at 19:12-13, 42:22.)

Accordingly, the documents responsive to Request No. 17 plainly fall within the scope of Rule 26 allowance for "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.'" *Pearson,* 211 F.3d at 65 (quoting Fed. R. Civ. P. 26(b)(1)).

11

Hon. Martin C. Carlson
August 10, 2018

Furthermore, PHC cannot credibly claim that a request for "documents relating to any drafts of PHC's writings and/or publications," causes an undue burden for PHC. The burden of establishing that a document subpoena imposes an undue burden rests with the party resisting discovery. *Stokes v. Cenveo Corp.*, 2017 U.S. Dist. LEXIS 135738, at *4 (W.D. Pa. Aug. 24, 2017); *Barnes Found.*, 1997 U.S. Dist. LEXIS 4444, at *16. "This burden is a **heavy one**" and "requires more than 'generalized and unsupported allegations.'" *Stokes*, 2017 U.S. Dist. LEXIS 135738, at *4 (emphasis added). A party resisting discovery can only meet this heavy burden by demonstrating specifically "that compliance with the subpoena would be 'unreasonable and oppressive.'" *Barnes Found.*, 1997 U.S. Dist. LEXIS 4444, at *16 (quoting *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enter.*, 160 F.R.D. 70, 72 (E.D. Pa. 1995)).

Here, Fouad testified that documents responsive to Request No. 17 would be maintained in "electronic files that I might have on my hard drive." (Ex. "M" at 429:13-14.) Thus, these documents are easily recoverable through a simple search of Fouad's computer.

Moreover, Fouad testified that his normal practice was to email drafts of these documents to other PHC members who would "ma[ke] edits and changes and so forth and so on to come up with what we thought was the best, you know, final product." (*Id.* at 240:17-20.) Significantly, Fouad testified that he used the same

Hon. Martin C. Carlson
August 10, 2018

email address that he currently uses as far back as 2013, (*id.* at 77:7-15), and that he retains emails sent and received from that email address as far back as May 2013, (*id.* at 79:11-15).

Accordingly, these documents can be located and produced through a simple search of Fouad's computer hard drive and his email and thus PHC cannot credibly claim that production of this material would be "unreasonable and oppressive." *Barnes Found.*, 1997 U.S. Dist. LEXIS 4444, at *16 (quoting *Composition Roofers*, 160 F.R.D. at 72).

Consequently, for the foregoing reasons, PHC should be ordered to produce materials responsive to Request No. 17 within ten days of the date of the Court's Order. PHC and its counsel have, and continue to, obstruct discovery by failing to produce these discoverable documents.

Respectfully submitted,

/s Jarad W. Handelman

Jarad W. Handelman (PA 82629)
Kyle M. Elliott (PA 306836)

KME/gec
Enclosures
cc: Gregory F. Cirillo, Esq. (*via ecf*)
    John J. Higson, Esq. (*via ecf*)
    Kevin J. Neary (*via ecf*)
    Jeffrey Schreiber, Esq. (*via email*)
    F. Frederic Fouad, President and Counsel for Protect the Hersheys'
        Children, Inc. (*via ecf*)