# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE ELLEN WARTLUFT, et al.,** | : | Civil No. 1:16-CV-2145 |
| | : | |
| Plaintiffs | : | (Chief Judge Conner) |
| | : | |
| | : | (Magistrate Judge Carlson) |
| v. | : | |
| | : | |
| **THE MILTON HERSHEY SCHOOL AND SCHOOL TRUST, et al.,** | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION AND ORDER

### I. Factual Background

We have previously observed that this case arises out of "a singular tragedy, the suicide of the plaintiffs' 14 year-old daughter in June of 2013, at about the time of her expulsion from the Milton Hershey School, following two episodes of hospitalization for severe depression." Wartluft v. Milton Hershey Sch. & Sch. Tr., No. 1:16-CV-2145, 2017 WL 4698102, at *1 (M.D. Pa. Oct. 19, 2017). While the death of this child, and questions of the defendants' potential culpability for this death, should be the issues which lie at the heart of this lawsuit, for some of the protagonists the lawsuit seems to be but a small part of a longstanding and intractable conflict between the Milton Hershey School, an advocacy group,

Protect Hershey's Children, (PHC), and PHC's President, an attorney named Ric Fouad. The conflict between Fouad, PHC and Hershey spans many years and is marked by competing accusations, mutual recriminations and shared, profound, and unshakeable suspicions. For its part, the Milton Hershey School apparently views PHC and Fouad, as unscrupulous provocateurs, who disseminate baseless allegations against the Milton Hershey School, and then instigate grieving families to file meritless lawsuits in pursuit of their ideological goals. PHC and Fouad, in turn, identify themselves as public spirited whistle-blowers, who believe that they are the victims of a campaign of harassment, oppression and unwarranted calumny orchestrated by a multi-billion dollar corporate monolith.

For these protagonists their internecine dispute often seems to threaten to overshadow the crucial issues raised by the complaint relating to the tragic circumstances of AB's life and death. We remind all parties of the importance of focusing on the pivotal legal and factual issues raised by this particular complaint; namely, the plaintiffs' allegations that AB's suicide was a result of unlawful discriminatory practices by the defendants, and specifically the assertion that the Milton Hershey School had a two-hospitalization policy which led to the expulsion of emotionally fragile students once those students underwent two hospitalizations for mental illness. Counsel are well-advised to focus their remaining efforts on these issues.

Nonetheless, recognizing that these protagonists have a focus upon one another which goes beyond the issues in this lawsuit, we turn to the defendants' motion to compel production of documents, (Doc. 136), which seeks:

> [T]o compel Plaintiffs, and their counsel Dilworth Paxson, LLP (the Dilworth Firm"), to: (1) produce all documents that they redacted and/or withheld based on alleged privilege between F. Frederic Fouad ("Fouad"), and Plaintiffs; (2) produce all documents that they redacted and/or withheld based on alleged privilege between Fouad and the Dilworth Firm; (3) produce a revised privilege log that demonstrates the applicability of the alleged privilege to each withheld document[.]

(Id.)

As they litigate this specific discovery dispute each of these protagonists invites us to adopt very different characterizations of the role of Mr. Fouad in this litigation; cast Mr. Fouad's role in one of two utterly irreconcilable and singularly categorical lights; and then rule upon this motion through the prism of their very different perspectives regarding the broader motives and motivations they ascribe to one another.

Thus, Hershey points to the fact that, at different times and in different settings, Mr. Fouad has made very different assertions regarding whether he is serving as counsel in this case. For example, in some public pronouncements Fouad seems to disclaim any role as counsel, while on other occasions he appears to cloak himself in the attorney-client privilege. Highlighting and denouncing these disparate descriptions of his role in this lawsuit, Hershey insists that none of

3

Fouad's communications can be deemed to be privileged, and invites us to order wholesale disclosure of all of Fouad's communications.

The plaintiffs on the other hand embrace a very different, but equally categorical view, and seem to insist that since Fouad is an attorney, any communication between Fouad and any of the plaintiffs is cloaked in privilege.

Both parties have fully briefed their conflicting and irreconcilable views regarding this issue. Moreover, the plaintiffs have provided the court and opposing counsel with a privilege log, describing 55 documents, which comprise approximately 240 pages of material, and have submitted these documents for our *in camera* review.[1] Having conducted this review, we will decline to adopt either of these categorical approaches urged upon us by the parties. Instead, reviewing

---

[1] We note that these documents appear to consist entirely of communications involving the plaintiffs, Fouad and in some instances other counsel. Therefore the privilege log consists exclusively of documents that are responsive to that portion of the defendants' discovery demand which sought production of all documents that the plaintiffs redacted and/or withheld based on alleged privilege between F. Frederic Fouad ("Fouad"), and Plaintiffs. We note that the defendants also demanded production of all documents that the plaintiffs redacted and/or withheld based on alleged privilege between Fouad and the Dilworth Firm. The plaintiffs have submitted correspondence, (Doc. 175), suggesting that they oppose any efforts by the defense to gain wholesale access to Mr. Fouad's communications with the Dilworth firm, attesting that none of the parties in this lawsuit have possession of these communications, and indicating that such wholesale disclosure would be particularly violative of privilege principles. While we are prepared to address this issue with the parties, in our view it would be incumbent upon the defendants to make a particularly compelling showing of relevance before they could obtain access to these non-party communications among attorneys, or compel the production of some form of privilege log relating to these non-party communications.

the 55 documents currently identified in the plaintiffs' privilege log, we will GRANT this motion to compel, in part, and DENY it in part, as described in greater detail below.

## II. Discussion

### A. Guiding Legal Principles

Several familiar principles guide and inform our resolution of the instant motion to compel. At the outset, rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also

5

> Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

Although the scope of discovery is to be interpreted broadly, it "is not without limits." Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 149 (M.D. Pa. 2017) (quoting Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996)). Federal Rule of Civil Procedure 26(b)(1), as amended, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). In determining "the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings." Trask v. Olin Corp., 298 F.R.D. 244, 263 (W.D. Pa. 2014). Furthermore, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."

Fed. R. Civ. P. 26(b)(1). Thus, "all relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009). Likewise, "[i]n deciding whether a federal privilege against discovery exists, plaintiffs as the objecting party have the burden of establishing the privilege." Bayges v. Se. Pennsylvania Transp. Auth., 144 F.R.D. 269, 271 (E.D. Pa. 1992). Indeed, because the assertion of a claim of privilege "may result in the withholding of relevant information and so may obstruct the search for truth," In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011), it is well-established that, " 'The burden of proving that the . . . privilege applies is placed upon the party asserting the privilege.' United States v.

7

Landof, 591 F.2d 36, 38 (9th Cir. 1978)." Matter of Grand Jury Empanelled February 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979).

In this case the plaintiffs rely upon the attorney-client privilege and the work-product doctrine to justify the decision to withhold these 55 documents, consisting of emails and attachments. The legal tenets which govern this privilege analysis are also familiar ones. The United States Court of Appeals for the Third Circuit has summarized the purposes of, and distinctions between, the attorney-client privilege and the work-product doctrine, and the importance of limiting recognition of evidentiary privileges when necessary to achieve their purposes, as follows:

> Though they operate to protect information from discovery, the work-product doctrine and the attorney-client privilege serve different purposes. The purpose behind the attorney-client privilege is " 'to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation. The ultimate aim is to promote the proper administration of justice.' " In re Impounded, 241 F.3d 308, 316 (3d Cir. 2001) (quoting In re Grand Jury Proceedings, 604 F.2d 798, 802 (3d Cir. 1979)). The work-product doctrine, by contrast, "promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991) (citations omitted).

In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011).

Rule 501 of the Federal Rules of Evidence provides, in relevant part, as follows:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501. Accordingly, in diversity actions, such as the instant litigation, the law governing evidentiary privileges is supplied by the courts of the state in which the federal court sits. See, e.g., Rhone-Poulenc Rorer v. Home Indem. Co., 32 F. 3d 851, 861 (3d Cir. 1994); Maertin v. Armstrong World Indus., Inc., 172 F.R.D. 143, 147 (D.N.J. 1997); McDowell Oil Serv., Inc. v. Interstate Fire & Cas. Co., 817 F. Supp. 538, 545 (M.D. Pa. 1993) (in diversity action, party's assertion of attorney-client privilege governed by state law); see also Serrano v. Chesapeake Appalachia, LLC, 298 F.R.D. 271, 280 (W.D. Pa. 2014) (observing that in diversity actions a court "must look to state law for applicable legal principles on issues of privilege.").

The attorney-client privilege is meant to facilitate "full and frank communication between attorneys and their clients." Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007). The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends

upon the lawyer's being fully informed by the client." Upjohn v. United States, 449 U.S. 383, 389 (1981). The privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purposes of obtaining or providing legal assistance for the client.' " In re Teleglobe Communications Corp., 493 F.3d 345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)). Thus, the privilege reaches "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." Fisher v. United States, 425 U.S. 391, 403 (1976); see also In re Ford Motor Co., 110 F.3d 954, 965 n.9 (3d Cir. 1997) (communication made by client and an attorney are privileged if made "for the purpose of securing legal advice."); United States v. Amerada Hess Corp., 619 F.2d 980, 986 (3d Cir. 1980).

The privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client. To this end, the Supreme Court has explained that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn, 449 U.S. at 390.

The work-product privilege, in turn, is a creature of federal law, see Fed. R. Civ. P. 26(b) (3)(A), and "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661-62 (3d Cir. 2003). As the Third Circuit has explained:

> The purpose of the work-product doctrine differs from that of the attorney-client privilege . . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used again their clients.

Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1427-28 (3d Cir. 1991). Furthermore,

> The doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

United States v. Nobles, 422 U.S. 225, 238-39 (1975) (footnote omitted).

With these animating principles, Rule 26(b)(3) shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's

attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A). The rule also establishes two categories of protected work product: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" In re Linerboard Antitrust Litig., 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" Linerboard, 237 F.R.D. at 381 (quoting Cendant, 343 F.3d at 663).

When examining privilege claims we must be mindful of two other legal tenets. First, while recognizing the value served by these privileges, courts must be mindful that the privileges obstruct the truth-finding process and should, therefore, be "applied only where necessary to achieve its purpose." Wachtel, 482 F.3d at 231; see also Westinghouse Elec. Corp., 951 F.2d at 1423. Accordingly, because the purpose of the privilege is to protect and promote the "dissemination of sound legal advice," it applies only to communication conveying advice that is legal in nature, as opposed to where a lawyer is providing non-legal advice. Wachtel, 482 F.3d at 231; see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 152 F.R.D.

132, 137 (N.D. Ill. 1993) (stating that the privilege is inapplicable where the legal advice is incidental to business advice); Hardy v. New York News, Inc., 114 F.R.D. 633, 643 (S.D.N.Y. 1987) ("The attorney-client privilege is triggered only by a client's request for legal, as contrasted with business advice[.]"). In short, counsel must be acting as counsel for the privilege to apply. This principle has particular resonance here since it is apparent that at various times Mr. Fouad has assumed an array of different roles in his often contentious relationship with Hershey.

Finally, when addressing legal questions regarding whether the attorney client or work product privileges apply to particular documents we are cautioned to eschew any categorical approach which cloaks or rejects the privilege in a wholesale fashion without regard to the specific content of particular documents. Instead, "claims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion." United States v. Rockwell Int'l, 897 F.2d 1255, 1265 (3d Cir. 1990).

Because the plaintiff, as the proponent of the privilege bears the burden of proof on claims of privilege, it is often critically important that any privilege log adequately outline the basis of the privilege claim. On this score we have described the legal requisites of a valid privilege log in the following terms:

> The privilege log should: identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between...individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected. Bowne, 150 F.R.D. at 474 (citations omitted); see also von Bulow, 811 F.2d at 146; In re Grand Jury Subpoena Dtd. Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984). United States v. Constr. Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996).

Farkas v. Rich Coast Coffee, Corp., No. 1:14-CV-272, 2016 WL 4611427, at *4 (M.D. Pa. Sept. 6, 2016).

### B. This Motion to Compel Should be Granted, in Part, and Denied, in Part.

Guided by these legal tenets, we will decline to follow either of the categorical approaches urged upon us by the protagonists in this litigation. Thus, while we acknowledge that Ric Fouad has a different time made very different claims concerning his status in this litigation, we do not conclude that these differing statements, standing alone, constitute a wholesale waiver of any privilege. Mr. Fouad is an attorney and at different times, and in different places, may well have played different roles in connection with this case. Likewise, we will decline the plaintiffs' invitation to treat all of these communications between Fouad and the plaintiffs as privileged merely because Fouad was an attorney, or because the

plaintiffs have now submitted declarations suggesting that Fouad was generally acting as their counsel, particularly when those declarations are contradicted by some of Fouad's contemporaneous statements denying that he was counsel in this case. Instead, conducting a "document by document" review, United States v. Rockwell Int'l, 897 F.2d 1255, 1265 (3d Cir. 1990), we will extend the protection of the attorney client privilege only to those "communications that satisf[y] the following elements: it must be '(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purposes of obtaining or providing legal assistance for the client.'" In re Teleglobe Communications Corp., 493 F.3d 345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)).

Applying these benchmarks, we note that the document-by-document description of these records set forth in the privilege log provides only modest assistance in determining whether the plaintiffs have met their burden of proving that particular documents are privileged. Indeed, for the most part, the log simply identifies the document and then uses the initials "AC" or "WP" to describe the allegedly privileged nature of specific documents, a cryptic description which falls short of "providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." Farkas v. Rich Coast

Coffee, Corp., No. 1:14-CV-272, 2016 WL 4611427, at *4 (M.D. Pa. Sept. 6, 2016).

Notwithstanding these limitations in the privilege log our *in camera* review of these 55 records leaves us convinced that many of these documents involved matters that were unrelated to litigation, but rather pertained to social media strategies, media outreach by Fouad and PHC, petition drives, and the preparation of a multi-media memorial tribute to AB. These records further disclose Fouad acting as a leader of PHC, as a comforter to AB's family, as an organizer of a grass roots protest campaign, and as a media spokesman and consultant, but many of these documents do not appear to reflect Fouad serving as legal counsel or providing legal advice to the plaintiffs. In short, while many of these documents may have, at most, a marginal relevance to the issues in this lawsuit, these records do not appear to be cloaked in privilege. Therefore finding that the requisite elements of the privilege are not satisfied with respect to many of these documents, it is ordered that the plaintiffs' claims of privilege are denied with respect to the following documents:

Privilege log documents: 2, 4-14, 16, 18, 20-28, 30-31, 33-39, 41-48, 50-51.

In contrast, we find that a smaller subset of these records entail communications which appear to be for the purpose of securing legal advice both from Fouad and from outside counsel. These documents, therefore, fall within the

ambit of the attorney-client and work-product privileges, and the plaintiffs' claims of privilege as to these records are sustained:

Privilege log documents: 1, 3, 15, 17, 29, 40, 49, 52, 53, and 55.

Finally, there exists a smaller subset of records which we conclude contain arguably privileged excerpts which should be redacted, but are not privileged in their entirety. These documents, and the appropriate redactions in these records, are described below:

Privilege log document 19: The header on the top of page 1 and the accompanying narrative which refers to what appears to be legal advice should be redacted; otherwise the document does not appear to contain privileged information.

Privilege log 32: The header on the top of page 1 should be redacted; otherwise the document does not appear to contain privileged information.

Privilege log 54: The final two pages of this document appears to involve communications seeking legal advice and should be redacted; otherwise the document does not appear to contain privileged information.

An appropriate order follows.

### III. Order

For the foregoing reasons, the Defendants' Motion to Compel (Doc. 136), is GRANTED in part and DENIED in part as follows:

Finding that the requisite elements of the privilege are not satisfied with respect to many of these documents, it is ordered that the plaintiffs' claims of privilege are denied with respect to the following documents:

Privilege log documents: 2, 4-14, 16, 18, 20-28, 30-31, 33-39, 41-48, 50-51.

Finding that a smaller subset of these records entail communications which appear to be for the purpose of securing legal advice both from Fouad and from outside counsel and, therefore, fall within the ambit of the attorney-client and work-product privileges, the plaintiffs' claims of privilege as to these records are sustained:

Privilege log documents: 1, 3, 15, 17, 29, 40, 49, 52, 53, and 55.

Finally, there exists a smaller subset of records which we conclude contain arguably privileged excerpts which should be redacted, but are not privileged in their entirety. These documents, and the appropriate redactions in these records, are described below:

Privilege log document 19: The header on the top of page 1 and the accompanying narrative which refers to what appears to be legal advice should be redacted; otherwise the document does not appear to contain privileged information.

Privilege log 32: The header on the top of page 1 should be redacted; otherwise the document does not appear to contain privileged information.

Privilege log 54: The final two pages of this document appears to refer to legal advice and should be redacted; otherwise the document does not appear to contain privileged information.

So ordered this 21st day of August, 2018.

                                    */s/ Martin C. Carlson*
                                    Martin C. Carlson
                                    United States Magistrate Judge