**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JULIE ELLEN WARTLUFT F/K/A JULIE ELLEN BARTELS AND FREDERICK L. BARTELS, JR., Individually and as Administrators of the Estate of Abrielle Kira Bartels, Deceased, | : : : : : : : |
| Plaintiffs, | : |
| vs. | : : |
| THE MILTON HERSHEY SCHOOL, et al, | : : : |
| Defendants. | : : |

C.A. NO.:
1:16-cv-02145-CCC

(CONNER, C.J.)

## DEFENDANTS' AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' AMENDED COMPLAINT[1]

Defendants, the Milton Hershey School ("MHS" or the "School"), and The Hershey Trust Company ("HTC"), as trustee of The Milton Hershey School Trust (collectively, "Defendants"), through undersigned counsel, hereby answer the Amended Complaint inclusive of tort claims reinstated by the Court's December 7, 2018, Memorandum Opinion and Order, (Docs. 216-17), of Plaintiffs, Julie Ellen Wartluft f/k/a Julie Ellen Bartels ("Plaintiff Wartluft"), and Frederick L. Bartels,

---

[1]   Amendment of Defendants' Answer and Affirmative Defenses is necessitated by the Court's reinstatement of certain tort claims on December 7, 2018.  The reinstated tort claims were initially dismissed by the Court on August 10, 2017, in disposition of Defendants' Rule 12 Motion.  Thus, no responsive pleading was required to the reinstated claims when the Defendants filed the initial Answer and Affirmative Defenses to Plaintiffs' Amended Complaint on August 24, 2017.

Jr. ("Plaintiff Bartels") (together, "Individual Plaintiffs"), Individually and as Administrators of the Estate of Abrielle Kira Bartels, Deceased (the "Estate" or "A.B.") (all collectively, "Plaintiffs").[2] Defendants deny the averments contained in Plaintiffs' introductory statement and all headings, which are not set forth in individual paragraphs to which Defendants could respond, and further deny the averments contained in the subsequent paragraphs of the Amended Complaint as follows:

## **INTRODUCTION**

MHS is a cost-free, not-for-profit residential school established in 1910, to provide a positive, structured academic and residential curriculum to help children gain the skills to be successful in all aspects of life.  Today, MHS is among the largest residential schools in the nation, offering individualized attention, small class sizes, and top-notch academic programs to children in prekindergarten through 12th grade from low-income families.

A.B. began attending MHS in 2004 in Kindergarten. In her eighth grade year, A.B.'s mental health began to rapidly deteriorate as a result of depression and suicidal ideations.  In response, approximately one month before A.B.'s mental

---

[2] The Court's December 7, 2018, Order reinstated Plaintiffs' previously dismissed tort claims found in Counts III, IX, X, XI, and XII.  (Doc. 217.) Additionally, the Court's Memorandum Opinion and Order dismissed Counts VII-VIII, and dismissed Count IX as to the Individual Plaintiffs.  (Docs. 216-17.)

health needs necessitated a higher level of care than MHS could provide, Individual Plaintiffs and Karen Fitzpatrick ("Ms. Fitzpatrick"), a legal guardian of A.B. authorized by Individual Plaintiffs to exercise legal and physical custody of A.B., requested that A.B. be permitted to leave MHS and reside and attend public school in Newport, Pennsylvania where Ms. Fitzpatrick and Plaintiff Bartels resided in a recently-renovated, suburban, two-story home.  A.B. wanted to go home and Individual Plaintiffs and Ms. Fitzpatrick wanted her home.  In May 2013, according to Individual Plaintiffs and Ms. Fitzpatrick, A.B.'s departure from MHS was what was best for her, as A.B. was homesick and desired to attend public school in Newport like her brother, who also resided with Ms. Fitzpatrick and for whom Plaintiffs had also authorized Ms. Fitzpatrick to exercise legal and physical custody in their stead.

In May 2013, A.B.'s mental health deteriorated to a degree that precluded her from participating in MHS's academic and residential curriculums.  A.B.'s thoughts of suicide continued to intensify, necessitating a higher level of care than MHS could provide.  An in-patient mental health hospitalization was required to treat A.B. on May 28, 2013, in order to meet her mental health needs.  On June 5, 2013, A.B. was discharged to her parents, the Individual Plaintiffs.

Soon after returning to MHS, A.B. disclosed to a classmate that she was again experiencing urges to harm herself and that her medication was not

working.  At that that time, A.B.'s suicidal ideation was rated a 10 out of 10.

Accordingly, it was determined that A.B. required a higher level of care than MHS

could provide, thus necessitating her readmission to an in-patient mental health

institution to treat her recurring and increasingly severe suicidal ideations.

On June 11, 2013, MHS referred A.B. to an in-patient mental health

institution for treatment.  With the consent of the Individual Plaintiffs and Ms.

Fitzpatrick, A.B. was admitted to Pennsylvania Psychiatric Institute ("PPI").  PPI

conducted its own independent assessment of A.B., and concluded that she

required in-patient treatment at its facilities.   After a course of treatment

administered exclusively by PPI, and in anticipation of her discharge from PPI,

Plaintiff Wartluft and Ms. Fitzpatrick worked collaboratively with PPI and outside

mental health providers that they themselves identified to fashion a discharge plan

for A.B.  The discharge plan crafted by PPI, with the participation and express

agreement of Plaintiff Wartluft and Ms. Fitzpatrick, did not involve MHS, nor did

it include any provision for treatment by MHS clinicians following discharge from

PPI.

To ensure continuity of A.B.'s care, the discharge plan crafted by PPI, with

the express consent of Ms. Fitzpatrick and Plaintiff Wartluft, required treatment of

A.B. upon her discharge from PPI with a psychotherapist, specifically Lesley P.

Davis ("Ms. Davis"), of Pinnacle Health Psychological Associates ("PHPA") at

4

"Brady Hall."   Ms. Davis is a psychotherapist who was identified by Plaintiff Wartluft to PPI for the provision of the required services to A.B., and with whom PPI, at Plaintiff Wartluft's direction, coordinated aftercare of A.B. commencing with an appointment for treatment just hours after her discharge from PPI.

In addition to continuing care of A.B. with Ms. Davis, the discharge plan also directed Plaintiff Wartluft and Ms. Fitzpatrick to ensure A.B's medication, Zoloft, was taken as prescribed; to ensure medication monitoring was arranged with PHPA; to engage family-based mental health services to provide for A.B.'s long-term aftercare needs; to ensure that A.B. attend all follow-up appointments with PHPA; and to contact crises intervention offices or the nearest emergency room if urgent assistance related to A.B.'s mental health was required.   Plaintiff Wartluft and Ms. Fitzpatrick agreed to the terms of PPI's discharge plan, and accepted the responsibility of implementing the discharge plan for the benefit of A.B. and the treatment of her mental health needs.

On June 19, 2013, A.B. was discharged to Plaintiff Wartluft and Ms. Fitzpatrick pursuant to the plan for aftercare crafted by A.B.'s treating clinicians at PPI, and in conjunction with, and by the express agreement of, Individual Plaintiffs and Ms. Fitzpatrick.   Immediately upon her discharge on June 19, 2013, A.B. was transported by Ms. Fitzpatrick from PPI to Brady Hall where Plaintiff Wartluft met A.B. and Ms. Fitzpatrick to attend Ms. Davis's initial treatment session with A.B.

Following the appointment with Ms. Davis, Plaintiff Wartluft scheduled a follow-up appointment with Ms. Davis for A.B.  Plaintiff Wartluft subsequently refused an earlier appointment for A.B. offered by Ms. Davis's office.

Following her initial session with Ms. Davis, A.B. returned to Plaintiff Bartels' and Ms. Fitzpatrick's home in Newport, Pennsylvania – the same location where, just one month prior, Plaintiff Wartluft and Ms. Fitzpatrick, had advised MHS that they and A.B. wanted her to be.

Unfortunately, once A.B. was with the Individual Plaintiffs and Ms. Fitzpatrick, as they had requested in May 2013, the Individual Plaintiffs and Ms. Fitzpatrick repeatedly failed to adequately care for A.B.  These parental and custodial failures resulted in A.B.'s tragic suicide, and included, *inter alia:* (i) dismissing A.B.'s depression and suicidal thoughts as merely "teenage angst" and generally ignoring the severity of A.B.'s mental health symptoms; (ii) failing to administer prescribed psychotropic medications to A.B. prior to her death; (iii) failing to notify authorities or A.B.'s treating physicians that A.B.'s psychotropic medication had gone missing three days before her suicide; (iv) failing to follow PPI's clear and direct discharge instructions for A.B.'s aftercare; (v) failing to schedule the earliest available appointment for A.B.'s psychological treatment after discharge from PPI, leaving A.B. with no psychological care during the ten days from her discharge from PPI until she died by suicide at Plaintiff Bartels' and Ms.

6

Fitzpatrick's home on June 29, 2013; (vi) and failing to adequately supervise A.B., leaving her on the day of her death, and just ten days following her discharge from a mental health institution for severe suicidal ideations, in the custody of Ms. Fitzpatrick's elderly father, Thomas Fitzpatrick ("Mr. Fitzpatrick"),[3] who advised the Pennsylvania State Police that despite A.B. having told him recently that "life was not worth living," coupled with his knowledge that A.B.'s psychotropic medication had gone missing days before, he left A.B. alone in the home in the morning hours of June 29, 2013, and alone in her room for an extended period prior to discovering her death by suicide.

Following A.B.'s suicide at her family's Newport home, Plaintiff Wartluft made contact with F. Frederic "Ric" Fouad, a self-proclaimed "child advocate," and his organization, Protect the Hersheys' Children, Inc. ("PHC"), who for twenty (20) years, in concert with others, have implemented Fouad's strategy of instituting "serial lawsuits" attacking MHS and its leadership to "take back the School." Fouad called A.B.'s death the "break" he needed in his litigious crusade. Thereafter, Fouad manufactured the theory of Plaintiffs' case and Plaintiffs adopted it. According to PHC's website and social media publications in the wake of A.B.'s death, A.B.'s enrollment had been terminated by MHS, and the

---

[3]   Mr. Fitzpatrick is the owner of the Newport, Perry County, home where A.B. committed suicide and where A.B. primarily resided when home with her family.

Defendants' implemented a "shadow policy" that required A.B.'s expulsion. Tellingly, neither Plaintiff Wartluft nor Plaintiff Bartels have any personal knowledge to support these averments of the Amended Complaint, but rather Plaintiff Wartluft attributes the factual basis for Plaintiffs' claims against Defendants to the PHC website that Fouad alone controls.

A.B. was never terminated from MHS. There is no "shadow policy" as the Amended Complaint avers. And at the time of her death by suicide, MHS was on summer break, and A.B. was home, in the custody of her family, just as she had been every summer since her enrollment began in 2004.

## PARTIES

1.      Admitted in part, denied in part. It is only admitted that the Individual Plaintiffs are A.B.'s parents, and that Ms. Fitzpatrick was a "live-in companion of" Plaintiff Bartels, who "acted as another guardian of" A.B. By way of further answer, the Individual Plaintiffs exercised, and never relinquished, legal custody of A.B. at all times relevant to the Amended Complaint, in addition to exercising physical custody, care, and responsibility for A.B., in concert with Ms. Fitzpatrick, at all times she was not on the MHS campus, including but not limited to preceding and at the time of her death, and specifically at all times from the date of her discharge from PPI to the date of her death by suicide. As averred, the Individual Plaintiffs entrusted aspects of legal and physical custodial responsibility of A.B. to

Ms. Fitzpatrick, including but not limited to the care and custody of A.B. on and from the date of her discharge from PPI on June 19, 2013, and continuing through the date of her death, the implementation of aspects of PPI's discharge plan for A.B., and at the precise time of A.B.'s death. The remainder of the averments in this paragraph are denied, including as conclusions of law to which no response is required.

2.     Admitted in part, denied in part. It is only admitted that MHS is a private school with grades Kindergarten to 12th for income-eligible families that is organized and exists under the laws of the Commonwealth of Pennsylvania. It is specifically denied that MHS and the HTC collectively refer to themselves as the "'Milton Hershey School and School Trust;'" and that MHS has "$12 billion in assets." The remainder of the averments in this paragraph are denied, including as conclusions of law to which no response is required. By way of further response, MHS, a non-profit entity, and HTC, a for-profit entity, are separate and distinct corporate entities.

3.     Admitted in part, denied in part. It is only admitted that HTC is a for-profit entity located at 100 Mansion Road East, Hershey, PA 17033-0445. It is specifically denied that the HTC was "organized for the purpose of serving as trustee of the School Trust," and that HTC "is wholly owned by the Milton Hershey School." The remainder of the averments in this paragraph are denied,

9

including as conclusions of law to which no response is required.  By way of further response, HTC has no involvement with the day-to-day operations of the School.

4.      Denied.  The averments of this paragraph are denied as conclusions of law to which no responsive pleading is required.  By way of further answer, it is specifically denied that the School and HTC "share a self-perpetuating, interlocking and integrated governance structure;" that the Board of Managers of MHS, and the Board of Directors "are the same persons;" that the "board members pay themselves extraordinary sums of compensation;" and that "their membership" lacks appropriate qualifications.  By way of further response, the governance of the School and HTC are set forth in the Deed of Trust as amended and are not subject to characterization or interpretation by Plaintiffs.

5.      Denied.  The averments of this paragraph are denied as conclusions of law to which no responsive pleading is required.  To the extent deemed factual, the averments are specifically denied.  By way of further answer, the averments of the Amended Complaint averring notice to the non-party Board of Managers are contrived as part of a false narrative perpetuated by a discredited critic of MHS with whom the Individual Plaintiffs aligned themselves in the immediate wake of their daughter's death, and who was responsible for the formulation of the Amended Complaint and the theories of liability advanced therein.

6-7.    Denied.  The averments of these paragraphs are denied as conclusions of law to which no responsive pleading is required.

## JURISDICTION AND VENUE

8-11.   Denied.  The averments of these paragraphs are denied as conclusions of law to which no responsive pleading is required.

12.    Denied.  The averments of this paragraph are denied as conclusions of law to which no responsive pleading is required.  To the extent deemed factual, any quotation from the MHS website, or other published materials of the School, speak for themselves and are not subject to the interpretation of Plaintiffs. Therefore, the averments are specifically denied.

13.    Denied.  The averments of this paragraph are denied as conclusions of law to which no responsive pleading is required.

14.    Denied.  The averments of this paragraph are denied as conclusions of law to which no responsive pleading is required.  To the extent deemed factual, the Deed of Trust speaks for itself and is not subject to the interpretation of Plaintiffs. Therefore, the averments are specifically denied.  By way of further answer, Plaintiffs did not attach the Deed of Trust to the Amended Complaint as Exhibit "A", as they failed to attach any exhibits to the Amended Complaint.

15.    Denied.  The averments of this paragraph are denied as conclusions of law to which no responsive pleading is required.

11

## FACTS

16.     Admitted in part, denied in part.  It is admitted that A.B. was born on April 13, 1999, was accepted to MHS on or about April 16, 2004, and died by suicide on June 29, 2013.  All other characterizations or descriptions of Plaintiffs' alleged difficulties and/or A.B.'s enrollment at MHS are denied as conclusions of law to which no responsive pleading is required, or if deemed factual, specifically denied.  By way of further response, A.B. committed suicide at the home Plaintiff Bartels shared with his girlfriend, Ms. Fitzpatrick, in Newport, Perry County, PA, during the summer break from MHS and while in the care and custody of Ms. Fitzpatrick and/or Mr. Fitzpatrick, a responsibility willingly and consistently delegated to Ms. Fitzpatrick by Plaintiff Wartluft, including while Plaintiff Bartels was incarcerated.  At the time of A.B.'s suicide, Ms. Fitzpatrick, after having failed to properly monitor and administer A.B.'s prescription medication three days earlier, and both she and Plaintiff Wartluft having failed to alert authorities or her then treating psychotherapist that the medication was no longer being administered to A.B., left A.B. at her Newport home to be supervised by her elderly father, Mr. Fitzpatrick, who discovered A.B.'s body while Ms. Fitzpatrick was away from the home, and after Mr. Fitzpatrick had left A.B. unsupervised, during which time A.B. committed suicide.

By way of further response, A.B.'s suicide occurred ten (10) days after her discharge from PPI where she had been receiving in-patient treatment from PPI psychologists, independently of MHS, as a result of recurrent suicidal ideations. Individual Plaintiffs and Ms. Fitzpatrick discounted and otherwise ignored the severity of A.B.'s mental health condition, dismissing her depression and suicidal ideations as nothing more than "teenage angst." A.B. was discharged from PPI to the care and custody of the Individual Plaintiffs. Ms. Fitzpatrick was authorized by the Individual Plaintiffs to take custody of A.B. from PPI. A.B.'s discharge from PPI was solely directed by PPI and was accomplished pursuant to a discharge plan created by PPI, in consultation and agreement with Plaintiff Wartluft and Ms. Fitzpatrick, that directed treatment and after care for A.B. with non-MHS affiliated providers. Specifically, no treatment or follow-up care with any MHS psychologist or personnel was recommended by PPI's discharge plan, the terms of which both the Individual Plaintiffs and Ms. Fitzpatrick agreed to and accepted upon A.B.'s discharge from PPI.

In addition to identifying treatment providers for A.B.'s ongoing treatment and care, PPI prescribed psychotropic medication for A.B., a prescription Ms. Fitzpatrick immediately filled upon A.B.'s discharge from PPI, but that she and Plaintiff Wartluft knowingly ceased administering to A.B. as prescribed at least three (3) days before her death when the medication was lost. A.B. was without

13

the benefit of her psychotropic medication for at a minimum the three (3) days preceding her suicide, including on the day she died.

Hours after her discharge from PPI on June 19, 2013, A.B. began treatment with a non-MHS affiliated psychotherapist, Ms. Davis, who PPI identified in A.B.'s discharge plan, and with whom PPI coordinated an initial outpatient treatment appointment for A.B., including releasing A.B.'s medical records to Ms. Davis in anticipation of the commencement of her treatment of A.B.  Ms. Davis was identified by Plaintiff Wartluft as the outpatient provider with whom she wished A.B. to treat following her discharge from PPI, as Ms. Davis also treated Plaintiff Wartluft.   Although Ms. Davis offered Plaintiff Wartluft a second treatment appointment for A.B. before June 29, 2013, Plaintiff Wartluft declined the appointment on behalf of A.B. in favor of a follow-up appointment that would not occur for approximately one (1) month because Plaintiff Wartluft determined that A.B. was doing well.  The Individual Plaintiffs and Ms. Fitzpatrick failed to take A.B. to a single appointment with any treatment provider identified in the PPI discharge plan after her initial session with Ms. Davis on June 19, 2013.  Thus, in contravention of the terms of the PPI discharge plan, the Individual Plaintiffs and Ms. Fitzpatrick failed to ensure that A.B.'s PPI discharge plan was complied with, and failed to ensure that A.B. received proper treatment with Ms. Davis following her PPI discharge.

14

17.    Denied.  Defendants lack sufficient knowledge or information to form a belief about the truth of the averments of this paragraph pertaining to alleged "online posts," or the content thereof and therefore specifically deny the allegations contained within this paragraph.  By way of further response, Plaintiffs have failed to produce these purported "online posts" during discovery.

18.    Denied.  The averments of the paragraph are denied as conclusions of law to which no responsive pleading is required.  To the extent deemed factual, records relating to A.B.'s attendance and enrollment at MHS speak for themselves and are not subject to the characterization, description, or interpretation of Plaintiffs.  Therefore, the averments are specifically denied.

19.    Denied.  To the extent the averments of this paragraph are derived from records of A.B.'s enrollment at MHS, such records speak for themselves and are not subject to the characterization, description, or interpretation of Plaintiffs. Therefore, the averments are specifically denied.

20.    Denied.  The averments of this paragraph are denied as conclusions of law to which no responsive pleading is required.  By way of further response, it is specifically denied that A.B. "merely" "suffered a two-month bout of depression[.]"

21.    Admitted in part, denied in part.  It is only admitted that MHS is a cost-free, private, coeducational school.  All other descriptions or characterizations

15

of the suitability of MHS for A.B., or any other student, are denied as conclusions of law to which no responsive pleading is required, and otherwise specifically denied to the extent deemed factual.  Defendants further deny the unnumbered heading above ¶ 21 as a legal conclusion to which no responsive pleading is required, and specifically deny that MHS has a special, custodial relationship with its students, including A.B..

22.    Denied.  The enrollment and applicant data of MHS are not subject to the approximation or characterization of Plaintiffs and the referenced data speaks for itself.  Therefore, the averments of this paragraph are specifically denied.

23.    Denied. The budgetary expenditures of MHS speak for themselves and are not subject to the approximation, characterization, or interpretation of Plaintiffs.  Therefore, the averments of this paragraph are denied, both as conclusions of law to which no responsive pleading is required and, to the extent deemed factual, specifically denied.

24-27.  Denied.  The averments of these paragraphs contain conclusions of law to which no responsive pleading is required.  To the extent the averments of these paragraphs are derived from the MHS website, or other published materials of the School, such materials and the content thereof speak for themselves and are not subject to the interpretation of Plaintiffs.  Therefore, the averments are

specifically denied.  By way of further response, Defendants specifically deny that any special, custodial relationship exists with MHS students, including A.B.

28.    Denied.  It is specifically denied that A.B. was expelled from MHS. The remaining averments of this paragraph are denied as characterized by Plaintiffs.  By way of further answer, Plaintiffs did not attach Exhibit "B" to the Amended Complaint, as they failed to attach any exhibits to the Amended Complaint.

29-32.  Denied.  The averments of these paragraphs contain conclusions of law to which no responsive pleading is required.  By way of further response, any filings referenced in these paragraphs speak for themselves and any characterization or interpretation thereof by Plaintiffs is specifically denied.  In addition, Defendants specifically deny that any special, custodial relationship exists with MHS students, including A.B.  By way of further answer, Plaintiffs did not attach Exhibit "C" to the Amended Complaint, as they failed to attach any exhibits to the Amended Complaint.

33.    Admitted in part, denied in part.  It is only admitted that MHS has visitation rules regarding its students.    The averments of this paragraph characterizing or interpreting MHS rules or practices are otherwise denied as conclusions of law, or to the extent deemed factual, are specifically denied.

34.     Admitted in part, denied in part.  It is only admitted that MHS transitions students into enrollment at the School.  The averments of this paragraph characterizing or interpreting MHS rules or practices are otherwise denied as conclusions of law, or to the extent deemed factual, are specifically denied.

35.     Admitted in part, denied in part.  It is only admitted that MHS has rules relating to student conduct.  The averments of this paragraph characterizing or interpreting MHS rules or practices are otherwise denied as conclusions of law, or to the extent deemed factual, are specifically denied.

36-37.  Denied.  The averments of these paragraphs contain conclusions of law to which no responsive pleading is required.  By way of further response, the Individual Plaintiffs expressly retained and discharged legal custody of A.B. during all times relevant to the Amended Complaint.  It is specifically denied that any "heightened" or "special" duty is owed to MHS students, including A.B.

38-50.  Denied.  The averments of these paragraphs pertain to a matter having no relevance or relation to the within action, and otherwise refer to the Americans with Disabilities Act ("ADA"), a federal claim conspicuously absent from Plaintiffs' Amended Complaint.  By way of further response, these paragraphs consist of redundant, immaterial, impertinent, or scandalous matter which is improper pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

Accordingly, the averments of these paragraphs are irrelevant to Plaintiffs' claims and are specifically denied in relation to this action.

By way of further answer, with regard to all reference to or quotation of any writing, including but not limited to MHS records, court filings, settlement agreements, and MHS policies contained in these paragraphs, such writings speak for themselves and are not subject to any characterization or interpretation of Plaintiffs. Therefore, the averments of these paragraphs are specifically denied.

In addition, the averments of these paragraphs are denied as conclusions of law to which no responsive pleading is required. Defendants specifically deny that Plaintiffs attached Exhibit "E" to the Amended Complaint, as they failed to attach any exhibits to the Amended Complaint.

51-53. Denied. The averments of these paragraphs are denied as conclusions of law to which no responsive pleading is required. By way of further answer, Plaintiffs have alleged no cause of action for any alleged violation of the ADA in the Amended Complaint. Additionally, these paragraphs consist of redundant, immaterial, impertinent, or scandalous matter which is improper pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

54-56. Denied. The averments of these paragraphs are denied as conclusions of law to which no responsive pleading is required. By way of further answer, Plaintiffs have alleged no cause of action for any alleged violation of the

ADA in the Amended Complaint.  The writings referenced in these paragraphs speak for themselves and any attempt to interpret, apply, or characterize such writings by Plaintiffs are specifically denied.  By way of further response, it is specifically denied that Defendants caused A.B.'s death.  Additionally, these paragraphs consist of redundant, immaterial, impertinent, or scandalous matter which is improper pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

57.     Denied.  The averments of this paragraph are conclusions of law to which no responsive pleading is required.  By way of further answer, the averments of this paragraph refer to the latest solicitation of government authority by the same discredited critic of MHS who seized upon the Individual Plaintiffs in the wake of their daughter's death in order to advance his own radical policy change agenda at the expense of yet another former MHS student.  The averments are specifically denied to the extent alleged to have any relevance to the within action.     Additionally, these paragraphs consist of redundant, immaterial, impertinent, or scandalous matter which is improper pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

58.     Admitted in part, denied in part.  It is only admitted that A.B. applied for enrollment in or around April 2004.  The heading above ¶ 58 is denied as a conclusion of law to which no responsive pleading is required, and to the extent deemed factual, is specifically denied.

59.    Denied.  The averments of this paragraph constitute conclusions of law to which no responsive pleading is required.

60.    Denied.  Any writing referenced in this paragraph and upon which the averments are purportedly based speaks for itself and are not subject to any characterization or interpretation by Plaintiffs.  Therefore, the averments of this paragraph are specifically denied.  It is specifically denied that A.B.'s mother, Plaintiff Wartluft, had cerebral damage that left her unable to adequately fulfill her parental responsibility, such allegation lacking any competent medical support and evidencing the grotesque distortion of alleged facts that the Individual Plaintiffs and those acting in concert with them are willing to submit to advance their claims.

61.    Admitted in part, denied in part.  It is only admitted that A.B. engaged in the MHS enrollment process.  Any attempt to characterize or interpret such process by Plaintiffs is specifically denied.

62.    Denied.  The averments of this paragraph constitute conclusions of law to which no responsive pleading is required.  To the extent any averment of this paragraph is deemed factual, such averment is specifically denied.

63.    Denied.  The averments of this paragraph constitute conclusions of law to which no responsive pleading is required.  By way of further response, Plaintiffs have not alleged a violation of the ADA in the causes of action included in the Amended Complaint.

64.     Admitted in part, denied in part. It is only admitted that the writings referenced in this paragraph exist.   The remaining averments of this paragraph constitute conclusions of law to which no response is required.   By way of further answer, Plaintiffs' characterizations of the writings, and any reasons averred as to why the writings were created, referenced in this paragraph are specifically denied. The writings speak for themselves and any interpretation or characterization of same by Plaintiffs are specifically denied.   Additionally, it is specifically denied that Plaintiffs attached Exhibit "F" to the Amended Complaint, as they failed to attach any exhibits to the Amended Complaint.

65.     Denied.   The averments of this paragraph constitute conclusions of law to which no responsive pleading is required.   By way of further answer, the writings referenced in this paragraph speak for themselves and any interpretation or characterization of same by Plaintiffs are specifically denied.

66.     Admitted in part, denied in part.   It is only admitted that the Handbook referenced in this paragraph exists.   By way of further answer, the Handbook speaks for itself and any interpretation or characterization of same by Plaintiffs are specifically denied.

67.     Denied.   The averments of this paragraph constitute conclusions of law to which no responsive pleading is required.   By way of further answer, the Handbook speaks for itself and any interpretation or characterizations of same by

Plaintiffs are specifically denied.  In addition, Plaintiffs have not filed an ADA cause of action.

68.    Denied.  The averments of this paragraph constitute conclusions of law to which no responsive pleading is required.  By way of further response, the Handbook speaks for itself and any interpretation or characterization of same by Plaintiffs are specifically denied.

69.    Admitted.  The heading above ¶ 69 is denied as a conclusion of law to which no responsive pleading is required, and to the extent deemed factual, is specifically denied.

70.    Denied.  The averments in this paragraph constitute conclusions of law to which no responsive pleading is required.  It is specifically denied that A.B. was subjected to several incidents of bullying by her housemates and strict proof thereof is demanded, none ever having been produced or identified.  By way of further response, in the spring of 2013, one of A.B.'s housemates accused A.B. of making a series of threats against that housemate, which A.B. denied.

71.    Denied.  The averments in this paragraph constitute conclusions of law to which no responsive pleading is required.  By way of further response, to the extent any cognizable injury to A.B. is alleged by virtue of having been exposed to Plaintiff Bartels' arrest and incarceration, such injury was caused by Plaintiff Bartels' own conduct for which he alone is responsible.

72.     Denied. The averments in this paragraph constitute conclusions of law to which no responsive pleading is required.  By way of further answer, Plaintiffs' characterization of a minor child as "manipulative" and characterization of the said minor child's enrollment at MHS are specifically denied.  By way of further response, in the spring of 2013, one of A.B.'s housemates accused A.B. of making a series of threats against that housemate, which A.B. denied.

73.     Denied.  It is specifically denied that the relief houseparents "sided with M."  By way of further response, in the spring of 2013, one of A.B.'s housemates accused A.B. of aggressive behavior against that housemate, and the houseparents on duty at that time reported the alleged threats to the MHS administration.

74.     Admitted in part, denied in part.  It is only admitted that A.B. was sent to the Health Center on or about April 25, 2013.  The remaining averments of this paragraph are specifically denied.  By way of further answer, it is specifically denied that the Health Center is a "campus hospital-type facility . . . ."  By way of further answer, it is specifically denied that A.B. was disciplined relating to the alleged aggressive behavior against another student.  This paragraph also contains conclusions of law that are denied and to which no responsive pleading is required.

75.     Denied.  The averments of this paragraph are conclusions of law to which no responsive pleading is required.  The averments of this paragraph purporting to recite what A.B. "could not fathom" are specifically denied.

76.     Admitted in part, denied in part.  It is admitted only that A.B. went to the Health Center on or about April 25, 2013; initially left the Health Center in the afternoon on April 26, 2013; returned to the Health Center the evening of April 26, 2013; and was discharged from the Health Center on April 27, 2013.  It is specifically denied that A.B. was mistreated.  The averments of this paragraph pertaining to the alleged impact on A.B. are conclusions of law that are denied and to which no responsive pleading is required.

77.     Admitted in part, denied in part.  It is only admitted that on April 26, 2013, A.B. allegedly expressed to a housemate a desire to kill herself.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.

78.     Admitted in part, denied in part.  It is only admitted that A.B. returned to the Health Center on May 1, 2013, after reporting that she cut herself with a crystal the previous evening; that she had thoughts of wanting to die; and that she was eleven-years-old when she first thought about killing herself.  To the extent

the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information allegedly derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.   Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.

79.   Admitted in part, denied in part.   It is admitted only that A.B. underwent an examination on May 2, 2013.   To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are denied.   Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.   The characterization of A.B.'s home life in Newport, Pennsylvania as "unstable" is specifically denied.   By way of further answer, to the extent the averments as to A.B.'s home life in Newport, or any other location where Individual Plaintiffs exercised custody of A.B., are intended to suggest that MHS had any legal duty, obligation, or right, to impede or deny Individual Plaintiffs from exercising legal or physical custody of A.B., such averments are denied as conclusions of law.   There was no circumstance with A.B.'s home life in

Newport, or at Plaintiff Wartluft's home, of which MHS was ever aware that justified, or required, notification to proper authorities by MHS that A.B.'s health or safety was jeopardized by the home environments where she resided with Individual Plaintiffs or Ms. Fitzpatrick. All allegations as to the unsuitability of A.B.'s home environments are contrived for the purpose of fitting the narrative that was crafted following A.B.'s death to support the theories of liability that Plaintiffs chose to adopt, and contradict the request of Plaintiff Wartluft and Ms. Fitzpatrick just one month prior to A.B.'s suicide that A.B. should be sent home to Newport. Any cognizable alleged injuries to A.B. were caused by the Individual Plaintiffs' own negligence, and that of Ms. Fitzpatrick and/or Mr. Fitzpatrick.

80. Admitted in part, denied in part. It is only admitted that Dr. Herr met with A.B. on or about May 6, 2013. To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied. Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required. By way of further response, the responsive averments to paragraph seventy-nine (79) above as to allegations concerning A.B.'s home life and alleged

MHS obligations related thereto are incorporated herein by reference as if set forth in full in further denial of the averments of this paragraph.

81.     Admitted in part, denied in part.  It is only admitted that Dr. Herr met with A.B. on or about May 16, 2013.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.  Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.  The characterization of A.B.'s home life as "volatile" is specifically denied.  By way of further response, the responsive averments to paragraph seventy-nine (79) above as to allegations concerning A.B.'s home life and alleged MHS obligations related thereto are incorporated herein by reference as if set forth in full in further denial of the averments of this paragraph.

82.     Admitted in part, denied in part.  It is only admitted that Dr. Herr met with A.B. on or about May 20, 2013.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by

Plaintiffs are therefore denied.  Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.  By way of further response, the responsive averments to paragraph seventy-nine (79) above as to allegations concerning A.B.'s home life and alleged MHS obligations related thereto are incorporated herein by reference as if set forth in full in further denial of the averments of this paragraph.

83.    Admitted in part, denied in part.  It is admitted only that A.B. was admitted to the Health Center on May 21, 2013.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.  Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.  Additionally, Defendants specifically deny Plaintiffs' characterization of any suicide attempt by A.B. as "half-hearted." Such characterization is indicative of the callousness with which Individual Plaintiffs regarded A.B.'s suicidal ideations, and is consistent with Plaintiff Wartluft's practice of ignoring and discounting the severity of her daughter's mental health condition.  By way of further response, the responsive averments to

paragraph seventy-nine (79) above as to allegations concerning A.B.'s home life and alleged MHS obligations related thereto are incorporated herein by reference as if set forth in full in further denial of the averments of this paragraph.

84.    Denied.   To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.  Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.   Furthermore, any characterization of the home lives of the Individual Plaintiffs or Ms. Fitzpatrick as "unstable and chaotic" is specifically denied.  By way of further response, the responsive averments to paragraph seventy-nine (79) above as to allegations concerning A.B.'s home life and alleged MHS obligations related thereto are incorporated herein by reference as if set forth in full in further denial of the averments of this paragraph.  In addition, it is specifically denied that A.B.'s family lacked the financial resources to take care of themselves or A.B., an allegation that has been directly contradicted by the deposition testimony of the Individual Plaintiffs, Ms. Fitzpatrick, A.B.'s brother, Jacob Bartels, and Mr. Fitzpatrick.  By way of further response, any cognizable alleged injuries to A.B.

were caused by the Individual Plaintiffs' own negligence, and that of Ms. Fitzpatrick and/or Mr. Fitzpatrick.

85-86.   Denied.  To the extent the averments of these paragraphs purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied. Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.

87.   Admitted in part, denied in part.  It is admitted only that A.B. was discharged from the Health Center on May 23, 2013, re-admitted later that same day, and then discharged again on May 24, 2013.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.  Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.

88.   Admitted in part, denied in part.  It is only admitted that Dr. Herr conducted a session with A.B. on May 28, 2013, and after consulting with MHS psychological services staff and conducting an individualized assessment of A.B.,

the need for hospitalization at an in-patient mental health facility was indicated and A.B. was admitted to Philhaven.  By way of further response, A.B. reported that she had suicidal urges over that past weekend, but had not shared that information with any adult, and that she did not act on her suicidal ideations because she did not have any immediate means available to commit death by suicide.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.  Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.

89.     Admitted in part, denied in part.  It is admitted only that A.B. was admitted to and received treatment from Philhaven from May 28, 2013, to June 5, 2013, with the consent of the Individual Plaintiffs, and following discharge to her parents on June 5, 2013, went to the MHS Health Center.  Any characterization of Philhaven by Plaintiffs is specifically denied.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.  Moreover, the allegations in this

32

paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.  By way of further response, to the extent the averments of this paragraph are contradicted by witness testimony, any such averments are specifically denied.

90.    Denied.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.  Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.  By way of further response, it is specifically denied that Philhaven's discharge instructions indicated that "Philhaven professionals saw MHS as a critical component of her therapeutic recovery."  Additionally, it is denied that Plaintiffs attached Exhibit "H" to the Amended Complaint, as they failed to attach any exhibits to the Amended Complaint.

91.    Admitted in part, denied in part.  It is admitted only that A.B. was discharged by Philhaven on June 5, 2013.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by

Plaintiffs are therefore denied.  Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.  By way of further response, the responsive averments to paragraph seventy-nine (79) above as to allegations concerning A.B.'s home life and alleged MHS obligations related thereto are incorporated herein by reference as if set forth in full in further denial of the averments of this paragraph.

92.    Admitted in part, denied in part.  It is admitted only that A.B. was admitted to the Health Center on June 7, 2013, expressing an urge to die rating of 9 on a scale of 10; A.B. visited with her family on both June 8 and June 9, 2013; and she remained in the Health Center until June 11, 2013.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.  Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.  By way of further response, the responsive averments to paragraph seventy-nine (79) above as to allegations concerning A.B.'s home life and alleged MHS obligations related thereto are

incorporated herein by reference as if set forth in full in further denial of the averments of this paragraph.

93.     Admitted in part, denied in part.  It is only admitted that following an individualized assessment of A.B., the need for hospitalization at an in-patient mental health facility was again indicated on or about June 10, 2013, when A.B. reported suicidal urges at 10 on a scale of 10, but there were no beds available.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.   Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.

94.     Denied.  The averments of this paragraph constitute conclusions of law to which no responsive pleading is required.  By way of further answer, the writing from which the content of this paragraph derives speaks for itself and is not subject to characterization or interpretation by Plaintiffs.  Therefore, the averments of this paragraph are specifically denied.

95.     Denied.  The averments of this paragraph constitute conclusions of law to which no responsive pleading is required.  By way of further answer, the writing from which the content of this paragraph derives speaks for itself and is not

subject to characterization or interpretation by Plaintiffs.  Therefore, the averments of this paragraph are specifically denied.

96.   Admitted in part; denied in part.  It is admitted only that A.B. was admitted to an independent, in-patient mental health hospital, PPI, on June 11, 2013, and was discharged to the Individual Plaintiffs and Ms. Fitzpatrick on June 19, 2013.   During her admission to PPI, PPI prescribed A.B. psychotropic medications.  To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied. Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.

By way of further response, MHS was not responsible for A.B.'s discharge plan from PPI, nor for the creation of discharge instructions crafted by PPI that governed A.B.'s treatment plan following her discharge.  In fact, Plaintiff Wartluft and Ms. Fitzpatrick collaborated with PPI in formulating the discharge plan which made no provision for the involvement of MHS clinicians in A.B.'s care following her discharge from PPI.  Plaintiff Wartluft and Ms. Fitzpatrick failed to comply with PPI's discharge plan for A.B., despite their responsibility for the implementation of same.

36

97.    Denied.   To the extent the remaining averments of this paragraph purport to recite the content of medical records of A.B., such averments are specifically denied as the records from which the information derives speak for themselves and any interpretation or characterization of same by Plaintiffs are therefore denied.   Moreover, the allegations in this paragraph are denied generally to the extent such averments constitute conclusions of law to which no response is required.   By way of further response, Dr. Herr determined that A.B. required a higher level of care than MHS could provide and appropriately referred her for in-patient hospitalizations.   Neither MHS nor Dr. Herr were responsible for A.B.'s treatment at either Philhaven or PPI.   To the contrary, during her admission to PPI, A.B.'s treatment was administered by PPI professionals, and the plan for her discharge and subsequent care was directed by PPI to occur with treatment providers not affiliated with MHS, all with the consent and acknowledgement of the Individual Plaintiffs.

98.    Denied.   The averments of this paragraph are conclusions of law to which no response is required.   It is specifically denied that MHS decided, or had any part, in fashioning the terms of A.B.'s discharge from PPI, including the treatment providers from whom A.B. was to receive after care, or the Individual Plaintiffs and Ms. Fitzpatrick's adherence to the terms of PPI's discharge plan. PPI decided to discharge A.B. on June 19, 2013, into the care of Ms. Fitzpatrick,

based upon the consent of Plaintiff Wartluft, and without any notification to MHS. Defendants played no role in A.B.'s discharge from PPI on June 19, 2013.  By way of further response, the characterizations of A.B.'s home life with Plaintiff Wartluft or Ms. Fitzpatrick as "chaotic," "volatile," and "financially unstable" are specifically denied.  The responsive averments to paragraph seventy-nine (79) above as to allegations concerning A.B.'s home life and alleged MHS obligations related thereto are incorporated herein by reference as if set forth in full in further denial of the averments of this paragraph.

99.   Denied.  The averments of this paragraph are conclusions of law to which no response is required.  It is specifically denied that Defendants engaged in an "image-preserving expulsion" of A.B..  To the contrary, A.B. was never expelled from MHS.  By way of further response, Defendants never terminated A.B.'s enrollment with the School and were not involved in her discharge from PPI.

100.  Denied.  The averments of this paragraph are conclusions of law to which no response is required.  The mischaracterization of any writing contained in this paragraph is specifically denied.

101.  Denied.  The averments of this paragraph are conclusions of law to which no response is required, and to the extent deemed factual, the averments are specifically denied.  It is specifically denied that MHS decided, or had any part, in

fashioning the terms of A.B.'s discharge from PPI, including the treatment providers from whom A.B. was to receive after care, or the Individual Plaintiffs and Ms. Fitzpatrick's adherence to the terms of PPI's discharge plan. PPI decided to discharge A.B. on June 19, 2013, into the care of Ms. Fitzpatrick, based upon the oral consent of Plaintiff Wartluft, and without any notification to MHS. Defendants played no role in A.B.'s discharge from PPI on June 19, 2013. By way of further response, it is specifically denied that the home lives of the Individual Plaintiffs or Ms. Fitzpatrick were chaotic at the time of A.B.'s discharge from PPI, or during periods relevant to the Amended Complaint, any such characterization being expressly contradicted by the actual circumstances of A.B.'s home life environments with Plaintiff Wartluft, Ms. Fitzpatrick, and Plaintiff Bartels. By way of further response, the responsive averments to paragraph seventy-nine (79) above as to allegations concerning A.B.'s home life and alleged MHS obligations related thereto are incorporated herein by reference as if set forth in full in further denial of the averments of this paragraph. Defendants further deny the unnumbered heading above ¶ 101 as a legal conclusion to which no responsive pleading is required, or to the extent deemed factual, specifically deny same.

102.   Admitted in part, denied in part. It is admitted only that the MHS academic year ended on June 21, 2013. The remaining averments of this paragraph are denied. By way of further response, neither A.B., nor anyone acting

on behalf of A.B., ever requested to participate in MHS' Year Round Experience. To the contrary, the Individual Plaintiffs indicated to MHS that A.B. had no intention of participating in that program.

103.   Denied.   The averments of this paragraph constitute conclusions of law to which no responsive pleading is required.  By way of further answer, the Handbook speaks for itself and any interpretation or characterization of same by Plaintiffs are specifically denied.

104.   Denied.   The averments of this paragraph constitute conclusions of law to which no responsive pleading is required.  By way of further answer, the promotional material speaks for itself and any interpretation or characterizations of same by Plaintiffs are specifically denied.  By way of further response, neither A.B. nor anyone acting on behalf of A.B. ever requested to participate in MHS' Year Round Experience.  To the contrary, the Individual Plaintiffs indicated to MHS that A.B. had no intention of participating in that program, and they never signed A.B. up for the Year Round Experience.  Additionally, it is denied that Plaintiffs attached a copy of Exhibit "I" to the Amended Complaint, as they failed to attach any exhibits to the Amended Complaint.

105.   Denied.   The averments of this paragraph are conclusions of law to which no response is required.  It is specifically denied that MHS decided, or had any part, in fashioning the terms of A.B.'s discharge from PPI, including the

treatment providers from whom A.B. was to receive after care, or in ensuring the Individual Plaintiffs and Ms. Fitzpatrick's adherence to the terms of PPI's discharge plan. PPI decided to discharge A.B. on June 19, 2013, into the care of Ms. Fitzpatrick, based upon the oral consent of Plaintiff Wartluft, and without any notification to MHS. Defendants played no role in A.B.'s discharge from PPI on June 19, 2013. By way of further response, it is specifically denied that the Year Round Experience was an "ideal opportunity" for A.B., any such characterization having been expressly contradicted by witness testimony and record evidence adduced during discovery in the case. Additionally, information developed during discovery in this case evidences that A.B.'s plan for the 2013 summer was to spend it with Ms. Fitzpatrick in Newport, PA, Plaintiff Wartluft in Steelton, PA, and her grandparents in Arizona.

106-07. Denied. The averments of these paragraphs are conclusions of law to which no response is required, and to the extent deemed factual, are specifically denied. By way of further denial, the responsive averments of paragraph sixteen (16) above are incorporated herein by reference as if set forth in full. Dr. Herr determined that A.B. required a higher level of care than MHS could provide and appropriately referred her for in-patient hospitalizations. Neither MHS nor Dr. Herr were responsible for A.B.'s treatment at either Philhaven or PPI. To the contrary, during her admission to PPI, A.B.'s treatment was administered by PPI

professionals, and the plan for her discharge and subsequent care was directed by

PPI to occur with treatment providers not affiliated with MHS, all with the consent

and acknowledgement of the Individual Plaintiffs.   Additionally, Defendants had

not finalized any decision concerning A.B.'s enrollment status at the School as of

the date of her death by suicide, and in fact, MHS never terminated A.B.'s

enrollment.

108-09.  Denied.  The averments of these paragraphs are conclusions of law

to which no response is required.  It is specifically denied that Defendants maintain

a "'shadow policy'" that "robotically mandate[s] that a student be expelled after

two hospitalizations."   By way of further response, Defendants never made the

decision to terminate A.B.'s enrollment at MHS, as she died by suicide in the care,

custody, and control of Plaintiff Wartluft and Ms. Fitzpatrick on June 29, 2013, in

Newport, PA.  Defendants further specifically deny the heading above ¶ 108.

Moreover, the averments of these paragraphs pertain to a matter having no

relevance or relation to the within action, and otherwise refer to the ADA, a federal

claim conspicuously absent from Plaintiffs' Amended Complaint. Accordingly, the

averments of these paragraphs are irrelevant to Plaintiffs' claims and are

specifically denied in relation to this action. By way of further answer, regarding

reference to or quotation of any writing, including but not limited to MHS records,

court filings, settlement agreements, and MHS policies contained in these

paragraphs, such writings speak for themselves and are not subject to any characterization or interpretation of Plaintiffs. Therefore, the averments of these paragraphs are specifically denied.

110. Denied.

111. Denied. The averments of this paragraph are conclusions of law to which no response is required. By way of further response, it is specifically denied that Defendants maintain any "'two-institutionalization' rule" or policy. Moreover, according to Plaintiff Wartluft's testimony the "two-institutionalization" rule is derived from a discredited critic of MHS with whom the Individual Plaintiffs aligned themselves in the immediate wake of their daughter's death, and who was responsible for the formulation of Plaintiffs' Amended Complaint and the theories of liability averred therein.

112. Denied. The averments of this paragraph are conclusions of law to which no response is required. By way of further response, it is specifically denied that Defendants maintain any "'two-institutionalization' rule" or policy. Moreover, according to Plaintiff Wartluft's testimony the "two-institutionalization" rule is derived from a discredited critic of MHS with whom the Individual Plaintiffs aligned themselves in the immediate wake of their daughter's death, and who was responsible for the formulation of Plaintiffs' Amended Complaint and the theories of liability averred therein.

113.    Denied.  To the extent the averments of this paragraph characterize A.B.'s student records, such records speak for themselves and are not subject to any characterization or interpretation of Plaintiffs.  It is specifically denied that A.B. "consistently expressed a strong desire to remain at MHS."  Rather, A.B. expressed a desire to go to public school with her brother and best friend in Newport, PA, which Plaintiff Wartluft, and Ms. Fitzpatrick expressly confirmed and sought to accomplish in communications with MHS in May 2013, just one month prior to A.B.'s discharge by PPI to the custody of Individual Plaintiffs and Ms. Fitzpatrick and A.B.'s return to her home in Newport.

114.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  It is specifically denied that Defendants maintain an "automatic expulsion" policy.  It is also specifically denied that any such expulsion policy was ever communicated to Plaintiff Wartluft of A.B. by Dr. Herr.  Furthermore, to the extent the averments of this paragraph characterize A.B.'s student records, such records speak for themselves and are not subject to any characterization or interpretation of Plaintiffs.  By way of further response, MHS did not terminate A.B.'s enrollment.

115.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  Furthermore, to the extent the averments of this paragraph characterize A.B.'s student records, such records speak for themselves

44

and are not subject to any characterization or interpretation of Plaintiffs.  It is specifically denied that Defendants maintain an "automatic expulsion" policy.  By way of further response, MHS did not terminate A.B.'s enrollment.

116.   Denied.  The averments of this paragraph are conclusions of law to which no response is required.  By way of further response, Defendants were not "warned" about the consequences of the alleged "policy" because such a policy does not exist.  By way of further response, MHS did not terminate A.B.'s enrollment.

117.   Denied.  The averments of this paragraph are conclusions of law to which no response is required.  The averments of this paragraph pertaining to any determination regarding A.B.'s enrollment are specifically denied.  Additionally, Plaintiffs have failed to identify any witness or document supporting the baseless allegations of this paragraph during discovery.

118.   Admitted in part, denied in part.  It is only admitted that Dr. Herr spoke with Plaintiff Wartluft on June 19, 2013, during which he learned for the first time that A.B. had been discharged from PPI to the care and custody of her family.  By way of further response, to the extent the averments of this paragraph characterize A.B.'s student records, such records speak for themselves and are not subject to any characterization or interpretation of Plaintiffs, and are therefore denied.

119.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  It is specifically denied that MHS was the "only community" A.B. "knew," as she regularly went home to Newport, PA, and Steelton, PA on weekends, the summer, and during School breaks.

120.    Admitted in part, denied in part.  It is only admitted that MHS notifies all parents of the scheduling of 8th grade promotion ceremony, which was scheduled for June 21, 2013.  In addition it is admitted that A.B.'s houseparents, without consultation with MHS, invited A.B. to a post-8th grade promotion ceremony barbeque at the student home.  Plaintiffs' characterization of the importance of the 8th grade promotion ceremony to students enrolled at MHS, including A.B., is specifically denied and has been contradicted by the deposition testimony of Plaintiff Wartluft.  Defendants further specifically deny the heading above ¶ 120.

121.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  Defendants lack knowledge or information sufficient to form a belief about the truth of this averment alleging A.B.'s feelings concerning the 8th grade promotion ceremony.

122.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  It is specifically denied that Defendants maintain a "two-institutionalization" policy.  By way of further response, Defendants deny the

46

mischaracterization of any records referenced in this paragraph, and further deny that Plaintiffs attached Exhibit "J" to the Amended Complaint, as they failed to attach any exhibits to the Amended Complaint.

123.   Denied.  To the extent the averments of this paragraph characterize A.B.'s writings, such records speak for themselves and any characterizations thereof are denied.  By way of further response, the Individual Plaintiffs and their counsel have failed to preserve A.B.'s diaries and/or journals during the time periods relevant to the Amended Complaint, and specifically during the critical ten (10) day period between her discharge from PPI and her suicide on June 29, 2013.

124.   Denied.  To the extent the averments of this paragraph characterize A.B.'s writings, such records speak for themselves and any characterizations thereof are denied.  By way of further response, it is specifically denied that MHS advised A.B. that an "enrollment review" was being conducted and MHS never conducted or recommended an "enrollment review" with respect to A.B. Additionally, it is specifically denied that an "enrollment review" is a known as, or is, a precursor to expulsion as averred in this paragraph.

125.   Denied.  The averments of this paragraph are conclusions of law to which no response is required, and to the extent deemed factual, are specifically denied.  It is specifically denied that an "enrollment review" is only used to pursue

expulsions.  Nonetheless, MHS never conducted or recommended an "enrollment review" with respect to A.B.

126.    Denied.  The averments of this paragraph are conclusions of law to which no response is required and to the extent deemed factual, are specifically denied.  It is specifically denied that enrollment reviews are "sham proceedings." By way of further response, MHS never conducted or recommended an "enrollment review" with respect to A.B.

127-28.        Denied.  The averments of these paragraphs are conclusions of law to which no response is required.  By way of further response, Defendants incorporate by reference its response to ¶ 126.

129.    Denied.  The averments of this paragraph are conclusions of law to which no response is required, and to the extent deemed factual, are specifically denied.   It is specifically denied that an "enrollment review" process was conducted or recommended with respect to A.B.  By way of further response, Defendants incorporate by reference its response to ¶ 126.  Furthermore, to the extent the averments of this paragraph characterize A.B.'s writings, such records speak for themselves and any characterizations thereof are denied.

130.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.    The averments concerning any alleged conversation with Plaintiff Wartluft are specifically denied.  It is specifically

denied that Plaintiff Wartluft was ever told that A.B. was a danger to other children.

131.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  To the extent the averments of this paragraph are deemed factual, the averments are specifically denied.  By way of further response, any cognizable alleged injuries to A.B. were caused by the Individual Plaintiffs' own negligence, and that of Ms. Fitzpatrick and/or Mr. Fitzpatrick.

132.    Denied.   The averments of this paragraph as to what Dr. Herr allegedly "knew" are specifically denied.   Plaintiffs' characterizations of the circumstances described in this paragraph are specifically denied.  By way of further response, contrary to the averments of this paragraph, and the alleged impact of not attending the promotion ceremony on A.B., Plaintiff Wartluft testified that "I think [A.B.] was okay with it, actually.  I think she seemed shockingly okay with it, actually. I was actually surprised that she was so okay with" not attending her 8th grade promotion ceremony.

133.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  To the extent the averments of this paragraph are deemed factual, the averments are specifically denied.  By way of further response, any cognizable alleged injuries to A.B. were caused by the Individual Plaintiffs' own negligence, and that of Ms. Fitzpatrick and/or Mr. Fitzpatrick.

134.   Denied.   It is specifically denied that Defendants have a "'two hospitalization' expulsion policy."   Contrary to the averments of this paragraph, Dr. Herr's reference to the number of in-patient hospitalizations of A.B. had nothing to do with any alleged "shadow policy," of which there is no evidence, but rather speak to the clinical significance of the proximity and need for A.B.'s repeated in-patient hospitalizations, and informed his clinical judgment that A.B. required a level of care beyond that which MHS could provide.   By way of further response, the averments of this paragraph characterize a writing which speaks for itself and thus those mischaracterizations are specifically denied.

135.   Denied.  The averments of this paragraph are conclusions of law to which no response is required, and to extent deemed factual, are specifically denied.  By way of further response, the characterizations of the conversations between A.B. and her brother are specifically denied and contrary to Jacob Bartels' deposition testimony.

136.   Denied.  The averments of this paragraph are conclusions of law to which no response is required, and to the extent deemed factual, are specifically denied.   Additionally, Defendants deny the mischaracterization of any records referred to in this paragraph.  By way of further response, MHS did not terminate A.B.'s enrollment, nor was she expelled from MHS.  To the contrary, as of the date of her death, the letter memorializing the leave of absence for which Dr. Herr had

advocated was awaiting final signature before transmission to the Individual Plaintiffs. Further, Defendants deny the unnumbered paragraph above ¶ 136.

137.   Denied.   The averments of this paragraph are conclusions of law to which no response is required, and to the extent deemed factual, are specifically denied.   By way of further response, contrary to the averments of this paragraph, and the alleged impact of not attending the promotion ceremony on A.B., Plaintiff Wartluft testified that "I think [A.B.] was okay with it, actually.   I think she seemed shockingly okay with it, actually. I was actually surprised that she was so okay with" not attending her 8th grade promotion ceremony.   By way of further answer, the responsive averments to paragraph seventy-nine (79) above as to allegations concerning A.B.'s home life and alleged MHS obligations related thereto are incorporated herein by reference as if set forth in full in further denial of the averments of this paragraph.

138.   Admitted in part, denied in part.   Plaintiffs' characterizations of the circumstances of this paragraph are specifically denied.   By way of further response, MHS was forced to prepare for A.B.'s potential appearance at the 8th grade promotion ceremony due to the irrational behavior of Plaintiff Wartluft, who threatened to attend and create conflict with MHS personnel in front of A.B., exhibiting Plaintiff Wartluft's consistent disregard for the severity of A.B.'s mental health condition.

139.    Admitted in part, denied in part.  It is admitted that A.B. committed suicide by hanging on June 29, 2013, at Plaintiff Bartels' and Ms. Fitzpatrick's residence in Newport, Perry County.  To the extent the averments of this paragraph are intended to relate to causation, such averments are denied as conclusions of law to which no responsive pleading is required.

140.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  By way of further response, Defendants did not terminate A.B.'s enrollment.  The remaining averments of this paragraph are specifically denied.

141.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  By way of further response, Defendants deny the mischaracterization of any records referred to within this paragraph.  The allegations regarding the inclinations of MHS are specifically denied.  By way of further response, MHS never terminated A.B.'s enrollment.

142.    Denied.  To the extent the averments of this paragraph characterize writings, such writings speak for themselves and any characterizations thereof are denied.  It is specifically denied that any process of expulsion or enrollment review was ever convened or recommended with respect to A.B.  No enrollment review was ever conducted or recommended as to A.B.

143.   Denied.  The averments of this paragraph are conclusions of law to which no response is required.  By way of further response, to the extent the averments of this paragraph characterize writings, such writings speak for themselves and any characterizations thereof are denied.  It is specifically denied that the level of Dr. Herr's involvement in A.B.'s treatment at PPI was related to any alleged expulsion or "two hospitalization" policy, the existence of any such policies being specifically denied.  To the contrary, the involvement of Dr. Herr in any treatment rendered by PPI from June 11, 2013, to June 19, 2013, was dictated by PPI, the entity responsible for A.B.'s treatment at that time.

144.   Denied.  It is specifically denied that A.B. was "turned away from MHS to return to her parents on June 19, 2013."  To the contrary, A.B. was discharged into the care and custody of the Individual Plaintiffs and Ms. Fitzpatrick by PPI on June 19, 2013, pursuant to PPI's discharge plan with recommendations for follow up treatment and aftercare with mental health professionals unaffiliated with MHS.  It is further specifically denied that the Individual Plaintiffs and/or Ms. Fitzpatrick were incapable of implementing the terms of the PPI discharge plan, a responsibility they both acknowledged and agreed to as a condition of A.B.'s discharge from PPI.

145.   Denied.  By way of further response, the Individual Plaintiffs and Ms. Fitzpatrick were advised as to the seriousness of A.B.'s mental health issues, but

nevertheless chose to discount the seriousness of A.B.'s suicidal ideations and ignored PPI's discharge plan, in failing to ensure follow up treatment with recommended professionals, failing to administer prescribed medications, and leaving her in the sole custody of Ms. Fitzpatrick's elderly father, Mr. Fitzpatrick, on the date of her death.

146.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  To the extent deemed factual, the averments of this paragraph are specifically denied.  By way of further response, it is specifically denied that MHS was the "only place" A.B. "knew as home."

147-51.    Denied. The averments of these paragraphs are conclusions of law to which no response is required.  To the extent deemed factual, the averments of these paragraphs are specifically denied.

152.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  To the extent deemed factual, the averments of this paragraph are specifically denied.  By way of further answer, the responsive averments to paragraph seventy-nine (79) above as to allegations concerning A.B.'s home life and alleged MHS obligations related thereto are incorporated herein by reference as if set forth in full in further denial of the averments of this paragraph.  It is specifically denied that the quoted language of this paragraph is contained in any writing made by MHS or was said orally at any time.

153.   Admitted in part, denied in part.  It is only admitted that Ric Fouad, who works in concert with Plaintiffs' attorneys from Dilworth Paxson, LLP, contrived and orchestrated a story that was aired by CNN's Anderson Cooper 360 newscast.  It is specifically denied that A.B.'s death was due to any conduct attributable to MHS and is otherwise denied as a conclusion of law to which no response is required.  By way of further response, it is denied that Plaintiffs' attached a video file as Exhibit "K" to the Amended Complaint, as they failed to attach any exhibits to the Amended Complaint.

154.   Denied.  The averments of this paragraph are conclusions of law to which no response is required.  The existence of any mental health policy of MHS as characterized by Plaintiffs is specifically denied.

155-57.   Denied.  By way of further response, the Individual Plaintiffs were unable to identify "AD" when asked about those initials under oath at their depositions and therefore the averments of this paragraph are specifically denied.  To the extent deemed factual, the averments of this paragraph are otherwise specifically denied.

158.   Denied.  By way of further response, the Individual Plaintiffs were unable to identify "KR" when asked about those initials under oath at their depositions and therefore the averments of this paragraph are specifically denied.

To the extent deemed factual, the averments of this paragraph are otherwise specifically denied.

159.   Denied.   The averments of this paragraph are conclusions of law to which no response is required.   To the extent deemed factual, the averments of this paragraph are specifically denied.

## COUNT I, ALLEGED VIOLATION OF THE FAIR HOUSING ACT

**Plaintiffs v. Defendants the Milton Hershey School and The Hershey Trust Company, as trustee of the Milton Hershey School Trust**

160.   Denied.   This paragraph concerns a statement of incorporation to which no response is required.   To the extent a response is required, such averments are denied.   By way of further response, Defendants incorporate the foregoing paragraphs as though set forth at length herein.

161.   Denied.   The averments of this paragraph are conclusions of law to which no response is required.

162.   Denied.  It is specifically denied that MHS discriminated against A.B. by denying her housing at MHS on the basis of her mental handicap.

163.   Denied.   The averments of this paragraph are conclusions of law to which no response is required.   By way of further response, PPI discharged A.B. on June 19, 2013, into the care of Ms. Fitzpatrick with the oral consent of Plaintiff Wartluft.   Additionally, A.B. and the Individual Plaintiffs failed to request a

reasonable accommodation under the Fair Housing Act ("FHA"), and A.B. never had any intention of participating in Year Round Experience.

164.   Denied.   The averments of this paragraph are conclusions of law to which no response is required.   It is specifically denied that Newport, PA, was a "dangerous situation" for A.B..   By way of further response, PPI discharged A.B. on June 19, 2013, into the care of Ms. Fitzpatrick with the oral consent of Plaintiff Wartluft, and she was subsequently transported to Newport, PA.

165.   Denied.   The averments of this paragraph are conclusions of law to which no response is required.   By way of further response, A.B.'s enrollment was never terminated prior to her death.

166.   Denied.   The averments of this paragraph are conclusions of law to which no response is required.   By way of further response, A.B.'s enrollment was never terminated prior to her death.

167.   Denied.   The averments of this paragraph are conclusions of law to which no response is required.   To the extent deemed factual, the allegations of this paragraph are denied.

168.   Denied.   The averments of this paragraph are conclusions of law to which no response is required.   It is specifically denied that Defendants "applied a policy requiring expulsion after a student is twice admitted to an outside mental

health institution." By way of further response, A.B.'s enrollment was never terminated prior to her death.

169-72. Denied. The averments of these paragraphs are conclusions of law to which no response is required. To the extent that the allegations of these paragraphs are deemed factual, the averments are specifically denied.

173. Denied. The averments of this paragraph are conclusions of law to which no response is required. By way of further response, it is specifically denied that the Individual Plaintiffs or A.B. have suffered any damages.

174. Denied. It is specifically denied that "Defendants' [purported] discrimination was a direct and factual cause that led [A.B.] to sustain severe emotional and psychological harm and humiliation, as well as take her own life."

175. Denied. The averments of this paragraph are conclusions of law to which no response is required. It is specifically denied that A.B.'s student home constituted "a dwelling" under the FHA.

176-77. Denied. The averments of these paragraphs are conclusions of law to which no response is required. It is specifically denied that any "consideration" was exchanged between Defendants, the Individual Plaintiffs, or A.B.

178. Denied. The averments of this paragraph are conclusions of law to which no response is required.

179.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.   It is specifically denied that "Defendants' [purported] discrimination was a direct and factual cause that led [A.B.] to sustain severe emotional and psychological harm and to take her own life[,]" and it is further denied that Defendants' actions are in any way "directly and proximately caused" A.B. to sustain harm.

180.    Denied.  The averments of this paragraph are conclusions of law to which no response is required.  By way of further response, MHS is a school, and not a twenty-four-hour mental health care facility.

181-82.  Denied.  The averments of these paragraphs are conclusions of law to which no response is required.

## COUNT III, ALLEGED NEGLIGENCE, BREACH OF DUTY OF CARE

### Plaintiffs v. Defendants the Milton Hershey School and The Hershey Trust Company, as trustee of the Milton Hershey School Trust

183.    Denied.   This paragraph concerns a statement of incorporation to which no response is required.   To the extent a response is required, such averments are denied.  By way of further response, Defendants incorporate the foregoing paragraphs as though set forth at length herein.[4]

---

[4] Plaintiffs' Amended Complaint does not contain a Count II.

184-96.   Denied.   The averments of these paragraphs are conclusions of law to which no response is required.   To the extent the allegations of these paragraphs are deemed factual, they are denied.   All responsive averments in the preceding paragraphs of this Answer, including the Introduction, are incorporated herein by reference in denial of these paragraphs.   By way of further response, it is specifically denied that Defendants owed A.B. "a special and higher duty of care[.]"  By way of further response, any cognizable alleged injuries to A.B. were caused by the Individual Plaintiffs' own negligence, and that of Ms. Fitzpatrick and/or Mr. Fitzpatrick.

## COUNT V, ALLEGED WRONGFUL DEATH

**Plaintiffs, Julie Ellen Wartluft and Frederick L. Bartels, Jr. v. Defendants the Milton Hershey School and The Hershey Trust Company, as trustee of the Milton Hershey School Trust**

197.   Denied.   This paragraph concerns a statement of incorporation to which no response is required.   To the extent a response is required, such averments are denied.   By way of further response, Defendants incorporate the foregoing paragraphs as though set forth at length herein.[5]

198-202.   Denied.   The averments of these paragraphs are a conclusions of law to which no response is required.   To the extent a response is required, such averments are denied.

---

[5] Plaintiffs' Amended Complaint does not contain a Count IV.

## COUNT VI, ALLEGED SURVIVAL ACT

**Plaintiffs, Julie Ellen Wartluft and Frederick L. Bartels, Jr. v. Defendants the Milton Hershey School and The Hershey Trust Company, as trustee of the Milton Hershey School Trust**

203.   Denied.   This paragraph concerns a statement of incorporation to which no response is required.   To the extent a response is required, such averments are denied.   By way of further response, Defendants incorporate the foregoing paragraphs as though set forth at length herein.

204-05.   Denied.   The averments of these paragraphs are a conclusions of law to which no response is required.   To the extent a response is required, such averments are denied.

## COUNT VII, ALLEGED NEGLIGENT MISREPRESENTATION

**Plaintiffs v. Defendants the Milton Hershey School and The Hershey Trust Company, as trustee of the Milton Hershey School Trust**

206-17.   Denied.   The averments of these paragraphs all refer to Count VII (Negligent Misrepresentation) which this Court dismissed without prejudice in its December 7, 2018, Memorandum Opinion and Order.   As Plaintiffs failed to file a Second Amended Complaint re-pleading this Count, it is no longer viable, and, thus, no response is required.   To the extent any response is required, such averments are denied as conclusions of law, and to the extent deemed factual, are specifically denied.   By way of further response, Defendants incorporate the foregoing paragraphs as though set forth at length herein.

## COUNT VIII, ALLEGED INTENTIONAL MISREPRESENTATION

### Plaintiffs v. Defendants the Milton Hershey School and The Hershey Trust Company, as trustee of the Milton Hershey School Trust

218-24.   Denied.   The averments of these paragraphs all refer to Count VIII (Intentional Misrepresentation) which this Court dismissed without prejudice in its December 7, 2018, Memorandum Opinion and Order.   As Plaintiffs failed to file a Second Amended Complaint re-pleading this Count, it is no longer viable, and, thus, no response is required.   To the extent any response is required, such averments are denied as conclusions of law, and to the extent deemed factual, are specifically denied.   By way of further response, Defendants incorporate the foregoing paragraphs as though set forth at length herein.

## COUNT IX, ALLEGED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### Plaintiffs v. Defendants the Milton Hershey School and The Hershey Trust Company, as trustee of the Milton Hershey School Trust

225-30.   Denied.   The averments of these paragraphs all refer to Count IX (Intentional Infliction of Emotional Distress) which this Court dismissed without prejudice in its December 7, 2018, Memorandum Opinion and Order.   As Plaintiffs failed to file a Second Amended Complaint re-pleading this Count, it is no longer viable, and, thus no response is required as to them. To the extent any response is required for the Estate's allegations, such averments are denied as conclusions of law, and to the extent deemed factual, are specifically denied.   By way of further

response, Defendants incorporate the foregoing paragraphs as though set forth at length herein.

## COUNT X, ALLEGED NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**Plaintiffs v. Defendants the Milton Hershey School and The Hershey Trust Company, as Trustee of the Milton Hershey School Trust**

231-35.  Denied.  The averments of these paragraphs are conclusions of law to which no response is required. To the extent a response is required, such averments are denied.  All responsive averments in the preceding paragraphs of this Answer, including the Introduction, are incorporated herein by reference in denial of these paragraphs.  By way of further answer, it is specifically denied that the School had a "custom, practice or policy requiring the expulsion of students suffering with mental health impairments."

## COUNT XI, ALLEGED CIVIL CONSPIRACY TO ENDANGER CHILDREN

**Plaintiffs v. Defendants the Milton Hershey School and The Hershey Trust Company, as Trustee of the Milton Hershey School Trust**

236-44.  Denied.  The averments of these paragraphs are conclusions of law to which no response is required.  To the extent a response is required, or to the extent such averments are deemed factual, the averments are specifically denied. All responsive averments in the preceding paragraphs of this Answer, including the Introduction, are incorporated herein by reference in denial of these paragraphs.

By way of further answer, it is specifically denied that "there is an implied civil cause of action for endangering the welfare of children[,]" as Pennsylvania courts have consistently held that no cause of action exists.  By way of further response, Defendants incorporate the foregoing paragraphs as though set forth at length herein.

## COUNT XII, ALLEGED BREACH OF THE FIDUCIARY DUTIES OF CARE AND GOOD FAITH

**Plaintiffs v. Defendants the Milton Hershey School and The Hershey Trust Company, as Trustee of the Milton Hershey School Trust**

245-53.  Denied.  The averments of these paragraphs are conclusions of law to which no response is required.  To the extent a response is required, such averments are specifically denied.  All responsive averments in the preceding paragraphs of this Answer, including the Introduction, are incorporated herein by reference in denial of these paragraphs.

## COUNT XIII, ALLEGED NEGLIGENCE *PER SE*

**Plaintiffs v. Defendants the Milton Hershey School and The Hershey Trust Company, as Trustee of the Milton Hershey School Trust**

254.  Denied.   This paragraph concerns a statement of incorporation to which no response is required.  To the extent a response is required, such averments are specifically denied.  By way of further response, Defendants incorporate the foregoing responsive paragraphs by reference as though set forth at length herein.

255-59.  Denied.  The averments of these paragraphs are conclusions of law to which no response is required.  To the extent a response is required, such averments are specifically denied.

## PRAYER FOR RELIEF

Answering the Prayer for Relief, and all subparts thereto, Defendants deny that they are liable to Plaintiffs in any manner whatsoever, and deny each and every allegation of the Prayer for Relief separately and severally.  Defendants further deny that Plaintiffs are entitled to any relief.

WHEREFORE, Defendants, the Milton Hershey School, and The Hershey Trust Company, as trustee of The Milton Hershey School (identified in the caption and Amended Complaint as "The Hershey Trust Company, as trustee of the Milton Hershey School Trust") respectfully request that the Court enter judgment in their favor and against Plaintiffs, and award all costs, fees, and other relief as the Court deems appropriate.  It is further requested that all improper items sought in Plaintiffs' Prayer for Relief, such as references to the ADA, be stricken and dismissed with prejudice.

## AFFIRMATIVE DEFENSES

In further answering Plaintiffs' Amended Complaint, with incorporation of all foregoing responsive averments, Defendants assert the following affirmative defenses.  Defendants also reserve the right to assert additional affirmative

defenses that may be pertinent to Plaintiffs' claims when the precise nature of such claims are ascertained through discovery and based upon facts as this matter progresses.

**First Affirmative Defense**

Plaintiffs' Amended Complaint fails to state claims upon which relief may be granted.

**Second Affirmative Defense**

Plaintiffs' Amended Complaint fails to state legally cognizable tort claims against Defendants.

**Third Affirmative Defense**

MHS, including by and through its employees, fulfilled any duties, responsibilities, and obligations owed to A.B. and Plaintiffs.

**Fourth Affirmative Defense**

MHS, including by and through its employees, fulfilled any duties, responsibilities, and obligations owed to A.B. and Plaintiffs within the scope of their educational and child welfare mission.

**Fifth Affirmative Defense**

MHS, including by and through its employees, did not breach any duty owed to A.B. or Plaintiffs.

### Sixth Affirmative Defense

The duties alleged by Plaintiffs to have been breached by Defendants are duties owed by persons and/or entities that treated A.B. subsequent to MHS's referral of A.B. for in-patient hospitalization at PPI.

### Seventh Affirmative Defense

HTC did not commit any of the alleged negligent acts or omissions averred by Plaintiffs, and HTC cannot be liable for breach of any duty alleged by Plaintiffs as a matter of law.

### Eighth Affirmative Defense

HTC did not breach any duty alleged to be owed to A.B. or Plaintiffs.

### Ninth Affirmative Defense

HTC cannot be held vicariously liable for the negligent acts and/or omissions alleged by Plaintiffs to have been committed by MHS or MHS employees, any such alleged negligent acts or omissions being expressly denied.

### Tenth Affirmative Defense

Neither A.B. nor Plaintiffs sustained any injury for which Defendants are liable.

### Eleventh Affirmative Defense

Neither A.B. nor Plaintiffs sustained any injury caused by or resulting from any act or omission by Defendants, their employees, agents, or representatives as alleged by Plaintiffs.

### Twelfth Affirmative Defense

No act or omission by Defendants their employees, agents, or representatives caused A.B.'s death as alleged by Plaintiffs.

### Thirteenth Affirmative Defense

Plaintiffs' claims are barred because Plaintiffs' alleged damages, including any damages alleged to A.B., if any, were caused in whole or in part by their own actions, omission, and negligence.

### Fourteenth Affirmative Defense

In contrast to Plaintiffs, Defendants have at all times acted appropriately, lawfully, properly, and in good faith.

### Fifteenth Affirmative Defense

Plaintiffs were contributorily or comparatively negligent in their acts and/or omissions leading to and/or causing their alleged damages, including, but not limited to, the death of A.B.

## Sixteenth Affirmative Defense

Plaintiffs are jointly and/or severally liable to Defendants for contribution pursuant to Pennsylvania's Uniform Contribution Among Joint Tortfeasors Act, 42 Pa. C.S.A. § 8321, *et seq.*, including for the factual and legal cause of any alleged injuries and/or damages suffered by A.B., including, but not limited to, her death.

## Seventeenth Affirmative Defense

Because of their actions, omissions, and negligence, Plaintiffs, Karen Fitzpatrick, and Thomas Fitzpatrick are jointly and severally liable to Defendants for contribution and/or indemnification with respect to any alleged damages arising from A.B.'s death.

## Eighteenth Affirmative Defense

Plaintiffs have failed to name or join indispensable parties to the present action, including, but not limited to, Karen Fitzpatrick and Thomas Fitzpatrick, who are responsible and liable, in whole or in part, for the alleged damages arising from A.B.'s death.  Therefore, the Court cannot grant complete relief among the existing parties absent the addition of Karen Fitzpatrick and Thomas Fitzpatrick to this action.

## Nineteenth Affirmative Defense

Plaintiffs' claims are barred because Plaintiffs' alleged damages, if any, were caused in whole or in part by the actions, omission, and/or negligence of non-parties.

## Twentieth Affirmative Defense

Plaintiffs' claims are barred for lack of factual, legal, and proximate causation.

## Twenty-First Affirmative Defense

Plaintiffs' claims are barred because suicide constitutes an independent intervening act that is not reasonably foreseeable as a matter of law.

## Twenty-Second Affirmative Defense

Plaintiffs' claims are barred for failure to mitigate damages.

## Twenty-Third Affirmative Defense

Any damages to Plaintiffs were caused by events that occurred separate of, independent of, and/or after the conduct ascribed to the Defendants in the Amended Complaint.

## Twenty-Fourth Affirmative Defense

Plaintiffs' claims for negligence are barred by the Enrollment Agreement executed by the Individual Plaintiffs.

## Twenty-Fifth Affirmative Defense

Plaintiffs' claims for equitable relief are barred because Plaintiffs have an adequate remedy at law.

## Twenty-Sixth Affirmative Defense

Plaintiffs' claims for equitable relief are barred because Plaintiffs lack standing to assert them.

## Twenty-Seventh Affirmative Defense

Plaintiffs are not entitled to recover attorney's fees, punitive damages, and/or costs and expenses.

## Twenty-Eighth Affirmative Defense

Plaintiffs' claims for wrongful death and the survival act are barred for lack of underlying tortious conduct.

## Twenty-Ninth Affirmative Defense

Plaintiffs' claims under, *inter alia*, the FHA are barred because Plaintiffs lack standing, and otherwise fail to state a claim upon which relief can be granted.

## Thirtieth Affirmative Defense

Plaintiffs' claims under the FHA are barred because A.B. was not a "buyer or renter" of a dwelling.

### Thirty-First Affirmative Defense

Plaintiffs' claims under the FHA are barred because A.B. did not receive unequal services, privileges, or conditions of housing.

### Thirty-Second Affirmative Defense

Plaintiffs' claims under the FHA are barred because Defendants never refused a necessary and reasonable accommodation.

### Thirty-Third Affirmative Defense

Plaintiffs' claims under the FHA are barred because of a failure of consideration.

### Thirty-Fourth Affirmative Defense

Plaintiffs' claims dependent upon the existence of an alleged "two-hospitalization" policy fail because no such policy exists.

### Thirty-Fifth Affirmative Defense

Plaintiffs' claim for civil conspiracy to endanger children fails because there is no express or implied private cause of action in the statute.

### Thirty-Sixth Affirmative Defense

Plaintiffs' claim for breach of fiduciary duty fails because there is no fiduciary duty between a school and a student.

## Thirty-Seventh Affirmative Defense

Plaintiffs' claim for negligence *per se* fails because the ADA and FHA cannot serve as the basis for a negligence *per se* claim.

## Thirty-Eighth Affirmative Defense

Plaintiffs' claims are barred by the spoliation of evidence, including concerning the causes of A.B.'s death. Plaintiffs concealed from Defendants that A.B.'s psychotropic medication allegedly went missing on June 26, 2013, three days before she died by suicide on June 29, 2013, and Plaintiffs have been unable to produce many of A.B.'s original diaries or journals. Furthermore, the Individual Plaintiffs failed to ensure that a neurological examination or autopsy was performed on A.B. Therefore, the coroner did not have all of the information necessary to identify the cause, mode, and manner of death or the contributing factors to A.B.'s death. Without a complete autopsy based on all of the facts that the Individual Plaintiffs withheld, Defendants are deprived of evidence that would help prove their defenses, and the lack of any causation.

## Thirty-Ninth Affirmative Defense

Plaintiffs' state law claims are barred by the gist of the action doctrine.

## Fortieth Affirmative Defense

Plaintiffs' state law claims are barred by the economic loss doctrine.

### Forty-First Affirmative Defense

Plaintiffs' claims are barred by the doctrines of estoppel and waiver.

### Forty-Second Affirmative Defense

Plaintiffs' claims are barred by their own breaches of contract.

### Forty-Third Affirmative Defense

Plaintiffs' claims are barred by principles of privilege, release, license, and/or justification.

### Forty-Fourth Affirmative Defense

Plaintiffs' Amended Complaint and each purported cause of action therein are barred by the doctrine of unclean hands.

### Forty-Fifth Affirmative Defense

Defendants incorporate by reference all affirmative defenses set forth in Rule 8 of the Federal Rules of Civil Procedure.

### PRAYER FOR RELIEF

WHEREFORE, Defendants pray for judgment as follows:

1.     That the Amended Complaint be dismissed with prejudice;

2.     That Defendants' be awarded their costs of suit, including, but not limited to, reasonable attorneys' fees; and

3.     That Defendants be awarded such other and further relief as is just and appropriate.

Respectfully submitted,

/s/ *Jarad W. Handelman*

Jarad W. Handelman, Esquire
(PA 82629)
Kyle M. Elliott, Esquire
(PA 306836)
Elliott Greenleaf, P.C.
17 N. Second Street, Suite 1420
Harrisburg, PA 17101
717.307.2600 (phone) / 717.307.2060 (fax)
215.977.1000 (phone) / 215.977.1099 (fax)
jwh@elliottgreenleaf.com
kme@elliottgreenleaf.com

Dated: January 22, 2019                *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Kyle M. Elliott, Esquire, hereby certify that I caused the foregoing Amended Answer with Affirmative Defenses to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record, including:

Gregory F. Cirillo, Esquire
John J. Higson, Esquire
John W. Schmehl, Esquire
Dilworth Paxson LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
215.575.7000 (phone)
gcirillo@dilworthlaw.com
jschmehl@dilworthlaw.com
jhigson@dilworthlaw.com

*Counsel for Plaintiffs*

Dated: January 22, 2019                    */s/ Kyle M. Elliott*
                                            Kyle M. Elliott, Esquire