## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE ELLEN WARTLUFT F/K/A JULIE ELLEN BARTELS AND FREDERICK L. BARTELS, JR., Individually and as Administrators of the Estate of Abrielle Kira Bartels, Deceased,<br><br>              Plaintiffs,<br>    vs.<br>THE MILTON HERSHEY SCHOOL and THE HERSHEY TRUST COMPANY, AS TRUSTEE OF THE MILTON HERSHEY SCHOOL TRUST,<br>      Defendants / Third-Party Plaintiffs,<br>    vs.<br>KAREN FITZPATRICK and THOMAS FITZPATRICK,<br>          Third-Party Defendants. | C.A. NO.:<br>1:16-cv-02145-JEJ<br><br>(Jones III, J.) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST THE <u>INDIVIDUAL PLAINTIFFS JULIE WARTLUFT AND FRED BARTELS</u>

Jarad W. Handelman
Kyle M. Elliott
17 N. Second Street, Suite 1420
Harrisburg, PA 17101
717.307.2600 (phone) / 717.307.2060 (fax)
215.977.1000 (phone) / 215.977.1099 (fax)
jwh@elliottgreenleaf.com
kme@elliottgreenleaf.com

*Attorneys for Defendants, the Milton Hershey School, and Hershey Trust Company, as trustee of the Milton Hershey School Trust*

# TABLE OF CONTENTS

I.      INTRODUCTION ..........................................................................................1

II.     FACTUAL BACKGROUND...................................................................3

III.    STATEMENT OF QUESTIONS INVOLVED .............................................9

IV.     LEGAL ARGUMENT.................................................................................9

        A.      Standard of Review. .....................................................................9

        B.      Plaintiffs' Fair Housing Act Claim (Count I) Fails as a
                Matter of Law Because They Cannot Sue for the Alleged
                Deprivation of the Civil Rights of Another Individual. ......................10

        C.      Plaintiffs' Negligence Claim (Count III) Fails Because
                Plaintiffs Failed to Plead That Defendants Owed Them a
                Duty, Breached an Alleged Duty, or That Plaintiffs Suffered
                Foreseeable Damages Proximately Caused by an Alleged
                Breach of Duty. ..................................................................................12

        D.      Plaintiffs' Negligent Infliction of Emotional Distress Claim
                (Count X) Fails as a Matter of Law Because The Court Has
                Already Found that Plaintiffs Failed to Plead that they
                Suffered any Physical Harm..............................................................14

        E.      There Is No Implied Civil Cause of Action for Civil
                Conspiracy to Endanger the Welfare of Children (Count XI). ...........15

        F.      Plaintiffs' Breach of Fiduciary Duty Claim (Count XII) Fails
                as a Matter of Law Because Plaintiffs Failed to Allege, Nor
                Could They, That Defendants Owed Them a Fiduciary Duty. ...........18

        G.      Plaintiffs' Negligence *Per Se* Claim (Count XIII) Fails
                Because Neither the FHA Nor the ADA Provide a
                Cognizable Basis for the Claim..........................................................19

        H.      The Court Should Strike Plaintiffs' Requests for Prospective
                Injunctive Relief as Moot Because Plaintiffs' Cannot Show
                that They Are Likely to Suffer Any Future Alleged Harm.................20

V.      CONCLUSION.............................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Alfred M. Lutheran Distribs. v. A.P. Weilersvacher, Inc.*,
650 A.2d 83 (Pa. Super. Ct. 1994) ................................................................. 16

*Aponik v. Verizon Pa., Inc.*,
106 F. Supp. 3d 619 (E.D. Pa. 2015) ............................................................. 20

*Archuleta v. McShan*,
897 F.2d 495 (10th Cir. 1990) .................................................................. 11-12

*Armstrong v. Paoli Mem'l Hosp.*,
633 A.2d 605 (Pa. Super. Ct. 1993) ............................................................. 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................. 9, 10

*Atamian v. Assadzadeh*,
2002 U.S. Dist. LEXIS 6269 (E.D. Pa. 2002) ................................................. 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................... 9-10

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ........................................................................ 18

*Brown v. Phila. Coll. of Osteopathic Med.*,
760 A.2d 863 (Pa. Super. Ct. 2000) ............................................................. 14

*Brown-Dickerson v. City of Phila.*,
2016 U.S. Dist. LEXIS 54624 (E.D. Pa. 2016) .............................................. 22

*Campo v. St. Luke's Hosp.*,
755 A.2d 20 (Pa. Super. Ct. 2000) ........................................................... 12, 13

*Concert v. Luzerne County Children & Youth Servs.*,
2008 U.S. Dist. LEXIS 106446 (M.D. Pa. 2008) ........................................... 16

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016) ...................................................................... 9, 10

*Coplay Aggregates, Inc. v. Bayshore Soil Mgmt. L.L.C.*,
2011 U.S. Dist. LEXIS 54830 (E.D. Pa. 2011) .............................................. 19

*Doe v. Archdiocese of Phila.* ,
　31 Pa. D. & C.5th 83 (2013) ............................................................... 16, 17, 18

*Fair Hous. Council v. Main Line Times*,
　141 F.3d 439 (3d Cir. 1998) ............................................................... 11

*Fair Hous. Council v. Montgomery Newspapers*,
　141 F.3d 71 (3d Cir. 1998) ............................................................... 11

*Fulton v. United States*,
　198 F. App'x 210 (3d Cir. 2006) ....................................................... 15

*Goldstein v. Phillip Morris, Inc.*,
　854 A.2d 585 (Pa. Super. Ct. 2004) ................................................. 15

*Hunter v. District of Columbia*,
　64 F. Supp. 3d 158 (D.D.C. 2014) ..................................................... 20

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.* ,
　903 F.3d 278 (3d Cir. 2018) ............................................................... 21

*Levin v. Dollar Tree Stores, Inc.*,
　2006 U.S. Dist. LEXIS 88595 (E.D. Pa. 2006) .......................... 19-20

*McCree v. SEPTA*,
　2009 U.S. Dist. LEXIS 4803 (E.D. Pa. 2009) ................................. 19

*McNair v. Synapse Grp., Inc.*,
　672 F.3d 213 (3d Cir. 2012) ............................................................... 21

*Mirabella v. William Penn Charter Sch.*,
　2018 U.S. App. LEXIS 33075 (3d Cir. 2018) ................................. 21

*O'Malley v. Brierley*,
　477 F.2d 785 (3d Cir. 1973) ............................................................... 11

*Pecha v. Lake*,
　700 F. App'x 840 (10th Cir. 2017) ................................................... 21

*Ramalingam v. Keller Williams Realty Grp., Inc.*,
　121 A.3d 1034 (Pa. Super. Ct. 2015) ............................................... 19

*Shemtov Michtavi v. United States*,
　2009 U.S. Dist. LEXIS 18926 (M.D. Pa. 2009) .............................. 15

*Smith v. Twp. of Warren,*
   2016 U.S. Dist. LEXIS 177726 (D.N.J. 2016) ............................................ 21-22

*Steele v. First Nat'l Bank of Mifflintown,*
   963 F. Supp. 2d 417 (M.D. Pa. 2013) ...................................... 12, 13, 14, 18-19

*Stukes v. Knowles,*
   229 F. App'x 151 (3d Cir. 2007) ...................................................................... 11

*Tandy v. City of Wichita,*
   380 F.3d 1277 (10th Cir. 2004) ...................................................................... 21

*United States v. Gambone Bros. Dev. Co.,*
   2008 U.S. Dist. LEXIS 73503 (E.D. Pa. 2008) ............................................... 11

*Wartluft v. Milton Hershey Sch. & Sch. Tr.,*
   2017 U.S. Dist. LEXIS 172985 (M.D. Pa. 2017) ......................................... 8, 9

*Wartluft v. Milton Hershey Sch.,*
   354 F. Supp. 3d 584 (M.D. Pa. 2018) ............................................................. 15

*Waters v. Cheltenham Twp.,*
   700 F. App'x 149 (3d Cir. 2017) ...................................................................... 9

*Weaver v. Wilcox,*
   650 F.2d 22 (3d Cir. 1981) ............................................................................... 11

**Statutes**

18 Pa. Cons. Stat. Ann. § 4304 ............................................................................. 17

Defendants, the Milton Hershey School ("MHS"), and Hershey Trust Company ("HTC"), trustee of the Milton Hershey School Trust (collectively "Defendants"), hereby submit this Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). This Court should grant Defendants' Motion, dismiss Counts I, III, X, XI, XII, XIII asserted by Plaintiffs Julie Wartluft and Fred Bartles individually ("Plaintiffs"), and strike the request for prospective injunctive relief as moot.

## I.    <u>INTRODUCTION</u>

On December 7, 2018, the Court's opinion *sue sponte* re-instated tort claims that had previously been dismissed pursuant to the gist of the action doctrine. As such, the Amended Complaint currently asserts seven (7) claims on behalf of Plaintiffs Wartluft and Bartels, individually (Counts I, III, V, X-XIII). Defendants now move for judgment on the pleadings with respect to six (6) of these seven (7) claims.

Counts XI and XIII are not cognizable as a matter of Pennsylvania law. Count XI asserts a claim for civil conspiracy to endanger children, but Pennsylvania law does not recognize such a private cause of action. Count XIII raises a claim for negligence *per se* based upon alleged violations of the Americans with Disabilities Act ("ADA"), and Fair Housing Act ("FHA"), however, courts

within the Third Circuit have uniformly held that violations of these statutes cannot form the basis of a negligence *per se* claim.

Counts III (negligence), X (negligent infliction of emotional distress), and XII (breach of fiduciary duty) fail as a matter of controlling law because the Amended Complaint pleads that Defendants only allegedly owed duties *to A.B.*, not *Plaintiffs individually*. Moreover, the Amended Complaint is devoid of any allegations that *Plaintiffs individually* suffered any physical harm, or any other injury, that was proximately caused by a breach of some unidentified duty *owed to the Plaintiffs individually*.

Count I asserts a violation of the FHA, but the Amended Complaint pleads that *only A.B.* was an individual with a disability, that *only A.B.* was allegedly discriminated against, and that *only A.B.* suffered some purported harm as a result thereof. As such, Plaintiffs' FHA claim plainly asserts a cause of action to vindicate the civil rights of another individual, A.B., which is impermissible under well-established Third Circuit law.

Finally, this Court should strike Plaintiffs' request for prospective injunctive relief, which is directly traceable to the radical policy and mission change agenda of F. Frederic ("Ric") Fouad and his sham 501(c)(3), Protect the Hersheys' Children, Inc ("PHC"). Plaintiffs cannot plausibly allege that they are likely to

suffer any future harm as a result of the conduct and/or policies of Defendants and thus lack standing to seek prospective injunctive relief.

Accordingly, this Court should grant Defendants' Motion, dismiss Counts I, III, X, XI, XII, and XIII with prejudice as to Plaintiffs, and strike their request for prospective injunctive relief.

## II.    FACTUAL BACKGROUND

MHS is a cost-free, not-for-profit residential school established in 1910, to provide a positive, structured academic and residential curriculum to help children gain the skills to be successful in all aspects of life.  Today, MHS is among the largest residential schools in the nation, offering individualized attention, small class sizes, and top-notch academic programs to children in prekindergarten through 12th grade from low-income families.

A.B. began attending MHS in 2004 in Kindergarten. (Am.Compl. ¶16; Ex. 1.) In eighth grade, A.B.'s mental health began to deteriorate as a result of depression and suicidal ideations. (*Id*. ¶69-70.)  In response, Plaintiffs and Third-Party Defendant Karen Fitzpatrick, a legal guardian of A.B. authorized by Plaintiffs to exercise legal and physical custody over her, requested that A.B. be permitted to leave MHS, and reside and attend public school in Newport, Pennsylvania where Ms. Fitzpatrick and Plaintiff Bartels resided in a recently-renovated, suburban, two-story home. (Doc.222,Ans.,p.3; Ex. 2.)   According to

Plaintiffs and Ms. Fitzpatrick, A.B. was homesick and desired to attend public school in Newport like her brother, who also resided with Ms. Fitzpatrick. (*Id.*)

In May 2013, A.B.'s mental health deteriorated to a degree that precluded her from participating in MHS's academic and residential curriculums. (*Id.*; Am.Compl. ¶¶78-88.) A.B.'s thoughts of suicide continued to intensify, necessitating a higher level of care than MHS could provide. (Ans.,p.3; Am.Compl. ¶¶78-88.) In order to meet her mental health needs, an in-patient mental health hospitalization was required on May 28, 2013. (Am.Compl. ¶89.) On June 5, 2013, A.B. was discharged to Plaintiffs, her parents. (*Id.* ¶¶89-90; Ans.,p.3.)

Soon after returning to MHS, A.B. disclosed to a classmate that she was again experiencing urges to harm herself, and that her medication was not working. (Ans., pp.3-4.) A.B.'s suicidal ideation was rated a 10 out of 10. (*Id.,* 4.) Accordingly, it was determined that A.B. required a higher level of care than MHS could provide, necessitating her readmission to an in-patient mental health institution to treat her recurring and increasingly severe suicidal ideations. (*Id.*; Am.Compl. ¶95.)

On June 11, 2013, MHS referred A.B. to an in-patient mental health institution, Pennsylvania Psychiatric Institute ("PPI"), where she was admitted for treatment with the consent of Plaintiffs and Ms. Fitzpatrick. (Ans.,p.4; Am.Compl.

¶96.) PPI conducted its own independent assessment of A.B., and concluded that she required in-patient treatment at its facilities. (Ans.,p.4.) After a course of treatment administered exclusively by PPI, and in anticipation of her discharge from PPI, Plaintiff Wartluft and Ms. Fitzpatrick worked collaboratively with PPI and outside mental health providers that they themselves identified to fashion a discharge plan for A.B. (*Id.*) The discharge plan crafted by PPI, with the participation and express agreement of Plaintiff Wartluft and Ms. Fitzpatrick, did not involve MHS, nor did it include any provision for treatment by MHS clinicians following discharge from PPI. (*Id.*)

To ensure continuity of A.B.'s care, the discharge plan crafted by PPI required treatment with a psychotherapist, specifically Lesley P. Davis ("Ms. Davis"), of Pinnacle Health Psychological Associates ("PHPA") at "Brady Hall." (*Id.,* 4-5.) Ms. Davis is a psychotherapist who Plaintiff Wartluft identified to PPI, and with whom PPI, at Plaintiff Wartluft's direction, coordinated A.B.'s aftercare, commencing with an appointment for treatment just hours after her discharge from PPI. (*Id.*, 5.)

The discharge plan also directed Plaintiff Wartluft and Ms. Fitzpatrick to ensure A.B's medication, Zoloft, was taken as prescribed; to ensure medication monitoring was arranged with PHPA; to engage family-based mental health services to provide for A.B.'s long-term aftercare needs; to ensure that A.B.

attended all follow-up appointments with PHPA; and to contact crises intervention offices or the nearest emergency room if urgent assistance related to A.B.'s mental health was required. (*Id*.) Plaintiff Wartluft and Ms. Fitzpatrick agreed to the terms of PPI's discharge plan, and accepted the responsibility of implementing the discharge plan. (*Id*.)

On June 19, 2013, A.B. was discharged to Plaintiff Wartluft and Ms. Fitzpatrick pursuant to the plan for aftercare crafted by A.B.'s treating clinicians at PPI in conjunction with and with the express agreement of Plaintiffs and Ms. Fitzpatrick. (*Id*.) Immediately upon her discharge on June 19, 2013, Ms. Fitzpatrick transported A.B. from PPI to Brady Hall to meet Plaintiff Wartluft to attend Ms. Davis's initial treatment session with A.B. (*Id*., 5-6.) Following the appointment with Ms. Davis, Plaintiff Wartluft scheduled a follow-up appointment with Ms. Davis for A.B. Plaintiff Wartluft subsequently refused an earlier appointment for A.B. offered by Ms. Davis's office. (*Id*., 6.)

After the session, A.B. returned to Plaintiff Bartels' and Ms. Fitzpatrick's home in Newport, Pennsylvania – the same location that, just one month prior, Plaintiff Wartluft and Ms. Fitzpatrick had advised MHS was the best place for A.B. to be. (*Id*.)

Once A.B. was with the Plaintiffs and Ms. Fitzpatrick, they repeatedly failed to adequately care for A.B. These parental and custodial failures resulted in A.B.'s

suicide, and included, *inter alia:* (i) dismissing A.B.'s depression and suicidal thoughts as merely "teenage angst" and generally ignoring the severity of A.B.'s mental health symptoms; (ii) failing to administer prescribed psychotropic medications to A.B. prior to her death; (iii) failing to notify authorities or A.B.'s treating physicians that A.B.'s psychotropic medication had gone missing three days before her suicide; (iv) failing to follow PPI's clear and direct discharge instructions for A.B.'s aftercare; (v) failing to schedule the earliest available appointment for A.B.'s psychological treatment after discharge from PPI, leaving A.B. with no psychological care during the ten days from her discharge from PPI until she died by suicide at Plaintiff Bartels' and Ms. Fitzpatrick's home on June 29, 2013; (vi) and failing to adequately supervise A.B., leaving her on the day of her death, and just ten days following her discharge from a mental health institution for severe suicidal ideations, in the custody of Ms. Fitzpatrick's elderly father, Thomas Fitzpatrick ("Mr. Fitzpatrick"), who advised the Pennsylvania State Police that despite A.B. having told him recently that "life was not worth living," coupled with his knowledge that A.B.'s psychotropic medication had gone missing days before, that he left her alone in the home in the morning hours of June 29, 2013, and alone in her room for an extended period prior to discovering her death by suicide. (*Id.*, 6-7.)

Following A.B.'s suicide at her family's Newport home, Plaintiff Wartluft made contact with Ric Fouad, a self-proclaimed "child advocate," and his organization PHC, who for twenty years, in concert with others, have implemented Fouad's strategy of instituting "serial lawsuits" attacking MHS and its leadership to "take back the School." (*Id*., 7.) Fouad reportedly called A.B.'s death the "break" he needed for his litigious crusade. (*Id.*)

Thereafter, Fouad manufactured the theory of Plaintiffs' case, and Plaintiffs adopted it. According to PHC's website and social media publications in the wake of A.B.'s death, A.B.'s enrollment had been terminated by MHS, and the Defendants' implemented a "shadow policy" that required A.B.'s expulsion. (*Id.*) Tellingly, neither Plaintiff Wartluft nor Plaintiff Bartels have any personal knowledge to support these averments of the Amended Complaint, but rather Plaintiff Wartluft attributes the factual basis for Plaintiffs' claims against Defendants come from the PHC website that Fouad alone controls. *Wartluft v. Milton Hershey Sch*., 2017 U.S.Dist.LEXIS 172985, *4, 17-18 (M.D.Pa.,2017).

A.B. was never terminated from MHS. There is no "shadow policy" as the Amended Complaint avers. At the time of her death by suicide, MHS was on summer break and A.B. was home in Newport, in the custody of her family, just as she had been every summer since her enrollment began in 2004. (Am.Compl. ¶102.)

8

Despite this, Plaintiffs, and those acting in concert with them, filed this action, asserting claims under the FHA and various state law torts. (*Id.*, ¶¶160-259.) The Amended Complaint currently asserts seven (7) claims on behalf of Plaintiffs, individually (Counts I, III, V, X-XIII). (Doc.216.) This Court should dismiss six (6) of these seven (7) claims for the reasons set forth below.

## III.   STATEMENT OF QUESTIONS INVOLVED

Should this Court dismiss Counts I, III, X, XI, XII, and XIII, and strike Plaintiffs' request for prospective injunctive relief?

*SUGGESTED ANSWER: YES*

## IV.   LEGAL ARGUMENT

### A.   Standard of Review.

"Because this Rule 12(c) motion is based on the theory that the plaintiff failed to state a claim, the Court applies the same standard as it does to a Rule 12(b)(6) motion to dismiss." *Waters v. Cheltenham Twp.*, 700 F.App'x 149, 152 (3dCir.,2017). To survive a motion to dismiss under that standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts are required to accept all well-pleaded factual allegations as true, "merely conclusory" allegations "are not entitled to the presumption of truth." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3dCir.,2016); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

"Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps." *Connelly*, 809 F.3d at 787. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the court must identify allegations in the complaint "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Third and finally, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## B. Plaintiffs' Fair Housing Act Claim (Count I) Fails as a Matter of Law Because They Cannot Sue for the Alleged Deprivation of the Civil Rights of Another Individual.

In Count I, Plaintiffs assert a claim under the FHA on behalf of the Estate of A.B. and themselves, individually. However, Plaintiffs allege that *only A.B* qualifies as an individual with a disability under the FHA. (Am.Compl. ¶170.) Plaintiff further allege that *only A.B.* "is an aggrieved person" (*id.* ¶173) because "MHS discriminated against [A.B.]"; failed to offer "any reasonable accommodation to [A.B.]"; and "denied [A.B.] continued residence." (*Id.*, ¶¶162-63, 166, 169, 178.) Plaintiffs allege that Defendants' actions "caused [A.B.]" to sustain damages. (*Id.* ¶179.)

Significantly, the allegations in the Amended Complaint relate solely to alleged discrimination and injury *with respect to A.B., not Plaintiffs*. This is insufficient to create Article III standing to assert an FHA claim. *See Fair Hous. Council v. Main Line Times,* 141 F.3d 439, 441 (3dCir.,1998)(holding that a plaintiff must allege a "'distinct and palpable' injury sufficient to satisfy Article III standing requirements under the Fair Housing Act."); *Fair Hous. Council v. Montgomery Newspapers*, 141 F.3d 71, 75 (3dCir.,1998); *United States v. Gambone Bros. Dev. Co*., 2008 U.S.Dist.LEXIS 73503, *29 (E.D.Pa.,2008)("In enacting the FHA, Congress limited recovery for handicap discrimination to handicapped persons.").

"[O]ne cannot sue for the deprivation of another's civil rights." *O'Malley v. Brierley*, 477 F.2d 785, 789 (3dCir.,1973); *Stukes v. Knowles*, 229 F.App.x 151, 152 n.1 (3dCir.,2007)(holding that although the plaintiff alleged that "the Philadelphia Police Department discriminated against his niece when they failed to respond to her 911 telephone call," he could not state a claim because "even if the police did in some way violate his niece's civil rights, Stukes 'cannot sue for the deprivation of another's civil rights.'"); *Weaver v. Wilcox*, 650 F.2d 22, 27 (3dCir.,1981)(plaintiff "must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights."); *Archuleta v. McShan*, 897 F.2d 495, 497 (10thCir.,1990)("regardless of what happened to plaintiff's father, this case

turns upon whether plaintiff personally suffered any deprivation of a constitutional right possessed by him individually.").

Because Plaintiffs, individually, cannot sue for the alleged deprivation of A.B.'s civil rights, this claim fails as a matter of law. Accordingly, this Court should enter judgment in favor of Defendants on Count I.

### C. Plaintiffs' Negligence Claim (Count III) Fails Because Plaintiffs Failed to Plead That Defendants Owed Them a Duty, Breached an Alleged Duty, or That Plaintiffs Suffered Foreseeable Damages Proximately Caused by an Alleged Breach of Duty.

"It is axiomatic that the elements of a negligence-based cause of action are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss." *Campo v. St. Luke's Hosp.*, 755 A.2d 20, 23-24 (Pa.Super.Ct..2000). Therefore, "unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." *Campo*, 755 A.2d at 24. In other words, negligence claims "clearly require as a prerequisite to any finding of liability that the defendant undertook and/or owed some specific duty of care to the plaintiff." *Steele v. First Nat'l Bank of Mifflintown*, 963 F.Supp.2d 417, 424 (M.D.Pa.,2013)(Jones III, J.).

In *Steele*, a plaintiff, who was a co-beneficiary and co-trustee of his deceased grandmother's estate, brought negligence and breach of fiduciary claims against defendants. *Id*. at 423-24. However, plaintiff was asserting these claims in his individual capacity and not on behalf of the decedent. *Id*. In reviewing the

plaintiff's complaint, this Court noted that "the only 'facts' which he alleges" in support of his negligence claim were that the defendant "bore a legally recognized duty *to Decedent*." *Id*. at 424(emphasis in original). However, plaintiff "made no such allegation which either establishes or tends to establish that [defendant] owed any duty *to him*," individually. *Id*. Accordingly, this Court concluded that "the Plaintiff failed to state a cognizable tort claim against the Defendant and his negligence....claim[] must therefore be dismissed." *Id*. at 425.

Here, as in *Steele*, the Plaintiffs' Amended Complaint fails to plead that Defendants owed any duty *to Plaintiffs Wartluft and Bartels individually*. (*See* Am.Compl. ¶¶183-96.) Rather, as in *Steele*, the Amended Complaint only pleads, albeit erroneously and in conclusory fashion, that Defendants "***owed [A.B.]***" a duty of care, which allegedly arises from the "special relationship" that Defendants are alleged to have "***with [A.B.].***" (*Id*. ¶¶187-88; emphasis added; *id*. ¶¶189-91.) Plaintiffs do not, and cannot, plead facts that would plausibly give rise to a finding that Defendants owed any duty *to Plaintiffs, individually*. Accordingly, as in *Steele*, Plaintiffs "failed to state a cognizable tort claim against the Defendant[s] and [their] negligence ... claim[] must therefore be dismissed."[1] *Steele*, 963 F. Supp. 2d at 425.

---

[1] Likewise, the Amended Complaint is devoid of any allegations that Defendants breached any duty of care owed *to Plaintiffs*, that *Plaintiffs* suffered any actual loss, and that such loss was proximately caused by Defendants breach of

**D. Plaintiffs' Negligent Infliction of Emotional Distress Claim (Count X) Fails as a Matter of Law Because The Court Has Already Found that Plaintiffs Failed to Plead that they Suffered any Physical Harm.**

In Count X, Plaintiffs assert a claim individually for negligent infliction of emotional distress, despite the fact that the Amended Complaint only pleads that Defendants allegedly "breached a duty of care owed to [A.B.]." (Am.Compl. ¶234.) Once again, the Amended Complaint is devoid of any allegations that Defendants owed any duty *to Plaintiffs individually*. (*Id*. at ¶¶232-35; *id*. ¶¶183-96.) Therefore, this claim fails as a matter of controlling law. *Brown v. Phila. Coll. of Osteopathic Med*., 760 A.2d 863, 868 (Pa.Super.Ct.,2000)("In order to recover under...negligent infliction of emotional distress – [a plaintiff] must prove the elements of a cause of action for negligence," including "that the defendant owed a duty of care to the plaintiff"); *Atamian v. Assadzadeh*, 2002 U.S.Dist.LEXIS 6269, *17 (E.D.Pa.,2002)(same).

Likewise, the Amended Complaint merely alleges that *A.B.* "suffer[ed] severe physical and emotional distress," but fails to allege that Plaintiffs Wartluft and Bartels suffered any physical harm. (*Id*. ¶¶232-35.) Indeed, the Court already held in its December 7, 2018 Opinion that "Plaintiffs' allegations fail to establish

---

a duty *owed to Plaintiffs*. (Am.Compl. ¶¶183-96.) For these additional reasons, the Court should dismiss the negligence claim asserted by Plaintiffs, individually. *Campo*, 755 A.2d at 23-24.

that they suffered physical harm." *Wartluft v. Milton Hershey Sch*., 354 F.Supp.3d 584, 595 (M.D.Pa.,2018)   This is fatal to Plaintiffs' claim. *Id.*

It is well-established under Pennsylvania law that "[p]hysical injury must be averred to sustain a cause of action for negligent infliction of emotional distress." *Armstrong v. Paoli Memorail Hosp.*, 633 A.2d 605, 609 (Pa.Super.Ct.,1993); *Fulton v. United States*, 198 F.App'x 210, 215 (3dCir.,2006)("In Pennsylvania, both intentional and negligent infliction of emotional distress requires a manifestation of physical impairment resulting from the distress."); *Shemtov Michtavi v. United States*, 2009 U.S.Dist.LEXIS 18926, *24 (M.D.Pa.,2009)(Jones III, J.)("in all cases, a Plaintiff who alleges negligent infliction of emotional distress must suffer *immediate and substantial* physical harm." (emphasis in original)).

Accordingly, this Court should dismiss Count X with prejudice. *Id.*

### E.     There Is No Implied Civil Cause of Action for Civil Conspiracy to Endanger the Welfare of Children (Count XI).

In Count XI, A.B.'s Estate alleges that Defendants are liable for "civil conspiracy to endanger children" disingenuously misrepresenting that "[i]n Pennsylvania, there is an implied civil cause of action for endangering the welfare of children by a child whose welfare was endangered."[2]   (Am.Compl., ¶238.)

---

[2] The Estate also makes a passing reference that violation of this criminal statute gives rise to a claim for negligence *per se*.  (*Id.*, ¶239).  This is not only a

However, Pennsylvania courts have unanimously rejected this erroneous legal conclusion, holding that there is no private cause of action for an alleged violation of 18 Pa.C.S.A. §4304, Endangering Welfare of Children.

"Criminal statutes do not generally provide a private cause of action nor basis for civil liability." *Concert v. Luzerne Cty. Children & Youth Servs*., 2008 U.S.Dist.LEXIS 106446, *6 (M.D.Pa.,2008). Thus, a criminal statute which does not "expressly provide[] for a private cause of action ... cannot be relied upon as creating a civil cause of action, absent some other indicia of legislative intent." *Alfred M. Lutheran Distribs. v. A.P. Weilersvacher, Inc.*, 650 A.2d 83, 87 (Pa.Super.Ct.,1994)(citing *Cort v. Ash*, 422 U.S. 66, 79-80 (1975)). Pennsylvania courts have uniformly held that the legislature did not intend to create an implied private right of action in §4304.

*Doe v. Archdiocese of Philadelphia*, 31 Pa.D&C.5th 83 (Pa.Com.Pl.,2013) rejected Plaintiffs' precise claim. There, the plaintiff improperly alleged that "Pennsylvania's criminal statute, 18 Pa. C.S.A. §4304, implies a private cause of action 'for endangering the welfare of children by a child whose welfare was endangered.'" *Id*. at 92. The Court noted that "it is apparent that during the past

---

legal conclusion that this Court must disregard, but also insufficient, as a matter of law to support a civil conspiracy claim because "negligence counts are insufficient to support [a] civil conspiracy claim." *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa.Super.Ct.,2004). Additionally, the Estate failed to allege a violation of this statute in support of his negligence *per se* claim.

40 years, the General Assembly has had numerous opportunities to consider 18 Pa.

C.S.A. §4304," yet "the General Assembly of Pennsylvania has not given any

indication of legislative intent to create a private cause of action." *Id*. at 96.

Moreover, the court concluded that, like here, the plaintiff was not within the

class of people for whose "benefit the statute was enacted." *Id*. at 97. The court

explained that "[t]he statute does not create or confer a right on those who claim

they have been abused. Rather, like all criminal statutes, it is intended to protect

the public in general from behavior which society finds abhorrent." *Id*.

Accordingly, the court held that "[t]here is no evidence that the statute was

designed or intended to provide monetary remedies for victims of abuse," and there

is nothing "in the legislative purposes of the 1972 Crimes Code, including 18 Pa.

C.S.A. §4304...to imply a private remedy for civil damages." *Id.* at 98.

Accordingly, the court sustained the defendant's preliminary objection and

dismissed the claim with prejudice.[3]

Here, Plaintiffs improperly assert the exact same claim that Pennsylvania

courts have uniformly held is not legally cognizable. (*Compare* Am.Compl., ¶238

*with Doe*, 31 Pa.D&C.5th at 92.) As set forth in *Doe*, "[t]here is no evidence that

the statute was designed or intended to provide monetary remedies for victims of

---

[3] The *Doe* decision was entered in nine separate lawsuits filed by ten individuals. *Doe*, 31 Pa.D&C.5th at 85.

abuse," and there is nothing in the legislative history from which the court could "imply a private remedy for civil damages." *Doe*, 31 Pa.D&C.5th at 98. Accordingly, this Court should enter judgment in favor of Defendants on Count XI.[4]

### F. Plaintiffs' Breach of Fiduciary Duty Claim (Count XII) Fails as a Matter of Law Because Plaintiffs Failed to Allege, Nor Could They, That Defendants Owed Them a Fiduciary Duty.

In Count XII, Plaintiffs assert an individual claim for breach of fiduciary duty. However, Plaintiffs have failed to plead any facts showing that Defendants owed them a fiduciary duty. Rather, the fiduciary duty that Plaintiffs allege Defendants breached (Am.Compl. ¶248), is a purported fiduciary relationship that "Officers and key employees of Defendants" have "with the School and School Trust" (*id.* ¶247.) Plaintiffs failed to plead that Defendants breached any fiduciary duty allegedly owed *to Plaintiffs*, nor could they.

This material defect in Plaintiffs' pleading compels dismissal of Count XII. "The Pennsylvania Supreme Court has said that a plaintiff alleging a fiduciary breach must first demonstrate that a fiduciary or confidential relationship existed." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 506 n.44 (3rdCir.,2013); *Steele*, 963 F.Supp.2d at 424 (Jones III, J.)("a breach of fiduciary duty claim requires the

---

[4] Because there can be no civil conspiracy claim when there is no underlying civil cause of action, *Goldstein*, 854 A.3d at 590, the fact that there is no private cause of action is dispositive. *Doe*, 31 Pa.D&C.5th at 100.

plaintiff to establish some 'special relationship' between himself and the defendant 'which is one involving confidentiality, the repose of a special trust or fiduciary responsibilities.'"); *Coplay Aggregates, Inc. v. Bayshore Soil Mgmt. LLC*, 2011 U.S.Dist.LEXIS 54830, *20 (E.D.Pa.,2011).

Because Plaintiffs have failed to allege any such fiduciary relationship, this Court should dismiss Count XII with prejudice.

### G.     Plaintiffs' Negligence *Per Se* Claim (Count XIII) Fails Because Neither the FHA Nor the ADA Provide a Cognizable Basis for the Claim.

In Count XIII, Plaintiffs allege that Defendants' purported violation of the FHA, and the ADA (a cause of action *absent from Plaintiffs' Amended Complaint*) forms the bases of the "duty" element of their claim for "negligence *per se*."[5] (Am.Compl. ¶¶255, 258.)  However, "violation of an ADA regulation may not be used as evidence of negligence per se in a personal injury action."  *McCree v. SEPTA*, 2009 U.S.Dist.LEXIS 4803, *41 n.11 (E.D.Pa.,2009); *Levin v. Dollar Tree Stores, Inc.*, 2006 U.S.Dist.LEXIS 88595, *9 (E.D.Pa.,2006)(refusing to allow the plaintiff to "'borrow' the ADA regulations for use as evidence of the standard of

---

[5] The Supreme Court of Pennsylvania has explained that "[t]he concept of negligence *per se* establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation." *Ramalingam v. Keller Williams Realty Grp., Inc*., 121 A.3d 1034, 1042 (Pa.Super.Ct.,2015).  As set forth herein, however, the ADA and FHA do not qualify as an "applicable statute" for which it can supply the "duty" element of a negligence *per se* claim.

care to prove negligence"); *Aponik v. Verizon PA., Inc.*, 106 F. Supp. 3d 619, 624 (E.D.Pa.,2015)("Because the ADA was not designed to protest those with disabilities from personal injuries, [p]laintiff is unable to state a claim for negligence per se."). The same is true for the FHA. *Hunter*, 64 F.Supp.3d at 189 (concluding that the FHA cannot serve as the basis for a negligence *per se* claim).

Because neither the ADA nor the FHA can serve as the basis for Plaintiffs' negligence *per se* claim, Defendants are entitled to judgment on the pleadings on Count XIII.

### H. The Court Should Strike Plaintiffs' Requests for Prospective Injunctive Relief as Moot Because Plaintiffs' Cannot Show that They Are Likely to Suffer Any Future Alleged Harm.

Plaintiffs seek several forms of prospective injunctive relief, including, *inter alia*, "[a] permanent injunction ... requiring that Defendants create a therapeutic student home for the seriously depressed children in its care, with 24 hour professional coverage"; "[a] permanent injunction ... to continue care for children suffering from a mental health disability for a duration of at least twelve (12) months from diagnosis before any decisions on termination or enrollment are made"; and "[a] permanent injunction ... requiring that Defendants appoint an advocate for children to participate in all enrollment reviews." (Am.Compl., p.83.)[6]

---

[6] Of course, these averments are directly traceable to the radical policy and mission change agenda of Ric Fouad and his sham 501(c)(3), PHC. Fouad and PHC have sought to implement these policy and mission change goals for more

However, it is well-settled that "[i]n order to have standing to seek injunctive relief, [plaintiff] must establish that [she] is likely to suffer future injury from the defendant's conduct." *In re Johnson & Johnson Talcum Powder Prods.*, 903 F.3d 278, 292 (3dCir.,2018); *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 223 (3dCir.,2012). In the school setting, the Third Circuit has expressly held that where a plaintiff is challenging school policies and/or conduct, the plaintiff lacks standing to seek prospective injunctive relief if the student "will not be returning to high school and will not again be subjected to" the school's policies and/or conduct. *Mirabella v. William Penn Charter Sch.*, 2018 U.S.App.LEXIS 33075, *4 (3dCir.,2018). Here, it is undisputed that neither A.B. nor the Plaintiffs will be enrolling at MHS in the future, and therefore A.B., and certainly Plaintiffs, "will not again be subjected" to MHS' policies and/or conduct. *Id.*

Indeed, Courts have held that "[i]t is beyond peradventure that the dead are not susceptible to continuing or future harm; therefore, claims for prospective (e.g., injunctive) relief brought by deceased plaintiffs ordinarily are moot." *Pecha v. Lake*, 700 F.App'x 840, 845 (10thCir.,2017); *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10thCir.,2004)("Beltz' claims for prospective relief are mooted by his death because once dead, he is no longer under a real and immediate threat of repeated injury."); *Smith v. Twp. Of Warren*, 2016 U.S.Dist.LEXIS 177726, *16-

---

than two decades through a "serial lawsuits" strategy, in which Plaintiffs are merely a pawn, and of which this lawsuit is clearly a part. (Doc.61, at 1-5.)

22 (D.N.J.,2016); *Brown-Dickerson v. City of Phila.*, 2016 U.S.Dist.LEXIS 54624, *21-23 (E.D.Pa.,2016).

Accordingly, this Court should strike Plaintiffs' requests for prospective injunctive relief.

## V.    <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Court grant its Motion, and enter judgment in favor of Defendants on Counts I, III, X, XI, XII, XIII asserted by Plaintiffs Julie Wartluft and Fred Bartles, individually, and strike the requests for prospective injunctive relief.

Respectfully submitted,

ELLIOTT GREENLEAF, P.C.

/s/ *Jarad W. Handelman*
Jarad W. Handelman, Esquire (PA 82629)
Kyle M. Elliott, Esquire (PA 306836)
Elliott Greenleaf, P.C.
17 N. Second Street, Suite 1420
Harrisburg, PA 17101
717.307.2600 (phone) / 717.307.2060 (fax)
215.977.1000 (phone) / 215.977.1099 (fax)
jwh@elliottgreenleaf.com
kme@elliottgreenleaf.com

Dated: April 18, 2019          *Attorneys for Defendants*

## CERTIFICATE OF WORD COUNT

I certify that the word count of the foregoing brief as determined by the Microsoft Word software with which it was produced, is 4,934 words.


/s/ *Jarad W. Handelman*
Jarad W. Handelman

Dated: April 18, 2019

## CERTIFICATE OF SERVICE

I, Jarad W. Handelman, Esquire, hereby certify that I caused the foregoing

Brief in Support to be served via the Court's ECF system on all counsel.


/s/ *Jarad W. Handelman*
Jarad W. Handelman

Dated: April 18, 2019