## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

JULIE ELLEN WARTLUFT, et al.,

        Plaintiffs,

    v.

THE MILTON HERSHEY SCHOOL
AND SCHOOL TRUST, et al.

        Defendants.

Civil Action

No. 1:16-cv-02145-JEJ
(The Honorable John E. Jones)
(The Honorable Martin C. Carlson)

## PROPOSED INTERVENOR'S REPLY BRIEF IN SUPPORT OF
## MOTION TO INTERVENE AND UNSEAL

Katie Townsend (*pro hac vice*)
Jennifer Nelson (*pro hac vice*)
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org
jnelson@rcfp.org

Michael Berry
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: 215.988.9773
Facsimile: 215.864.8999
berrym@ballardspahr.com


*Counsel for Proposed Intervenor*
*The Philadelphia Inquirer, PBC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................. 3

    I.    The Inquirer's Motion to Intervene Should be Granted ...................... 3

        A.    Defendants' Argument that Intervention Should Be Denied Due to a "Lack of Any 'Public' Aspect to this Case" Is Legally and Factually Meritless. ................................................ 3

        B.    The Inquirer's Intervention Would Not Prejudice Any Party. ... 5

    II.    The Common Law and First Amendment Rights of Access Apply to the Sealed Records. ........................................................... 9

        A.    The Public Has a Common Law and Constitutional Right to Access the Sealed Summary Judgment Materials. .................... 9

        B.    A First Amendment and Common Law Right of Access Applies to the Remaining Sealed Records. ............................ 12

        C.    Even if Any of the Sealed Records Are Discovery Motions, Defendants Are Required to Demonstrate Good Cause to Justify Their Continued Sealing. ............................................ 14

    III.    Defendants Fail to Meet Their Burden to Demonstrate that Continued, Wholesale Sealing Is Warranted Under Applicable Legal Standards. .................................................................... 15

        A.    Defendants' Privacy-Related Arguments Fail; To the Extent the Sealed Records Contain Any "Personally Identifying Information," Such Information Can be Redacted. ................... 15

        B.    ECF 203-1 Should Be Unsealed Because It Was Already Publicly Disclosed. ................................................................ 17

    IV.    Defendants' Contention that The Inquirer Is Precluded from Seeking Access to the Sealed Records is Meritless. ........................... 18

CONCLUSION ............................................................................ 20

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b) ..................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Agresta v. Philadelphia,*
    801 F. Supp. 1464 (E.D. Pa. 1992) ...............................................................18

*Avandia Mktg., Sales Practices & Prod. Liab. Litig.,*
    924 F.3d 662 (3d Cir. 2019) ...............................................................2, 7, 9, 15

*Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Ritenhouse Assocs.,*
    800 F.2d 339 (3d Cir. 1986) ...............................................................2, 12, 13

*Constand v. Cosby,*
    112 F. Supp. 3d 308 (E.D. Pa. 2015) ...............................................................5

*Constand v. Cosby,*
    232 F.R.D. at 486, 488 (E.D. Pa. 2006) ...........................................................4

*Constand v. Cosby,*
    833 F.3d 405 (3d Cir. 2016) ...............................................................5, 17, 19

*Craig v. Harney,*
    331 U.S. 367 (1947) .......................................................................................4

*Fair Lab. Practices Assocs. v. Riedel,*
    666 F. App'x 209 (3d Cir. 2016) .....................................................................5

*Gambale v. Deutsche Bank AG,*
    377 F.3d 133 (2d Cir. 2004) ..........................................................................17

*Garber v. Pharmicia Corp.,*
    No. 03-1519, 2009 WL 3424186 (D.N.J. Oct. 20, 2009) ..............................10

*Glenmede Tr. Co. v. Thompson,*
    56 F.3d 476 (3d Cir. 1995) .............................................................................14

*Haque v. Swarthmore College,*
    No. CV 15-1355, 2017 WL 3218073 (E.D. Pa. July 27, 2017) ......................7

*Hayman Cash Register*,
    669 F.2d 162 (3d Cir. 1982) .......................................................................18

*In re Cendant Corp.*,
    260 F.3d 183 (3d Cir. 2001) ...............................................................12, 13

*In re Fine Paper*,
    695 F.2d 494 (3d Cir. 1982) ..........................................................................8

*In re Knight Publ'g Co.*,
    743 F.2d 231 (4th Cir. 1984)........................................................................17

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    No. 14-1995, 2019 WL 188431 (E.D. Pa. Jan. 14, 2019) ..............................8

*In re Reporters Committee for Freedom of the Press*,
    773 F.2d 1325 (D.C. Cir. 1985) ...................................................................11

*LEAP Systems, Inc. v. MoneyTrax, Inc.*,
    638 F.3d 216 (3d Cir. 2011)......................................................................6, 7

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*,
    998 F.2d 157 (3d Cir. 1993)...........................................................5, 12, 13, 14

*Littlejohn v. Bic Corp.*,
    851 F.2d 673 (3d Cir. 1988).........................................................................8

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006) ........................................................................11

*Miller v. Indiana Hospital*,
    16 F.3d 549, 551 (3d Cir. 1994).................................................................16

*Mine Safety Appliances Co. v. N. River Ins. Co.*,
    73 F. Supp. 3d 544 (W.D. Pa. 2014) .............................................................9

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995)...........................................................................5

*N. Jersey Media Grp. v. United States*,
    836 F.3d 421 (3d Cir. 2016)........................................................................13

*Pansy v. Borough of Stroudsburg,*
    23 F.3d 772 (3d Cir. 1994) ........................................................3, 8

*Press-Enter. Co. v. Super. Ct.,*
    464 U.S. 501 (1984) ........................................................16, 17

*Press-Enter Co. v. Super. Ct.,*
    478 U.S. 1 (1986) ........................................................11

*Publicker Indus., Inc. v. Cohen,*
    733 F.2d 1059 (3d Cir. 1984) ........................................................11

*Republic of Philippines v. Westinghouse Elec. Corp.,*
    949 F.2d 653 (3d Cir. 1991) ........................................................10, 12, 13

*Reyes v. Freebery,*
    192 F. App'x 120 (3d Cir. 2006) ........................................................18

*Rushford v. New Yorker Magazine, Inc.,*
    846 F.2d 249 (4th Cir. 1988) ........................................................11

*Seattle Times v. Rhinehart,*
    467 U.S. 20 (1984) ........................................................12

*United States v. Thomas,*
    905 F.3d 276 (3d Cir. 2018) ........................................................15, 19

*United States v. Wecht,*
    537 F.3d 222 (3d Cir. 2008) ........................................................8, 11

*United States v. Whitaker,*
    372 F. Supp. 154 (M.D. Pa. 1974) ........................................................19

*Wash. Post v. Robinson,*
    935 F.2d 282 (D.C. Cir. 1991) ........................................................17

*Zavala v. Wal-Mart Corp.,*
    2007 WL 2688934 (D.N.J. Sept. 12, 2017) ........................................................16

**Treatises**                                                              **Page(s)**

7C Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 1916 (3d ed. 2019) ..................................6

# **INTRODUCTION**

Rather than address the legal issues raised by the Motion to Intervene and Unseal Judicial Records filed by The Philadelphia Inquirer, PBC—namely, the extensive sealing of judicial records in this matter in violation of the public's common law and First Amendment rights of access—Defendants' Opposition hurls baseless accusations against The Inquirer and its veteran business reporter Bob Fernandez.  Mr. Fernandez has covered matters of public concern related to the Milton Hershey School and School Trust for years, reporting fairly and accurately on litigation involving Defendants and serious allegations of misconduct leveled at the nation's wealthiest charitable school.  This type of investigative reporting is a hallmark of public interest journalism.  It is not, as Defendants suggest, the result of some elaborate conspiracy; nor is it a reason to continue to deny public access to judicial records in this case.

To the contrary, that The Inquirer has reported on the array of controversies surrounding Defendants only highlights the importance of public access to court documents in this matter.  This case involves allegations of wrongdoing against the Milton Hershey School in connection with the death of a 14-year-old student once in its care, a matter of obvious public concern.  Reporting on litigation involving institutions and issues of public interest is necessary even if—perhaps especially if—some of the parties involved would prefer secrecy.

Not only are Defendants' efforts to impugn the motives of The Inquirer and Mr. Fernandez offensive and unfounded, but also they are irrelevant. The Inquirer's *reason* for seeking to unseal court records in this case has no bearing on whether continued sealing is proper. *See Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 345 (3d Cir. 1986) ("applicability and importance" of principles underlying right of access "are not lessened because they are asserted by a private party to advance its own interests").

Indeed, as the Third Circuit recently reiterated, the burden of demonstrating the need for continued sealing of *each* document in its entirety lies with *Defendants. Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 924 F.3d 662, 676 (3d Cir. 2019). Defendants have fallen well short of that burden. They have not even attempted to describe the sealed records on a document-by-document basis, let alone articulate a specific basis for why each of those documents, or any specific information in each document, should remain sealed. And, even if Defendants were able to meet their high burden of showing that continued sealing is necessary as to some portion of the Sealed Records at issue (they have not), redactions—not wholesale sealing—would be the appropriate remedy. Because The Inquirer's intervention is timely and non-prejudicial, and because Defendants have not met their burden to justify continued sealing under applicable legal

standards, The Inquirer's Motion should be granted, and the Sealed Records should be unsealed.

## ARGUMENT

## I.   The Inquirer's Motion to Intervene Should be Granted.

### A.   Defendants' Argument that Intervention Should Be Denied Due to a "Lack of Any 'Public' Aspect to this Case" Is Legally and Factually Meritless.

The Inquirer's motion to intervene is based on well-established Third Circuit jurisprudence permitting third-party intervention for the purpose of challenging confidentiality orders. *See* ECF 266-1 "Inquirer Br." at 1, 7–8 (citing cases). Rather than engage with the cases cited by The Inquirer that demonstrate the propriety of Rule 24 intervention here, Defendants invent a new test. Specifically, they posit that "[t]he lack of any 'public' aspect to this case requires that The Inquirer's motion to intervene be denied." *See* ECF 271 "Opp. Br." at 9–10. In essence, Defendants attempt to elevate one of the *Pansy* factors that district courts consider before entering a protective order into a dispositive factor for the threshold determination of whether intervention should be granted. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786, 787–91 (3d Cir. 1994). Yet the *Pansy* factors do not speak to whether intervention is proper under Rule 24. *Id.*; *see also* Inquirer Br. at 13–14 & n. 2. And, even if Defendants' invented test were applicable, which it is not, the Inquirer would easily pass it.

The public has a strong interest in observing civil litigation in federal courts generally, as "[w]hat transpire[s] in the courts is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). There is a particularly powerful public interest in this litigation, which involves allegations against a school that is home to disadvantaged students from across Pennsylvania and enjoys the substantial tax and other benefits of non-profit status. Inquirer Br. 2.

The lone case Defendants cite in support of denying intervention on the ground that there is no public interest in this case (*see* Opp. Br. at 10) offers no support for their argument. In *Constand v. Cosby*, the Associated Press moved to intervene and lift an interim sealing order the court had entered as a stop-gap measure "to allow [it] time" to consider the propriety of a permanent sealing order restricting public access to certain discovery motions. 232 F.R.D. at 486, 488 (E.D. Pa. 2006). Here, in contrast, The Inquirer seeks the unsealing of *judicial documents*—including summary judgment materials—that are subject to sealing orders entered on a *non-interim* basis. *See*, *e.g.*, Inquirer Br. at 4–6. And, contrary to Defendants' assertion that the court in *Cosby* "den[ied] intervention . . . absent public concerns," the case settled before the district court could make a determination as to whether to enter a non-interim protective order under Rule

26(c).[1]  Defendants also ignore the fact that nearly ten years later, the district court

granted the Associated Press's renewed motion to intervene and ordered the

documents unsealed.  *Constand v. Cosby*, 112 F. Supp. 3d 308, 319 (E.D. Pa.

2015), *vacated as moot*, 833 F.3d 405 (3d Cir. 2016).[2]  Defendants' argument that

*Cosby* prohibits Rule 24 intervention in matters between private litigants is wrong.

*See, e.g., Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157,

164 (3d Cir. 1993) (intervention permitted in lawsuit between private litigants);

*Fair Lab. Practices Assocs. v. Riedel*, 666 F. App'x 209, 210 (3d Cir. 2016)

(same).

## B.    The Inquirer's Intervention Would Not Prejudice Any Party.

Permitting the Inquirer to intervene will neither delay this case nor prejudice

the parties.  Contrary to Defendants' framing, *see* Opp. Br. at 8–9, timeliness in the

context of Rule 24 does not refer to the mere length of time that a matter has been

pending; rather, it asks whether delay and prejudice would be caused by

intervention.  *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,

72 F.3d 361, 369 (3d Cir. 1995) (stating that "[t]he mere passage of time . . . does

not render an application untimely," and that courts should consider "(1) the stage

---

[1] *See* Stipulation and Order, *Constand v. Cosby*, No. 05-cv-1099 (E.D. Pa. Nov. 8, 2006), ECF No. 96.

[2] Cosby appealed the district court's decision to the Third Circuit, but that appeal was rendered moot.  *Constand v. Cosby*, 833 F.3d 405, 413 (3d Cir. 2016).

of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay"); *see also* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1916 (3d ed. 2019) ("the mere lapse of time by itself does not make an application untimely").

No party will be prejudiced if The Inquirer is permitted to intervene.[3] Indeed, Plaintiffs have consented to the unsealing, and Defendants' assertion that unsealing documents would cause prejudice simply because the documents were previously sealed, *see* Opp. Br. at 9, is incorrect as a matter of both law and logic. No member of the press or public could *ever* intervene to unseal court documents if the mere act of unsealing alone caused prejudice of the type that would warrant a denial of intervention.  Defendants' circular legal argument fails on its face, and the cases they rely on do not hold otherwise.

In *LEAP Systems, Inc. v. MoneyTrax, Inc.*, for example, the Third Circuit affirmed the district court's denial of an intervenor's motion to unseal, but did not disturb the district court's decision to grant the intervenor's motion to intervene.

---

[3] Tellingly, Defendants do not argue that any delay would occur if the Court grants The Inquirer's motion to intervene.  Nor could they.  The Inquirer's intervention is tailored to a specific purpose that is collateral to the merits of the litigation— unsealing court documents.  Particularly given that The Inquirer's motion has now been referred to Magistrate Judge Carlson (*see* ECF 272), it can be resolved as the litigation proceeds on the merits before Judge Jones.

638 F.3d 216, 218 (3d Cir. 2011).  In contrast to the generalized harm Defendants

claim will occur from unsealing here, in *LEAP*:

> [t]he District Court's decision to deny [the intervenor's] motion was
> **based on more** than LEAP'S broad assertions of financial injury and a
> generalized concern about discouraging settlement agreements.
> Rather, the District Court specifically found that LEAP would not have
> entered into the settlement agreements ***but for*** the Court's assurance of
> confidentiality.

*Id*. at 218 (bolding added, italics original).  LEAP, which was decided on the basis

of its unique facts, has no application here.  The other cases cited by Defendants

serve them no better.  In *Haque v. Swarthmore College,* the court directly rejected

Defendants' premise, stating that "a party's reliance on an order is *not* dispositive

because it is assumed that the parties acted with knowledge that it might be altered

or modified at a later date."  No. CV 15-1355, 2017 WL 3218073, at *4 (E.D. Pa.

July 28, 2017) (emphasis added).  And the Third Circuit's recent decision in

*Avandia*, 924 F.3d at 673, supports The Inquirer's arguments, not Defendants'.

The "document-by-document review of the contents of the challenged documents,"

including documents that had been previously sealed, required by the Third Circuit

in that case is precisely what The Inquirer asserts is required here.  *Id*.

Finally, Defendants' allegation of untimeliness misses the mark.  The public

interest in understanding the full nature and complete posture of this litigation does

not diminish over time.  Instead, as the issues have been clarified and distilled, the

public interest has increased and the need for disclosure remains just as strong.  *See*

*United States v. Wecht*, 537 F.3d 222, 233 (3d Cir. 2008) ("the media acts as a surrogate for the public in asserting a right of access"); *Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) (explaining that access "promotes public confidence in the judicial system," enhances "the quality of justice dispensed by the court," and ensures greater understanding of the judicial process).[4]

Neither case Defendants cite in support of their contention that The Inquirer's motion was untimely is applicable. *See* Opp. Br. at 9. In fact, neither even involved a motion to unseal. In *In re Fine Paper*, the intervening parties' motion to modify a class certification order was deemed untimely because the class action suit had already reached a court-approved settlement resulting in the entry of a final judgment. 695 F.2d 494, 497 (3d Cir. 1982). Similarly, in *In re Nat'l Football League Players' Concussion Injury Litig.*, the court held intervention untimely for a number of reasons not remotely present in the case before the court, including that a settlement had already been reached. No. 14-1995, 2019 WL 188431, at *9 (E.D. Pa. Jan. 14, 2019). These class action intervenor cases have

---

[4] Here, any alleged "delay" is, as the Third Circuit has recognized, a "relatively short delay" for purposes of cases in which intervention has been granted. *See Pansy*, 23 F.3d at 780 ("In *United Nuclear,* intervention was permitted approximately *three years* after the underlying action was settled and dismissed, 905 F.2d at 1427, and in *Beckman,* intervention was allowed approximately *two years* after the underlying case was terminated, 966 F.2d at 471, 473. In the instant case, there was *only a six- and one-half-month* delay between the time of settlement and the motion for intervention. This relatively short delay, in itself, leads us to the conclusion that intervention should be permitted.") (italics added).

no relevance here.  The Inquirer's motion to intervene is for the limited purpose of

unsealing court records; it runs no risk of disturbing the litigation of the merits, let

alone undoing a previously entered judgment or settlement.

Accordingly, because The Inquirer's motion to intervene is both timely and

non-prejudicial, it should be granted.

## II.     The Common Law and First Amendment Rights of Access Apply to the Sealed Records.

### A.     The Public Has a Common Law and Constitutional Right to Access the Sealed Summary Judgment Materials.

The common law right of access applies to the summary judgment filings at

docket entries 160, 161, 176, and 203.  *Avandia*, 924 F.3d at 672 ("[D]ocuments

filed in connection with a motion for summary judgment are judicial records.").

Defendants incorrectly argue there is no common law right to the summary

judgment filings because they purportedly have no "adjudicatory significance."

*See* Opp. Br. at 13.  The common law right attached to those documents at the time

they were filed and is unaffected by the court's disposition of the summary

judgment motion.  *Mine Safety Appliances Co. v. N. River Ins. Co.*, 73 F. Supp. 3d

544, 559 (W.D. Pa. 2014) ("The disposition of such a motion does not affect the

presumption that applies to such submissions.").  Though the Court dismissed the

motion for summary judgment without prejudice after reinstating previously-

dismissed claims, "[w]hen [Defendants] filed [their] motion for summary

judgment, [they] did so in the hope that it would be a dispositive motion, and with the belief that [they] were entitled to such relief." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991). And it should be "assume[d] that [Defendants] followed the requirement of Rule 56 and supported its motion only on the basis of 'such facts as would be admissible in evidence.'" *Id*. Accordingly, just as in *Westinghouse*, the common law right of access applies to the sealed summary judgment documents at issue.

This matter is also readily distinguishable from the unpublished opinion in *Garber v. Pharmicia Corp.,* on which Defendants attempt to rely. Opp. Br. 12; *see* No. 03-1519, 2009 WL 3424186 (D.N.J. Oct. 20, 2009). In *Garber*, Defendants attached confidential discovery material related to internal business decisions that had no bearing on the statute of limitations defense that served as the basis for the summary judgment motion in that case. The court determined that the documents were inappropriately attached and were irrelevant. 2009 WL 3424186, at *2. Importantly, the *Garber* court did *not* hold that motions for summary judgment could not be judicial records unless adjudicated on their merits. It more narrowly held that *irrelevant* discovery materials *inappropriately attached* to a dispositive motion need not be considered judicial records. *Id*. Defendants do not claim such circumstances to be present here.

10

The public also has a First Amendment right to inspect documents that have "historically been open to the press and the general public," where "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter Co. v. Super. Ct.*, 478 U.S. 1, 8–9 (1986) ("*Press-Enterprise II*"); *see also Wecht*, 537 F.3d at 233–43. As set forth in The Inquirer's opening brief, dispositive motions, including the sealed motions for summary judgment at issue here, are judicial records that have been historically open to the public. Though the Third Circuit has never decided whether the First Amendment right of access applies to summary judgment materials, and notwithstanding Defendants' citation to the D.C. Circuit's decision in *In re Reporters Committee for Freedom of the Press*, 773 F.2d 1325 (D.C. Cir. 1985), the majority of other circuit courts have recognized that the First Amendment right of access attaches to such motions and related filings. *See, e.g., Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).

Where, as here, the First Amendment right applies, the party opposing unsealing must "demonstrate 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984)

(quoting *Press-Enterprise II*, 478 U.S. at 9).  As set forth below, Defendants fail to make that showing here.  *See infra* at 18–20.

### B.   A First Amendment and Common Law Right of Access Applies to the Remaining Sealed Records.

The common law right of access is far-reaching.  It attaches to *all* "judicial records," including all documents filed in connection with "pretrial motions of a nondiscovery nature, *whether preliminary or dispositive*, and the material filed in connection therewith."  *Leucadia*, 998 F.2d at 164 (emphasis added); *see also In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001); *Bank of Am.*, 800 F.2d at 344– 45; *Westinghouse*, 949 F.2d at 661.  Accordingly, even if the First Amendment right of access does not extend to the remaining sealed records, the common law standard—not the "good cause" standard applicable only to "raw discovery" and motions of a purely discovery nature, such as motions to compel—applies here. *Leucadia*, 998 F.2d at 163–64.

Defendants' citation to *Seattle Times v. Rhinehart* is unavailing.  *Seattle Times* dealt not with the public's right of access to court records, but with whether a protective order preventing *parties* from disseminating materials merely exchanged during discovery violated the First Amendment.  467 U.S. 20, 34 (1984).  Here, "because [The Inquirer] seeks only access to documents that are on file, this case does not implicate the standards to be used by the court in entering a pretrial protective order that prohibits the parties from disseminating in advance of

trial information in their possession obtained through the discovery process, the issue resolved in [*Seattle Times*]." *Leucadia*, 998 F.2d 157, 162 (3d Cir. 1993).

Throughout their brief, Defendants incorrectly attempt to stretch the definition of "discovery" beyond its legal meaning. *See* Opp. Br. at 11. Discovery materials exchanged by parties may be withheld from public disclosure on a showing of good cause in order to encourage parties to liberally share private information through discovery. *See N. Jersey Media Grp. v. United States*, 836 F.3d 421, 430 (3d Cir. 2016); *Leucadia*, 998 F.2d at 164–65. Discovery motions, such as motions to compel, are a vehicle for the court to resolve disputes about parties' discovery obligations. Unlike discovery motions, preliminary motions— including, for example, motions to seal judicial records, which implicate the public's right of access—have clear "adjudicatory significance," and thus the common law right of access attaches. *See N. Jersey Media Grp.*, 836 F.3d at 435. This distinction is ignored by Defendants. As Third Circuit precedent makes clear, any filing used by the court in "adjudicatory proceedings," including preliminary and non-dispositive proceedings, is a judicial record to which the common law right of access attaches. *Cendant*, 260 F.3d at 192; *see also Bank of Am.*, 800 F.2d at 344–45; *Westinghouse*, 949 F.2d at 661.

**C.     Even if Any of the Sealed Records Are Discovery Motions, Defendants Are Required to Demonstrate Good Cause to Justify Their Continued Sealing.**

Even public access to "raw discovery," though not generally within the ambit of the common law or First Amendment rights of access, cannot be restricted at the whim of a litigant.  A party seeking a protective order governing discovery material under Federal Rule of Civil Procedure 26(c) must demonstrate "good cause"—*i.e.*, "that disclosure will cause a clearly defined and serious injury." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995).  Once a protective order is in place, public access to discovery materials is evaluated using the "good cause" standard in order to ensure the public interest in access to discovery materials is not undermined by "overly broad and unjustifiable protective orders agreed to by the parties for their self-interests."  *Leucadia*, 998 F.2d at 164–66.

Given the extensive nature of the sealing in this matter, The Inquirer cannot assess whether any of the Sealed Records involve motions about discovery disputes, like a motion to compel.  To the extent that any of the Sealed Records fall within the narrow category of discovery motions, Defendants must demonstrate "good cause" to justify their sealing.

14

**III.  Defendants Fail to Meet Their Burden to Demonstrate that Continued, <u>Wholesale Sealing Is Warranted Under Applicable Legal Standards.</u>**

**A.  Defendants' Privacy-Related Arguments Fail; To the Extent the Sealed Records Contain Any "Personally Identifying Information," Such Information Can be Redacted.**

While Defendants recite various state and federal laws that protect

Personally Identifiable Information (*see* Opp. Br. at 19), they do not identify which

documents contain what, if any, protected information.  That alone requires the

unsealing of the sealed records, as it is *Defendants'* burden to establish, on a

document-by-document basis, that continued sealing is justified.  *See Avandia*, 924

F.3d at 676.

Moreover, to the extent protected information is included in any of the

Sealed Records enumerated in The Inquirer's opening brief (*see* Inquirer Br. at 1),

Defendants fail to explain why such information cannot simply be redacted.[5]

While privacy concerns can serve as a countervailing interest that overcomes the

---

[5] Defendants argue in a footnote that redaction "would not sufficiently protect the privacy interests at stake due to the pervasiveness of confidential information throughout the sealed documents."  *See* Opp. Br. at 20, n.4.  This generic, conclusory statement is inadequate.  Defendants bear the burden of demonstrating the need for sealing on a document-by-document basis.  In *United States v. Thomas*, which Defendants cite in support of continued wholesale sealing, the district court's decision not to unseal a plea document was premised on national security and safety issues implicated by that document.  905 F.3d 276, 283 (3d Cir. 2018).  No such issues are present in this case.  Further, in that same decision, the Third Circuit vacated the district court's order denying access to an exhibit to a motion that did not implicate those concerns, ordering the district court to consider "to what extent the Exhibit should be redacted, if at all."  *Id*. at 284.

public's rights of access to court records, such concerns can be addressed through limited sealing and redaction.  *See Zavala v. Wal-Mart Corp.*, 2007 WL 2688934, at *10 (D.N.J. Sept. 12, 2017) (finding sealing appropriate only in cases in which "redaction would render the document meaningless"); *see also Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*").

Redaction is particularly appropriate here.  Plaintiffs do not object to the unsealing sought by The Inquirer and have asserted no privacy interest in sealing. To the contrary, Plaintiffs concur in The Inquirer's Motion and have made clear that "[t]o the extent there are any records that identify any MHS student other than Abbie Bartels or LP (also represented by Attorney Schmehl), the solution should be to redact their names, and not to keep the entire selective filings and exhibits under seal because the Defendants, not the Plaintiffs, want them sealed to supposedly protect the confidentiality of persons who do not seek it."  Plaintiffs Reply Br. 2.

In short, even if Defendants could meet their burden to show on a document-by-document basis that sealing is warranted under the applicable standards set forth above to protect third parties' privacy, this Court should order limited, tailored redaction—not permit continued wholesale sealing of these court filings. Further, any such redactions should be justified by on-the-record findings "concerning the effects of disclosure" that are "specific enough that a reviewing

court can determine whether the closure order was properly entered." *Miller v. Indiana Hospital*, 16 F.3d 549, 551 (3d Cir. 1994); *Press-Enterprise I*, 464 U.S. at 510.

### B.   ECF 203-1 Should Be Unsealed Because It Was Already Publicly Disclosed.

As set forth in detail in The Inquirer's Motion, ECF 203-1 has already been publicly disclosed and, accordingly, cannot remain sealed. Inquirer Br. 19–20. The Inquirer gained access to ECF 203-1 from PACER. Fernandez Decl. ¶¶ 4–5. While Defendants claim that the public filing of ECF 203-1 violated a court order (*see* Opp. Br. at 22–23), as the Plaintiffs persuasively argue, the court order applicable to the motion for summary judgment filings at that time *permitted but did not require* litigants to file materials under seal. ECF 162.

In any event, even if it were improperly publicly filed, ECF 203-1 must still be unsealed. As the Third Circuit has made clear, "[p]ublic disclosure cannot be undone[.]" *Constand*, 833 F.3d at 410; *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("[t]he genie is out of the bottle"); *Wash. Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991); *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Because The Inquirer already obtained the document via PACER, it should no longer be sealed.

**IV.    Defendants' Contention that The Inquirer Is Precluded
from Seeking Access to the Sealed Records is Meritless.**

Courts have an ongoing responsibility to revisit the need for sealing. *See*

*Reyes v. Freebery*, 192 F. App'x 120, 125 (3d Cir. 2006) (district court must ask

"whether there is *continuing justification* for the summary judgment record to be

sealed") (citing *Miller*, 16 F.3d at 551–52) (emphasis added).  Thus, Defendants'

argument that The Inquirer is demanding the Court "overrule" itself rests on a

faulty premise.  Defendants misapprehend the Court's ongoing duty to safeguard

the public's rights to inspect judicial records.

The Inquirer is seeking to vindicate the public's right to access records in a

case involving issues of significant public concern.  The issues it presents

involving that right have yet to be adjudicated.  The coordinate jurisdiction rule

invoked by Defendants has no bearing on the pending motion.  The cases cited by

Defendants—none of which involve an intervenor or even a motion to unseal—do

not suggest otherwise. *See* Opp. Br. at 16–17.  In *Hayman Cash Register*, the

Third Circuit affirmed the denial of a plaintiff's motion to re-transfer a case to the

District of Columbia, after it had already been transferred from that venue to the

District of New Jersey.  669 F.2d 162, 168 (3d Cir. 1982).  In *Agresta v.

Philadelphia*, the district court denied defendant's *third* attempt, made on the basis

of "no new case law," to convince it that plaintiffs had no "constitutionally

protected liberty interest in the companionship of their adult and married child."

801 F. Supp. 1464, 1471 (E.D. Pa. 1992). Finally, in *United States v. Whitaker*, the district court declined to revisit a motion to suppress evidence brought on the grounds that a wiretap was not conducted in such a way to minimize the capture of irrelevant communications. 372 F. Supp. 154, 161 (M.D. Pa. 1974).

In short, all of the cases cited by Defendants involve parties—not intervenors—resurfacing previously failed arguments or motions. None involve a member of the media seeking to intervene in a lawsuit to assert the constitutional and common law rights of public access to sealed judicial documents. As set forth above, district courts routinely permit the media to intervene to challenge previously entered sealing orders. *See, e.g.*, *Thomas*, 905 F.3d at 283; *Constand*, 833 F.3d 405. The fact that this case was transferred to a different judge midway through the litigation does not deprive The Inquirer, or any member of the public, of its ability to intervene and seek access to sealed material.

Finally, Defendants' disingenuous attempt to align The Inquirer with the Plaintiffs in this case in order to argue that it should be barred from seeking access to the Sealed Records warrants little attention from this Court. *See* Opp. Br. at 2, 4. Defendants' suggestion that The Inquirer or its reporter, Mr. Fernandez, are conspiring with Plaintiffs or anyone else connected to this litigation is baseless and absurd. The Inquirer is seeking access to the Sealed Records so that it can continue to fully and accurately report on this lawsuit to the public. Mr.

Fernandez's reporting on Defendants exemplifies solid investigative journalism; it is neither evidence of a conspiracy against Defendants nor a reason to continue to deny the public access to the Sealed Records at issue here.

## **CONCLUSION**

For the reasons set forth above and the reasons stated in its opening brief, The Inquirer respectfully requests that the Court grant its motion to intervene and enter an order requiring the Clerk of the Court to immediately unseal the judicial records reflected at docket entries 127, 135, 160, 161, 173, 174, 176, 196, 203, 204, and 205.

July 26, 2019                    Respectfully submitted,


                    *Katie Townsend*
Katie Townsend (*pro hac vice*)
Jennifer Nelson (*pro hac vice*)
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org
jnelson@rcfp.org

Michael Berry
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: 215.988.9773
Facsimile: 215.864.8999
berrym@ballardspahr.com


*Counsel for Proposed Intervenor*
*The Philadelphia Inquirer, PBC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(B)

This brief complies with the word count limitation of Local Rule 7.8(b) because it contains 4,739 words.

_Katie Townsend_
Katie Townsend