# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE ELLEN WARTLUFT, et al.,** | : | **Civil No. 1:16-CV-2145** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **(Judge Jones)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **THE MILTON HERSHEY SCHOOL** | : | |
| **AND SCHOOL TRUST, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION[1]

## I. Introduction

On June 29, 2016, the plaintiffs, Julie Ellen Wartluft and Frederick Bartels,

acting individually and on behalf of the estate of their deceased daughter, filed this

lawsuit against the Milton Hershey School and the Hershey Trust. (Doc. 1.) This

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(A), this court, as a United States Magistrate Judge, is authorized to rule upon motions by intervenors to unseal certain court records. Parson v. Farley, 352 F. Supp. 3d 1141, 1145 (N.D. Okla. 2018), aff'd, No. 16-CV-423-JED-JFJ, 2018 WL 6333562 (N.D. Okla. Nov. 27, 2018). We note for the parties that under 28 U.S.C. § 636(b)(1)(A) the parties may seek review of this order by filing a motion to reconsider with the district court since: "A judge of the [district] court may reconsider any . . . matter [decided under this subparagraph] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

lawsuit arose out of a singular tragedy—the suicide of the plaintiffs' 14-year-old daughter in June of 2013, at about the time of her expulsion from the Milton Hershey School following two episodes of hospitalization for severe depression. (Id.) The plaintiffs alleged that this suicide was a result of unlawful discriminatory practices by the defendants, and specifically alleged that the Milton Hershey School had a two-hospitalization policy which led to the expulsion of emotionally fragile students once those students underwent two hospitalizations for mental illness. These allegations formed one of the legal and factual pillars for this lawsuit. (Id.)

On occasion, however, other collateral disputes threaten to overtake and displace the resolution of the merits of these claims. As we have observed in the past:

> While the death of this child, and questions of the defendants' potential culpability for this death, should be the issues which lie at the heart of this lawsuit, for some of the protagonists the lawsuit seems to be but a small part of a longstanding and intractable conflict between the Milton Hershey School, an advocacy group, Protect Hershey's Children, (PHC), and PHC's President, an attorney named Ric Fouad. The conflict between Fouad, PHC and Hershey spans many years and is marked by competing accusations, mutual recriminations and shared, profound, and unshakeable suspicions. For its part, the Milton Hershey School apparently views PHC and Fouad, as unscrupulous provocateurs, who disseminate baseless allegations against the Milton Hershey School, and then instigate grieving families to file meritless lawsuits in pursuit of their ideological goals. PHC and Fouad, in turn, identify themselves as public spirited whistle-blowers, who believe that they are the victims of a campaign of harassment, oppression and unwarranted calumny orchestrated by a multi-billion dollar corporate monolith.

*Wartluft v. Milton Hershey Sch. & Sch. Tr.*, No. 1:16-CV-2145, 2018 WL 3995697, at *1 (M.D. Pa. Aug. 21, 2018).

We now are called upon to resolve one such collateral dispute which has assumed vital importance to the parties. This case now comes before us on a motion to intervene filed by a third party, The Philadelphia Inquirer, PBC ("The Inquirer"), which seeks to intervene in the instant case for the limited purpose of challenging the sealing of certain court records. These documents include a motion for summary judgment and supporting briefs and exhibits (Docs. 160, 161), the plaintiffs' opposition to that motion (Docs. 173, 174, 176), documents concerning discovery disputes (Docs. 127, 135, 196), and a document regarding a belated exhibit supporting the plaintiff's opposition to summary judgment (Doc. 203-1).

For its part, the Inquirer insists that it is motivated by the public's interest in access to information concerning the activities of this billion-dollar trust, contends that the public has a right of access to these documents, and asserts that the defendants have not made the requisite individualized showing of good cause necessary for these documents to remain sealed. On the other hand, the defendants place this motion in the broader context of Milton Hershey's internecine conflict with its antagonist, Ric Fouad. Drawing a series of connections between Fouad, the Inquirer, and one of its writers, Milton Hershey invites us to view this motion through a dark prism and see the motion as yet another ideologically driven effort to

cast the Hershey Trust in an unfair light. The defendants further contend that this information must remain sealed given the private nature of the documents, which include medical and employment information of the deceased and non-parties, as well as records marked "confidential" pursuant to the Protective Order entered by this court. Notably, the defendants have advanced these arguments in a broadly-framed fashion without an individualized consideration of each sealed record.

While each party would invite us to ascribe dark motives to the opposing party, we will decline all of these invitations, while observing that, in our view, the intervenors have sufficiently shown that the subject matter of this litigation is a matter of public interest, thus triggering common law and constitutional rights of access. Further, after consideration, we believe that Documents 127, 135, 160, 161, 173, 174, 176, and 196 should be unsealed, as the defendants have not shown good cause for the documents to remain sealed and have not overcome the presumption of public right of access to many of these documents. However, the defendants should be permitted to make redactions to these documents to protect the privacy interests of nonparties, or alternatively, make a particularized showing of good cause to justify the continued sealing of these documents and override the presumption of public access. Additionally, in our view, there is good cause for Document 203-1 to remain sealed. Thus, for the reasons set forth below, The Inquirer's motion be granted in part and denied in part.

## II.    Discussion

### A. The Inquirer Will Be Permitted to Intervene for the Limited Purpose of Challenging the Sealed Records.

The Inquirer has moved to intervene in this case under Federal Rule of Civil Procedure 24 for the limited purpose of unsealing certain records which it claims the public is entitled to, given the allegations against MHS in this case. On this score, it is well-settled that under Rule 24,

> "On timely motion, the court *may* permit anyone to intervene who: ... has a claim or defense that shares with the main action a common question of law or fact...." Fed. R. Civ. P. 24(b)(1) (emphasis added). Rule 24(b) further provides that, when a court exercises its discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In exercising its discretion, the court should consider various factors, including whether the proposed intervenors will add anything to the litigation and whether the proposed intervenors' interests are already adequately represented in the litigation. Hoots, 672 F.2d at 1136.

Benjamin v. Dep't of Pub. Welfare of Cmwlth., 267 F.R.D. 456, 464–65 (M.D. Pa. 2010), aff'd sub nom. Benjamin v. Dep't of Pub. Welfare of Pa., 432 F. App'x 94 (3d Cir. 2011).

As the text of Rule 24(b) implies, decisions regarding requests for permissive intervention rest in the sound discretion of the court and will not be disturbed absent an abuse of that discretion. Hoots v. Com. of Pa., 672 F.2d 1133, 1135 (3d Cir. 1982). By its terms Rule 24(b) provides that: "On timely motion, the court may permit anyone to intervene who: ... has a claim or defense that shares with the main action

a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Thus, Rule 24(b),

"lists three requirements for permissive intervention: (1) 'timely application'; (2) 'a

question of law or fact in common' between the 'applicant's claim or defense and

the main action'; (3) a determination that the intervention will not 'unduly delay or

prejudice the adjudication of the rights of the original parties.' " United States v.

Columbia Pictures Indus., Inc., 88 F.R.D. 186, 189 (S.D.N.Y. 1980). Moreover, it is

well-settled that a third party may be permitted to intervene for the limited purpose

of unsealing records or challenging an existing protective order. See United States

v. Wecht, 484 F.3d 194, 199 n.4 (3d Cir. 2007); Leucadia, Inc. v. Applied Extrusion

Technologies, Inc., 998 F.2d 157, 167 (3d Cir. 1993); Republic of Philippines v.

Westinghouse Elec. Corp., 949 F.2d 653, 657 (3d Cir. 1991); Littlejohn v. Bic Corp.,

851 F.2d 673, 677-78 (3d Cir. 1988).

Here, the defendants challenge The Inquirer's motion to intervene, arguing

that it is not timely filed. They contend that The Inquirer has been following this

case since its inception, and that it knew of the sealing of these records since at least

2018 but did not move to intervene until June 2019. However, the Third Circuit has

held that "[t]he mere passage of time . . . does not render an application untimely."

Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d

361, 369 (3d Cir. 1995) (citations omitted). Rather, a court must look at the totality

of the circumstances, considering "(1) the stage of the proceeding; (2) the prejudice

that delay may cause the parties; and (3) the reason for the delay." Id. (citing In re Fine Paper Antitrust Litigation, 695 F.2d 494, 500 (3d Cir. 1982)).

In this regard, the defendants do not argue that there will be any excessive delay if The Inquirer is permitted to intervene. Indeed, whether these records remain sealed is a collateral matter that should not result in any delay in the litigation of the underlying merits of this case.[2] Rather, the defendants contend that they will be prejudiced if the records The Inquirer seeks to have unsealed are in fact unsealed, given the content of those records. However, this argument is more appropriately tailored to the question of whether the records should be unsealed, and whether information should be redacted from specific documents. Thus contention, therefore, does not directly speak to the question of whether The Inquirer may intervene to challenge the sealing of these records. Accordingly, when we consider the totality of the circumstances, we find that there would be no undue delay as a result of permitting The Inquirer to intervene. We also find that the Inquirer's motion to intervene is not so delinquent that it should be denied out of hand. Finally, while we recognize Milton Hershey's potential concern regarding prejudice that may result from specific disclosures, we believe that this concern can and should be addressed

_____

[2] We note that the parties are currently completing discovery in this case and are scheduled to submit potentially dispositive motions in December of 2019. Therefore, this is not an instance where a motion to intervene and unseal court records is made on the eve of trial or directly interferes with on-going court proceedings.

through an individualized assessment of specific documents, rather than through the wholesale denial of this motion to intervene. Accordingly, the motion to intervene will be granted.

**B. <u>Subject to Affording Milton Hershey an Opportunity to Make Appropriate Redactions or Make an Individualized Showing of Prejudice With Respect to Specific Records, All but One of the Documents Requested by The Inquirer Should Be Unsealed.</u>**

As we have explained, The Inquirer seeks to have multiple docket entries in this case unsealed and argues that the public has a right to access these documents, particularly given the nature of the allegations against the defendants. We agree with The Inquirer that a number of these docket entries should be unsealed, subject to the redaction of the names and/or identifying information of third-parties in order to protect those individuals' privacy interests. Recognizing that Milton Hershey has not addressed in a specific and particularized fashion the prejudice impact of specific documents, we also conclude that the defendants should be afforded this opportunity. However, in our view, there is one docket entry that should remain sealed. Accordingly, as described in greater detail below, we will order that the motion to unseal these records be granted in part and denied in part.[3]

---

[3] We note that this is one of two such motions to intervene which we have been asked to address in this and the related case of <u>Dobson v. Milton Hershey School</u>,1:16-CV-1958. In <u>Dobson</u> we have denied the request to unseal while in <u>Wartluft</u> we have provisionally granted this request. We emphasize for the parties and the intervenor that these differing outcomes are a result of our individualized assessment of these motions, which arise in different factual contexts, involve

### (1) Standards Governing an Intervenor's Access to Sealed Court Documents

The Court of Appeals has recently articulated the different standards governing challenges to the confidentiality of documents. On this score, the Court stated:

> We apply three distinct standards when considering various challenges to the confidentiality of documents. We apply the factors articulated in Pansy v. Borough of Stroudsburg, 23 F.3d 772, 783–92 (3d Cir. 1994), when we review orders preserving the confidentiality of discovery materials pursuant to Federal Rule of Civil Procedure 26. But we apply the more rigorous common law right of access when discovery materials are filed as court documents. In addition to recognizing fewer reasons to justify the sealing of court records, the public right of access—unlike a Rule 26 inquiry—begins with a presumption in favor of public access. Goldstein v. Forbes (In re Cendant Corp.), 260 F.3d 183, 192–93 (3d Cir. 2001). Finally, the First Amendment right of public access attaches to, *inter alia*, civil trials. Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1061 (3d Cir. 1984).

In re Avandia Marketing, Sales Practices and Products Liability Litigation, 924 F.3d 662, 670 (3d Cir. 2019). Thus, the standard we apply, and the scrutiny various records receive, depends on the type of document that the third party is seeking.

### (a) Discovery Materials and Motions

Discovery materials can be shielded by the entry of a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure. In order to obtain a protective

---

documents which have very different characters as either judicial records or discovery documents, and as to which the factual showing of the need for continued sealing was very different.

order, a party must establish "good cause" for the order, which requires "a showing that disclosure will work a clearly defined and serious injury to the party seeking [to prevent] disclosure. The injury must be shown with specificity." Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not establish good cause. Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). In determining whether a party has established good cause for a protective order, courts must consider a number of factors. In Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994), the Third Circuit set forth a nonexhaustive list of factors to be considered:

> 1) whether disclosure will violate any privacy interests;
> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> 3) whether disclosure of the information will cause a party embarrassment;
> 4) whether confidentiality is being sought over information important to public health and safety;
> 5) whether the sharing of information among litigants will promote fairness and efficiency;
> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> 7) whether the case involves issues important to the public.

Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing Pansy, 23 F.3d at 787-91. The Pansy Court noted that in considering these factors, the district court's analysis "should always reflect a balancing of private versus public interests." Pansy, 23 F.3d at 789.

This analysis also applies to a situation in which a nonparty intervenor seeks to modify an existing confidentiality order and inspect documents filed under seal. Leucadia, 998 F.2d at 166. The party seeking to keep the documents confidential must make a showing in accordance with the criteria identified by the court in Pansy that good cause exists for continued protection of the documents. Id.

### (b) Common Law Right of Access

Additionally, it is well-settled that there is a longstanding common law public right of access to judicial proceedings, both criminal and civil, which includes the right to "inspect and copy public records and documents, including judicial records and documents." Leucadia, 998 F.2d at 161 (internal citations and quotations omitted). This right "antedates the Constitution," Bank of America Nat'l Trust and Savings Ass'n v. Hotel Rittenhouse Associates, 800 F.2d 339 (3d Cir. 1986), and "promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." Littlejohn, 851 F.2d at 678. The right of the public to inspect court documents is dependent upon whether such documents are "judicial records," meaning that the record is "a document that 'has been filed with the court . . . or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." Avandia, 924 F.3d at 672 (quoting In re Cendant Corp., 260 F.3d at 192) (internal quotations omitted).

Once a document is determined to be a "judicial record," a presumption of public access applies. In re Cendant Corp., 260 F.3d at 192-93. On this score, the Third Circuit has held that this presumptive right of access applies to "pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." Id. However, it does not apply to discovery motions and their supporting documents. Leucadia, 998 F.2d at 165. Moreover, the presumption may be rebutted if the party seeking protection can show "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." Avandia, 924 F.3d at 672 (quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (internal quotations omitted)).

### (c) First Amendment

Finally, there is a recognized constitutional right of access to civil proceedings under the First Amendment, including documents involved in those proceedings. Publicker Indus., 733 F.2d at 1071. In determining whether the right of access applies, courts apply a two-prong test, asking: (1) "whether the place and process have historically been open to the press" (the "experience" prong), and (2) "whether public access plays a significant role in the functioning of the particular process in question" (the "logic" prong). N. Jersey Media Group Inc. v. United States, 836 F.3d 421, 429 (3d Cir. 2016) (quoting PG Pub. Co. v. Aichele, 705 F.3d 91, 103 (3d Cir.

2013) (internal quotations omitted)). If both prongs are met, the First Amendment right of access presumptively applies, and this presumption will only be rebutted by a showing of "an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Avandia, 924 F.3d at 673 (quoting Publicker Indus., 733 F.2d at 1073)).

It is against these legal benchmarks that we now assess the merits of The Inquirer's request to unseal certain documents in this case.

### (2) All of the Requested Documents, With the Exception of Document 203-1, Should Be Unsealed Subject to the Redaction of the Names and Identifying Information of Third-Party Individuals and Without Prejudice to The Defendants Attempting to Make a Specific Showing of Prejudice with Respect to Particular Records.

As we have noted, The Inquirer seeks to have several documents in this case unsealed—docket entries 127, 135, 160, 161, 173, 174, 176, 196, and 203-1. Three of these documents fall under the "discovery materials" standard, (Docs. 127, 135, and 196), and the remainder fall under the "public right of access" standard. (Docs. 160, 161, 173, 174, 176, and 203-1). We will address each set of documents in turn.

### (a) Documents 127, 135, and 196

At the outset, we note that these three documents relate to discovery disputes between the parties, and thus in our view do not qualify as "judicial records" subject to the public right of access. Indeed, Document 127 relates to a discovery dispute between the parties concerning responses to interrogatories, Document 135 consists

of exhibits attached to a motion to compel, and Document 196 relates to an appeal of an order staying discovery in this case and contains information regarding a third-party subpoena. As we have explained, discovery documents such as these are subject to Rule 26 of the Federal Rules of Civil Procedure and the <u>Pansy</u> factors set forth above, rather than the common law right of access. <u>Leucadia</u>, 998 F.2d at 166.

The factors prescribed by <u>Pansy</u> and its progeny are fact-specific and fact-dependent, strongly suggesting that any objections to the disclosure of information should be tailored to the facts of the case. In addition, it has been frequently underscored that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not establish good cause to keep records under seal. <u>Cipollone v. Liggett Group, Inc.</u>, 785 F.2d 1108, 1121 (3d Cir. 1986). Thus, the analytical paradigm established by the courts contemplates a specific factually-driven assessment of the prejudice that may flow from disclosure of individual records. Several other factors caution in favor of a fact-specific analysis of requests to unseal court documents. Indeed, it has been held that the court "err[s] by not conducting a document-by-document review." <u>Avandia</u>, 924 F.3d at 677. Further in the exercise of our discretion, we are encouraged to consider redaction of sensitive material as an alternative to wholesale sealing of documents, an approach which also calls for a document-specific analysis. <u>Mosaid Techs. Inc. v. LSI Corp.</u>, 878 F. Supp. 2d 503, 507 (D. Del. 2012).

Despite this rising tide of legal authority, Hershey has initially taken a more categorical approach to its assertion of good cause. In the instant case, despite the voluminous briefing that accompanied this motion, the defendants have made only a blanket statement in an effort to demonstrate "good cause" for continued protection of these documents. To that end, the defendants contend that:

> [T]he sealed documents contain some combination of highly sensitive medical, mental health, student and personnel records. This information belongs not only to Plaintiffs' minor decedent, but also to numerous non-party children and MHS students and employees. The confidential information pervades the sealed documents in both the attached exhibits and in the arguments and testimony concerning that confidential information.

(Doc. 271, at 19). Thus, the defendants make some reference to the type of information that is found in some of the documents, and also argue that the disclosure of this type of information would result in "clear harm . . . from public exposure." (Id., at 20). However, these vague, conclusory statements do not suffice to show "good cause" as set forth by the Third Circuit, as the court has held that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not establish good cause. Cipollone, 785 F.2d at 1121; see also In re Cendant Corp., 260 F.3d at 196 (quoting Leucadia, 998 F.2d at 167) ("[C]ontinued sealing must be based on 'current evidence to show how public dissemination of the pertinent materials now would cause the [] harm [they] claim'"). These broad assertions also do not aid us in "conducting a document-by-document review" as we

are required to do. <u>Avandia</u>, 924 F.3d at 677. Moreover, it is apparent that any sweeping assertion of prejudice encounters other legal and factual obstacles. For example, any argument that disclosure of the plaintiffs' daughter's medical treatment records would cause be prejudicial may be unavailing, as the plaintiffs— the decedent's biological parents—have concurred in the motion to unseal these documents, including their daughter's medical treatment records.

In this case, weighing the assertions of the parties against the multi-facetted test prescribed by the Court in <u>Pansy</u>, we find that this case does involve issues of importance to the public. We also conclude that at least the plaintiffs have waived any privacy interests they may have, thus negating this countervailing concern at least with respect to some of these materials. We further find that the broad assertion of good cause made here is insufficient to overcome the presumption in favor of openness of court proceedings, and that these broad assertions do not allow us to fulfill our duty of engaging in a document-by-document review. Nonetheless we recognize that some of the information contained in these records, and particularly third-party information, may legitimately be the subject of redaction, in lieu of sealing. <u>See</u> <u>Mosaid</u>, 878 F.Supp.2d at 507. Therefore, some redaction may be appropriate here to protect legitimate privacy interests.

Taking all of these factors into consideration, we will provisionally grant the request to unseal these documents (Docs. 127, 135, and 196), as the defendants have

not shown good cause for their continued wholesale sealing. However, in order to assist us in "conducting a document-by-document review," Avandia, 924 F.3d at 677, we will order the defendants to redact these documents to the extent that these documents contain names or information regarding nonparty children or employees of MHS, or in the alternative, make a particularized showing of good cause for the continued sealing of specific documents. We will then afford The Inquirer an opportunity to respond to the withholding or redaction of any disputed records and will conduct a document-by-document analysis of the remaining disputed documents.

### (b) Documents 160, 161, 173, 174, and 176

Next, we turn to the documents filed with the defendants' motion for summary judgment—the motion for summary judgment and supporting documents, the motion to file these documents under seal, and the plaintiffs' opposition to this motion. (Docs. 160, 161, 173, 174, 176). In our view, these documents fall under the category of "judicial records," as the Third Circuit has held that the presumptive right of access applies to "pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." In re Cendant Corp., 260 F.3d at 192-93; see also Avandia, 924 F.3d at 672; Leucadia,

998 F.2d at 164.[4] Thus, there is a presumption that these documents should be unsealed unless the defendants show that public disclosure of these documents "will work a clearly defined and serious injury to the party seeking closure." Avandia, 924 F.3d at 672 (internal citations omitted). "Specifically, th[e] party [seeking protection] must demonstrate that the material contains the type of information that courts will protect and that there is good cause for continued application of an existing order." In re Gabapentin Patent Litigation, 312 F.Supp.2d 653, 664 (D.N.J. 2004) (citing Publicker, 733 F.2d at 1070-71).

Here, the defendants assert the same broad, conclusory statement that the public disclosure of these materials will cause harm because there is a combination of medical and personnel information, not only pertaining to the plaintiffs' deceased daughter, but also pertaining to third-party children and MHS employees. In our view, this blanket statement does not meet the Third Circuit's standard to overcome the strong presumption of public access to these documents. First, we note again that the plaintiffs concur in the request for the unsealing of these documents, and thus any argument by the defendants that the release of A.B.'s treatment records would

---

[4] We recognize that Hershey argues that these documents are not judicial records because they may not have actually been relied upon by the court in its rulings, but we are reluctant to adopt an approach to this characterization of documents that turns on the ultimate weight given the records by the court. In any event, we have also independently evaluated these records under the less demanding standards prescribed by case law, and find that even under those standards, some disclosure is appropriate.

cause harm is unavailing. Additionally, the defendants have not identified any particular harm to MHS that would result if these documents were disclosed.

Furthermore, the defendants' argument that good cause existed at the time these documents were sealed is unpersuasive. As we have noted, the Third Circuit has stated that "continued sealing must be based on '*current evidence* to show how public dissemination of the pertinent materials now would cause the [] harm [they] claim.'" In re Cendant Corp., 260 F.3d at 196 (quoting Leucadia, 998 F.2d at 167). Thus, the defendants' reliance on the fact that a protective order was granted in this case does not meet the burden to overcome the presumption of public access to these judicial records.

However, we do recognize that some of the materials within the motion for summary judgment and its attached exhibits, as well as the plaintiffs' opposing brief and exhibits, may implicate the privacy interests of third parties—specifically, medical information of third-party children or MHS employee personnel information. Thus, while we will provisionally grant the motion that these documents be unsealed, we will also direct that the defendants redact the names or other identifying information within these documents concerning these nonparties to protect those third-party privacy interests, or in the alternative, demonstrate a particularized showing that good cause exists for continued sealing of these

documents.[5] We will then afford The Inquirer an opportunity to respond to the withholding or redaction of any disputed records and will conduct a document-by-document analysis of the remaining disputed documents.

### (c) **Document 203-1**

Finally, we address The Inquirer's request to unseal Document 203-1. This document contains findings made by the Pennsylvania Human Relations Commission ("PHRC") in a separate action filed with the PHRC against MHS and includes medical information of a non-party child. (Doc. 203-1). The plaintiffs filed this document as an additional exhibit to their opposition to the defendants' motion for summary judgment. After letters to the court from both plaintiffs' and defendants' counsel concerning the public filing of the document, Chief Judge Conner ordered that the document be filed under seal. (Doc. 207).

While we recognize that this document, if considered to be part of the plaintiffs' opposition to the motion for summary judgment, would constitute a "judicial record" subject to the presumptive right of access, we find that there is good cause to override that presumption and justify the continued sealing of this

---

[5] Because we have found that these documents should be unsealed pursuant to the common law right of access, we will not address the parties' arguments under the First Amendment right of public access, as the Third Circuit has "decline[d] to define the parameters of the First Amendment right [of public access] in a case where the common law right affords sufficient protection." Avandia, 924 F.3d at 680 (noting that the Court has not yet extended the First Amendment right of public access to summary judgment records).

document. On this score, we note that this document was originally publicly filed by the plaintiff. Immediately thereafter, the defendants filed a letter with the court requesting the immediate sealing of the document, and the plaintiffs filed a responsive letter. (Docs. 204, 205). In response to these letters, Chief Judge Conner held a telephone conference with the parties, after which Judge Conner determined that this document should be sealed. (Doc. 207). Thus, it is apparent that Judge Conner carefully considered the countervailing legal interests and determined in this instance there was good cause for sealing this particular document based on the parties' correspondence and subsequent telephone conference. Accordingly, because this document was sealed based upon a separate and specific decision by Chief Judge Conner, we will not disturb this finding. We note that if the plaintiffs wish to challenge the sealing of this document, the appropriate course of action would be to file a motion to reconsider this specific ruling.

In sum, while many of the documents requested by The Inquirer were sealed and subject to general protective orders entered by the court, the defendants have fallen short of their burden to produce evidence that would justify the continued protection of these documents. Thus, we will provisionally direct that these documents, with the exception of Document 203-1, be unsealed, and that the defendants be given an opportunity to redact the names and/or identifying information of nonparty individuals to protect their privacy interests. Alternatively,

the defendants should be permitted an opportunity to make a particularized showing of harm that would result from disclosure of these documents, thus demonstrating good cause for the continued protection of these documents. We will then afford The Inquirer an opportunity to respond to the withholding or redaction of any disputed records and will conduct a document-by-document analysis of the remaining disputed documents.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE ELLEN WARTLUFT, et al.,** | : | **Civil No. 1:16-CV-2145** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **(Judge Jones)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **THE MILTON HERSHEY SCHOOL** | : | |
| **AND SCHOOL TRUST, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

Accordingly, for the reasons set forth in the accompanying Memorandum Opinion, IT IS ORDERED THAT The Inquirer's motion (Doc. 266) be GRANTED IN PART AND DENIED IN PART as follows:

1. The Inquirer's motion to intervene is GRANTED.

2. Documents 127, 135, 160, 161, 173, 174, 176, and 196 are provisionally ordered unsealed, subject to redactions by the defendants within 45 days to protect the private interests of nonparties, or alternatively, the defendants may make a particularized showing of good cause for the continued sealing of these documents. The Inquirer is then permitted within 14 days to challenge any redactions it deems insufficient or any

showing of good cause made by the defendants. We will then conduct a

document-by-document analysis of the remaining disputed documents.

3. Document 203-1 shall remain sealed.

So ordered  this 22nd day of October 2019.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge