# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE ELLEN WARTLUFT, et al.,** | : | **Civil No. 1:16-CV-2145** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **(Judge Jones)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **THE MILTON HERSHEY SCHOOL** | : | |
| **AND SCHOOL TRUST, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION[1]

## I.    Introduction

On June 29, 2016, the plaintiffs, Julie Ellen Wartluft and Frederick Bartels,

acting individually and on behalf of the estate of their deceased daughter, filed this

lawsuit against the Milton Hershey School and the Hershey Trust (collectively

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(A), this court, as a United States Magistrate Judge, is authorized to rule upon motions by intervenors to unseal certain court records. Parson v. Farley, 352 F. Supp. 3d 1141, 1145 (N.D. Okla. 2018), aff'd, No. 16-CV-423-JED-JFJ, 2018 WL 6333562 (N.D. Okla. Nov. 27, 2018). We note for the parties that under 28 U.S.C. § 636(b)(1)(A) the parties may seek review of this order by filing a motion to reconsider with the district court since: "A judge of the [district] court may reconsider any . . . matter [decided under this subparagraph] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

"MHS"). (Doc. 1). This lawsuit arose out of a singular tragedy—the suicide of the plaintiffs' 14-year-old daughter in June of 2013, at about the time of her expulsion from MHS following two episodes of hospitalization for severe depression. (Id.) The plaintiffs alleged that this suicide was a result of unlawful discriminatory practices by the defendants, and specifically alleged that MHS had a two-hospitalization policy which led to the expulsion of emotionally fragile students once those students underwent two hospitalizations for mental illness. These allegations formed one of the legal and factual pillars for this lawsuit. (Id.)

As we have observed in the past, on occasion, however, other disputes have threatened to overtake and displace the resolution of the merits of these claims. Wartluft v. Milton Hershey Sch. & Sch. Tr., No. 1:16-CV-2145, 2018 WL 3995697, at *1 (M.D. Pa. Aug. 21, 2018). These disputes have included litigation regarding access to previously sealed court records. In particular, The Philadelphia Inquirer, PBC ("The Inquirer"), filed a motion to intervene and unseal a number of docket entries in this case on June 20, 2019 (Doc. 266), and the motion was referred to the undersigned. On October 22, 2019, we granted The Inquirer's motion to intervene and provisionally unsealed several docket entries, as we found that the defendants had not shown good cause for the continued sealing of these documents, but we denied The Inquirer's request to unseal Document 203-1. (Doc. 286). We then provided the defendants with an opportunity to either make a showing of good cause

for continued sealing or to make appropriate redactions to the documents that were to be provisionally unsealed, and we gave The Inquirer and opportunity to object to the defendants' proposed redactions. (Id.)

MHS has now filed a brief in support of its position that several of the documents we provisionally unsealed should remain sealed, or in the alternative, we should redact the unsealed documents according to the defendants' proposed redactions. (Doc. 291). However, MHS concedes that a number of the documents need not be continuously sealed or redacted. (Id.) For its part, The Inquirer has agreed that information concerning nonparties to this suit should be redacted but reiterates its position that the documents should otherwise be unsealed and opposes many of the defendants' proposed redactions on the basis that the redactions are overbroad. (Doc. 302).[2]

After reviewing the parties' latest submissions, including the redactions that MHS proposes, we find that MHS has still not shown that there is good cause for the continued wholesale sealing of these documents. However, we recognize that there is a host of information contained in these documents that pertains to medical and

---

[2] We note that The Inquirer's reply brief does not contest the continued sealing of Document 203-1. Rather, counsel for The Inquirer requested a telephone conference with the undersigned to inform the court of a recent decision out of the Commonwealth Court that relates to the litigation against MHS and purportedly to Document 203-1. However, as we will explain, nothing in the Commonwealth Court's decision negates our prior finding of good cause for the continued sealing of this document. Accordingly, Document 203-1 will remain sealed.

personal information of third parties, information in which these nonparties have important privacy interests. Accordingly, as will be explained in further detail below, we will order the unsealing of these documents but will sustain some of MHS's proposed redactions which protect the privacy interests of these nonparties.

## II.   Discussion

As we have explained, The Inquirer seeks to have multiple docket entries in this case unsealed and argues that the public has a right to access these documents, particularly given the nature of the allegations against the defendants. We agree with The Inquirer that a number of these docket entries should be unsealed, subject to the redaction of the names and/or identifying information of third-parties in order to protect those individuals' privacy interests. However, our review of the proposed redactions submitted by MHS reveals that some of these redactions are overbroad, particularly as they relate to the school or medical records of the plaintiffs' daughter, A.B., as the plaintiffs have expressly consented to the release of these records. In addition, the redactions made that purportedly relate to third-party identifying information are overbroad. Thus, in accordance with the standards set forth below, we will order the docket entries unsealed, but sustain some of the redactions MHS proposes.

## A. Standards Governing an Intervenor's Access to Sealed Court Documents

The Court of Appeals has recently articulated the different standards governing challenges to the confidentiality of documents. On this score, the Court stated:

> We apply three distinct standards when considering various challenges to the confidentiality of documents. We apply the factors articulated in Pansy v. Borough of Stroudsburg, 23 F.3d 772, 783–92 (3d Cir. 1994), when we review orders preserving the confidentiality of discovery materials pursuant to Federal Rule of Civil Procedure 26. But we apply the more rigorous common law right of access when discovery materials are filed as court documents. In addition to recognizing fewer reasons to justify the sealing of court records, the public right of access—unlike a Rule 26 inquiry—begins with a presumption in favor of public access. Goldstein v. Forbes (In re Cendant Corp.), 260 F.3d 183, 192–93 (3d Cir. 2001). Finally, the First Amendment right of public access attaches to, *inter alia*, civil trials. Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1061 (3d Cir. 1984).

In re Avandia Marketing, Sales Practices and Products Liability Litigation, 924 F.3d 662, 670 (3d Cir. 2019). Thus, the legal standards we apply, and the scrutiny various records receive, depends on the type of documents that the third party is seeking.

### (1) Discovery Materials and Motions

Discovery materials can be shielded by the entry of a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure. In order to obtain a protective order, a party must establish "good cause" for the order, which requires "a showing that disclosure will work a clearly defined and serious injury to the party seeking [to prevent] disclosure. The injury must be shown with specificity." Publicker Indus.,

5

Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not establish good cause. Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). In determining whether a party has established good cause for a protective order, courts must consider a number of factors. In Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994), the Third Circuit set forth a nonexhaustive list of factors to be considered:

> 1) whether disclosure will violate any privacy interests;
> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> 3) whether disclosure of the information will cause a party embarrassment;
> 4) whether confidentiality is being sought over information important to public health and safety;
> 5) whether the sharing of information among litigants will promote fairness and efficiency;
> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> 7) whether the case involves issues important to the public.

Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing Pansy, 23 F.3d at 787-91. The Pansy Court noted that in considering these factors, the district court's analysis "should always reflect a balancing of private versus public interests." Pansy, 23 F.3d at 789.

This analysis also applies to a situation in which a nonparty intervenor seeks to modify an existing confidentiality order and inspect documents filed under seal. Leucadia, 998 F.2d at 166. The party seeking to keep the documents confidential

must make a showing in accordance with the criteria identified by the court in <u>Pansy</u> that good cause exists for continued protection of the documents. <u>Id.</u>

**(2) <u>Common Law Right of Access</u>**

Additionally, it is well-settled that there is a longstanding common law public right of access to judicial proceedings, both criminal and civil, which includes the right to "inspect and copy public records and documents, including judicial records and documents." <u>Leucadia</u>, 998 F.2d at 161 (internal citations and quotations omitted). This right "antedates the Constitution," <u>Bank of America Nat'l Trust and Savings Ass'n v. Hotel Rittenhouse Associates</u>, 800 F.2d 339 (3d Cir. 1986), and "promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." <u>Littlejohn</u>, 851 F.2d at 678. The right of the public to inspect court documents is dependent upon whether such documents are "judicial records," meaning that the record is "a document that 'has been filed with the court . . . or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." <u>Avandia</u>, 924 F.3d at 672 (quoting <u>In re Cendant Corp.</u>, 260 F.3d at 192) (internal quotations omitted).

Once a document is determined to be a "judicial record," a presumption of public access applies. <u>In re Cendant Corp.</u>, 260 F.3d at 192-93. On this score, the Third Circuit has held that this presumptive right of access applies to "pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the

material filed in connection therewith." Id. However, it does not apply to discovery motions and their supporting documents. Leucadia, 998 F.2d at 165. Moreover, the presumption may be rebutted if the party seeking protection can show "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." Avandia, 924 F.3d at 672 (quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (internal quotations omitted)).

### (3) First Amendment

Finally, there is a recognized constitutional right of access to civil proceedings under the First Amendment, including documents involved in those proceedings. Publicker Indus., 733 F.2d at 1071. In determining whether the right of access applies, courts apply a two-prong test, asking: (1) "whether the place and process have historically been open to the press" (the "experience" prong), and (2) "whether public access plays a significant role in the functioning of the particular process in question" (the "logic" prong). N. Jersey Media Group Inc. v. United States, 836 F.3d 421, 429 (3d Cir. 2016) (quoting PG Pub. Co. v. Aichele, 705 F.3d 91, 103 (3d Cir. 2013) (internal quotations omitted)). If both prongs are met, the First Amendment right of access presumptively applies, and this presumption will only be rebutted by a showing of "an overriding interest [in excluding the public] based on findings that

closure is essential to preserve higher values and is narrowly tailored to serve that interest." <u>Avandia</u>, 924 F.3d at 673 (quoting <u>Publicker Indus.</u>, 733 F.2d at 1073)).

## B. **The Documents We Provisionally Unsealed Shall Be Unsealed Subject to Minor Redactions Protecting Nonparties to this Litigation.**

At the outset, we note that MHS has attached a list of documents that we had provisionally unsealed with respect to which it does not contest the unsealing and does not propose any redactions. Accordingly, these documents and attached exhibits listed in Exhibit 1 to the defendants' brief (Doc. 291-1) will be unsealed without redactions.[34]

Additionally, MHS proposes redactions to Doc. 127, Doc. 161, Ex. 30, and Doc. 196-2, to which The Inquirer does not object. Accordingly, we will unseal these documents but sustain the redactions to these documents proposed in the defendants' submission. (Doc. 291-3, at 2-26). We also note that the information redacted in Doc. 161, Ex. 30 also appears in Doc. 173, and thus, we will sustain the defendants'

---

[3] Docs. 135-1—135-8, 161-2—161-7, 161-16—161-18, 161-20—161-29, 161-31—161-37, 161-46, 161-54—161-60, 176-1—176-3, 176-5, 176-38, 176-40—176-41, 176-58, 176-62, 176-64—176-65, 176-67, 176-69—176-70, 196-1.

[4] We note discrepancies between some of the defendants' citations to the docket and the court's docket entry number. For example, where the defendants cite to Doc. 161, Ex. 14, this entry is reflected in Doc. 161-21. Accordingly, in an effort to ensure that the correct docket entries are unsealed, we will place the burden on the defendants to confirm that the docket entries we are unsealing, with or without redactions, are consistent with the entries MHS concedes should be unsealed.

minimal redaction of this information in Doc. 173. (Doc. 291-4, at 216-17). We now turn to the documents and redactions that remain in dispute.

The documents that MHS contends should be continuously sealed, or alternatively redacted, along with the documents that MHS has simply proposed redactions to, fall under the category of "judicial records" subject to the common law right of access. (Docs. 160, 161, 173, 174, and 176). These documents relate to a motion for summary judgment and a motion to file these documents under seal. As to these records the Third Circuit has held that the presumptive right of access applies to "pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." In re Cendant Corp., 260 F.3d at 192-93; see also Avandia, 924 F.3d at 672; Leucadia, 998 F.2d at 164. Thus, there is a presumption that these documents should be unsealed unless the defendants show that public disclosure of these documents "will work a clearly defined and serious injury to the party seeking closure." Avandia, 924 F.3d at 672 (internal citations omitted). "Specifically, th[e] party [seeking protection] must demonstrate that the material contains the type of information that courts will protect and that there is good cause for continued application of an existing order." In re Gabapentin Patent Litigation, 312 F.Supp.2d 653, 664 (D.N.J. 2004) (citing Publicker, 733 F.2d at 1070-71).

**(1) We Will Deny MHS's Request to Keep Exhibits to Documents 161 and 176 Sealed.**

MHS argues that there are exhibits attached to Documents 161 and 176 that must remain sealed. (Doc. 291-2). In particular, MHS contends that these exhibits contain information that was given pursuant to a Qualified Protective Order entered in this case, and that the release of this information would harm not only A.B., whose school and medical records are contained in these documents, but the medical providers that disclosed this information. Additionally, MHS seeks to protect the identifying information of its personnel and other nonparties, whose deposition transcripts are contained in these documents.

**(a) Medical Records from Third Party Providers**

With respect to the documents that contain A.B.'s medical records from third party providers, MHS contends that the medical providers who disclosed this information will be harmed if these records are unsealed because they have an obligation under the Health Insurance Portability and Accountability Act ("HIPAA") to keep these records confidential. Indeed, HIPAA's general privacy rule "places strict limitations on the ability of health care providers to release a patient's medical records . . . without the consent of the patient." Rodriguez v. City of New Brunswick, 2017 WL 5598217, at *6 (D.N.J. Nov. 21, 2017). While it is undisputed that these records constitute protected health information under HIPAA, the statute further provides that:

A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

>> (A) The covered entity receives satisfactory assurance ... from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

>> (B) The covered entity receives satisfactory assurance ... from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1). Entities covered by HIPPA include "(1) a health plan, (2) a health care clearinghouse, and (3) a health care provider." 45 C.F.R. § 160.102.

Here, the third-party providers that disclosed A.B.'s treatment records are undisputedly medical providers within the meaning of the statute. Further, these providers disclosed A.B.'s medical records in compliance with this court's orders, which issued Qualified Protective Orders to protect this information. (Docs. 84, 106, 108). Thus, the medical providers in this case complied with HIPAA when they

provided this information pursuant to the court's orders, and there would be no cause of action against these providers for a violation of the statute. This would be so even if A.B.'s parents, the plaintiffs in this case, had not consented to the release of A.B.'s medical records. (Doc. 308-1). Moreover, MHS provides no legal authority for the proposition that these providers would somehow be liable under HIPAA should the court order the unsealing of these documents. Accordingly, the argument that these providers would be harmed by the unsealing of these documents is unavailing and does not meet the showing required by law to justify continued sealing; namely, "that disclosure will work *a clearly defined and serious injury* to the party seeking closure." <u>Avandia</u>, 924 F.3d at 672 (quoting <u>Miller v. Ind. Hosp.</u>, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotations omitted))(emphasis added).

Next, MHS argues that A.B.'s interests would be harmed by the release of her medical records. However, the plaintiffs in this case, A.B.'s parents, have expressly consented to the release of her medical records from these providers. (Doc. 308-1). Indeed, both plaintiffs have signed a "HIPAA Privacy Authorization Form," which provides that the plaintiffs, as A.B.'s personal representatives, have authorized the release of A.B.'s records, whether in the custody of the school or in the custody of third-party providers, to the fullest extent allowable. (<u>Id.</u>, at 2, 4). Thus, MHS's concern that A.B.'s interests would be harmed by the unsealing of

these records is unpersuasive given the explicit waiver of these privacy interests by A.B.'s personal representatives.

Finally, MHS asserts that the unsealing of these documents would harm the interests of third parties, particularly MHS personnel who were involved with A.B.'s treatment or with decisions about her attendance at MHS. However, as we will explain, in our view, redacting the names of these MHS personnel will provide sufficient protection of their interests without resorting to the wholesale sealing of these documents. Accordingly, because we find that MHS has not shown good cause for the continued sealing of these documents in their entirety, we will order these documents unsealed subject to specific redactions discussed in more detail below.

### (b) A.B.'s School Records

MHS next argues that documents containing A.B.'s medical records that are in the custody of MHS, as well as her school records, should be continuously sealed. With respect to the medical records, MHS relies on the arguments it made concerning the records disclosed by the third-party medical providers—that disclosure of these records would violate HIPAA. For its part, The Inquirer argues that MHS is not a "covered entity" under HIPAA, and thus would not be subject to the statute's requirements.

As we have explained, A.B.'s parents have expressly consented to the release of these records. (Doc. 308-1). Thus, even if MHS was considered a "covered entity"

under HIPAA, releasing A.B.'s records upon the express consent of her parents, and pursuant to a court order, would not violate the statute and subject MHS to liability. Moreover, to the extent that MHS asserts that A.B.'s school records are protected from disclosure under the Family Education and Privacy Rights Act ("FERPA"), as The Inquirer points out, A.B.'s privacy interests under FERPA lie with her parents until the age of 18. See 34 C.F.R. §§ 99.3-99.5. Accordingly, the plaintiffs' express consent to the release of these records would eliminate any concerns that MHS has as it relates to disclosure of school records under FERPA, and thus, we will order the unsealing of these documents as well.

### (c) Expert Reports

Next, MHS asserts that the plaintiffs' proposed expert reports, which are attached to the plaintiffs' opposition to summary judgment, should remain sealed, as they are based entirely on information subject to HIPAA and disclosed pursuant to the court's Qualified Protective Orders. Moreover, MHS contends that these expert reports are not docketed, the opportunity to challenge these reports has not ripened, and these reports may never be admitted.

At the outset, MHS's argument for continued sealing that relies on the information provided by the third-party medical providers is unavailing, as we have already decided that MHS has not shown good cause for the continued sealing of this information based upon HIPAA-related concerns. Not only have these medical

providers complied with the protections of HIPAA, but A.B.'s parents have expressly consented to the release of this information. Accordingly, the fact that these reports are based on this medical information, standing alone, does not justify their continued sealing.

Nor does the fact that the defendants have yet to challenge these expert reports justify their continued sealing. MHS contends that the disclosure of these reports which have not yet been rebutted by countervailing expert reports will be "antithetical to the justification for the common law right of access." (Doc. 291, at 24). However, the defendants cite to no legal authority for the proposition that expert reports may only be unsealed after they have been rebutted, and our research has yielded none that stands for the proposition that these proposed expert reports must remain sealed. Instead, we are left with the guiding principle that a presumption of public access applies to these reports which are part of the judicial record in this case. In re Cendant Corp., 260 F.3d at 192-93. Given this presumption, in the absence of any contrary authority, and having found that the information underlying these reports should be disclosed, we conclude that the defendants have not shown good cause for the continued sealing of these expert reports. Accordingly, we will order these documents unsealed.

While we are ordering the unsealing of these documents, we recognize that there are third-party privacy interests at stake. Accordingly, we will unseal these documents subject to the minor redactions that we will discuss below.

### (2) The Documents To Be Unsealed Shall Be Redacted To Protect the Interests of Nonparties.

In the alternative to continued sealing, the defendants propose a litany of redactions to over 1,000 pages of these sealed documents, arguing that these redactions are necessary to protect the interests of A.B., the school, the medical providers, and nonparties. However, after conducting a document-by-document review of these pages, we find that many of the redactions that MHS proposes seek to redact information concerning A.B.'s school and medical records, which we have explained should be disclosed given the plaintiffs' express consent. Further, while MHS proposes redactions that seek to protect the identifying information of third parties, a review of these proposed redactions reveals that numerous redactions are overbroad and not narrowly tailored to the nonparties' identifying information. Accordingly, we will sustain some of the redactions that MHS has proposed but will unseal the remainder of the documents without redactions.

First, the defendants have proposed redactions to a number of documents that contain information relating to A.B.'s medical and school records. They have also redacted information given by the third-party medical providers pursuant to the Qualified Protective Order. Given that A.B.'s parents have expressly consented to

the release of A.B.'s records, both from the school and from the third-party providers, we will order these documents unsealed without the redactions the defendants propose.[5]

Additionally, the defendants proposed that the information contained in these documents that relate to the plaintiffs' proposed expert reports should be redacted. Again, because we have determined that the defendants have not shown good cause for the continued sealing of these documents, and because the proposed redactions purport to redact all of the information contained in the expert reports, we find that these documents should be unsealed without redactions.[6]

Finally, MHS proposes redactions on the basis of protecting third-party identifying information. However, a review of these redactions reveals that MHS has redacted more information than just the names and personal identifying information of certain individuals. Indeed, while MHS has redacted the names of the nonparties, including MHS personnel and medical providers, the defendants have redacted much more than just identifying information. We agree with MHS that all names of nonparties should be redacted, and to the extent that these redactions cover the names, addresses, and family information of nonparties, we will sustain these

---

[5] The defendants have proposed these redactions in yellow, green, and blue. (Doc. 291).

[6] The defendants have proposed redactions concerning the expert reports in purple. (Doc. 291).

redactions. However, the remainder of the information that MHS has redacted, including the employment history of MHS personnel, job titles, and the like, should be unredacted.

We reach this conclusion while noting that this is a somewhat closer question since it may be possible through further investigation to tentatively identify some of these third parties by reference to employment histories and job titles. The scope of the redactions  proposed by the MHS defendants, however, is in our judgment so sweeping, that we cannot justify these additional redactions in light of the presumption of public access which applies here. In re Cendant Corp., 260 F.3d at 192-93. A more narrowly tailored set of redactions supported by a more robust showing of need would be necessary here to justify the continued sealing of this information.

Further, there are certain redactions that MHS has proposed that cover the names, identifying information, and mental health treatment of third-parties. MHS has redacted almost entirely the deposition transcripts of certain individuals in this case. Third party mental health treatment information is cloaked in particularly compelling privacy interests which in our view far overcome and public right of access. Upon our review, we find that these redactions are entirely appropriate, as

these deposition transcripts detail the mental health treatment of nonparties in this case.[7]

In sum, we recognize that there are legitimate significant third-party privacy interests at stake within these documents. In most instances we believe that redacting the names and personal identifying information of all nonparties to this case will achieve the goal of protecting these privacy interests. Additionally, there is no question that the mental health treatment of nonparties should remain redacted. However, we do not think that MHS should be entitled to redact other information related to these third parties, whether out of an abundance of caution or fear of embarrassment. Rather, in our view, redacting the names of nonparties and personal information, including addresses or family information, sufficiently protects the interests of the MHS personnel, medical providers, and other nonparties to this case. Accordingly, these documents should be unsealed and redacted in the limited manner we have described above.

## C. **Document 203-1 Will Remain Sealed.**

As we have explained in our prior memorandum, Document 203-1 contains findings made by the Pennsylvania Human Relations Commission ("PHRC") in a separate action filed with the PHRC against MHS and includes medical information

---

[7] These redactions are proposed in orange, and the transcripts are docketed at Doc. 176-4, pages 1-158.

of a non-party child. (Doc. 203-1). The plaintiffs filed this document as an additional exhibit to their opposition to the defendants' motion for summary judgment. After letters to the court from both plaintiffs' and defendants' counsel concerning the public filing of the document, Chief Judge Conner ordered that the document be filed under seal. (Doc. 207).

Our prior memorandum recognized that this document, if considered to be part of the plaintiffs' opposition to the motion for summary judgment, would constitute a "judicial record" subject to the presumptive right of access. However, we found good cause to override that presumption and justify the continued sealing of this document. Now, The Inquirer has provided us with a decision out of the Commonwealth Court, which unsealed a number of documents but did not unseal the reproduced record filed with the Commonwealth Court, which included records that were sealed by the PHRC. (Doc. 339-1, at 20). In its notice to the court, The Inquirer contends that it "is informed and believes . . . that Complainant intends to file a valid waiver with the PHRC, at which time the PHRC will unseal the agency record, in whole or in part," and that The Inquirer will then be able to request that the Commonwealth Court unseal these records. (Doc. 339, at 3).

Again, we note that The Inquirer's opposition to the defendants' proposed redactions and argument for continued sealing does not challenge our prior ruling that Document 203-1 shall remain sealed. Moreover, the Commonwealth Court's

decision does not override our prior finding of good cause for continued sealing of this document. We also understand that these state proceedings may eventually alter the balance of these public and private interests, and provide a pathway for disclosure of this document. However, at present, given the Commonwealth Court's decision continuing the sealing of this document as well as part of the agency record, we do not find it persuasive that The Inquirer believes the Complainant in the case may file a valid waiver at some time in the future. At this time, there is nothing that nullifies our prior finding of good cause to continue the sealing of this record, and thus, Document 203-1 will presently remain sealed.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE ELLEN WARTLUFT, et al.,** | : | **Civil No. 1:16-CV-2145** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **(Judge Jones)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **THE MILTON HERSHEY SCHOOL** | : | |
| **AND SCHOOL TRUST, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

Accordingly, for the reasons set forth in the accompanying Memorandum Opinion, IT IS ORDERED THAT:

1. All of the documents that The Inquirer requests to unseal will be unsealed;

2. Documents 135-1—135-8, 161-2—161-7, 161-16—161-18, 161-20—161-29, 161-31—161-37, 161-46, 161-54—161-60, 176-1—176-3, 176-5, 176-38, 176-40—176-41, 176-58, 176-62, 176-64—176-65, 176-67, 176-69—176-70, 196-1 will be unsealed with no redactions;

3. The exhibits attached to Documents 161 and 176 that MHS contends should remain sealed—Documents 161-1, 161-8, 161-11—161-15, 161-19, 161-47—161-50, 161-61—161-62, 176-4, 176-7—176-37, 176-42—176-44, 176-49—176-55, 176-60—176-61, and 176-66—shall be

unsealed subject to the minimal redactions we have outlined in the accompanying memorandum to protect the interests of third parties[8];

4.  Documents 127, 161, Ex. 30, and 196-2, as well as the minimal redactions to Document 173 that relate to these documents, shall be unsealed and redacted in accordance with the defendants' proposed redactions of these documents; and

5.  Document 203-1 shall remain sealed.

6.  We recognize the significance and gravity of these judgments for all parties. Therefore, IT IS FURTHER ORDERED as follows: Implementation of this order will be STAYED for 10 days in order to allow the litigants the opportunity to review the court's order and seeks further judicial review of this order, if they deem it appropriate. Furthermore, with respect to redacted records, if the parties do not seek further review of this decision, they shall tender copies of stipulated, redacted records to the clerk for release on the public docket within 30 days of the date of this order.

---

[8] Again, we note that some of these exhibits as identified by the defendants do not align with the docket entries in this case. We direct the defendants to identify the correct docket entries as they are docketed with the court so as to ensure that the correct entries are unsealed and redacted.

So ordered this 6th day of March 2020.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge