# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE ELLEN WARTLUFT, et al.,** | : | Civil No. 1:16-CV-2145 |
| | : | |
| **Plaintiffs,** | : | |
| | : | (Judge Jones) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **THE MILTON HERSHEY SCHOOL** | : | |
| **AND SCHOOL TRUST, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION[1]

### I. Introduction

On June 29, 2016, the plaintiffs, Julie Ellen Wartluft and Frederick Bartels, acting individually and on behalf of the estate of their deceased daughter, filed this lawsuit against the Milton Hershey School and the Hershey Trust (collectively

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(A), this court, as a United States Magistrate Judge, is authorized to rule upon motions by intervenors to unseal certain court records. Parson v. Farley, 352 F. Supp. 3d 1141, 1145 (N.D. Okla. 2018), aff'd, No. 16-CV-423-JED-JFJ, 2018 WL 6333562 (N.D. Okla. Nov. 27, 2018). We note for the parties that under 28 U.S.C. § 636(b)(1)(A) the parties may seek review of this order by filing a motion to reconsider with the district court since: "A judge of the [district] court may reconsider any . . . matter [decided under this subparagraph] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

"MHS"). (Doc. 1). This lawsuit arose out of a singular tragedy—the suicide of the plaintiffs' 14-year-old daughter in June of 2013, at about the time of her expulsion from MHS following two episodes of hospitalization for severe depression. (Id.) The plaintiffs alleged that this suicide was a result of unlawful discriminatory practices by the defendants, and specifically alleged that MHS had a two-hospitalization policy which led to the expulsion of emotionally fragile students once those students underwent two hospitalizations for mental illness. These allegations formed one of the legal and factual pillars for this lawsuit. (Id.)

As we have observed, on occasion, other disputes have threatened to overtake and displace the resolution of the merits of these claims. Wartluft v. Milton Hershey Sch. & Sch. Tr., No. 1:16-CV-2145, 2018 WL 3995697, at *1 (M.D. Pa. Aug. 21, 2018).These disputes have included litigation relating to access to previously sealed court records. In particular, The Philadelphia Inquirer, PBC ("The Inquirer"), filed a motion to intervene and unseal a number of docket entries in this case on June 20, 2019 (Doc. 266), and the motion was referred to the undersigned. We granted the motion to intervene and ordered that the documents The Inquirer sought be unsealed, subject to very limited redactions to protect the interests of nonparties. Now, The Inquirer has filed a second motion to unseal records, which seeks to unseal several docket entries related to the parties' pending cross motions for summary judgment

in this case. (Doc. 303). This motion was referred to the undersigned on January 21, 2020. (Doc. 310).

After a review of the parties' submissions, we find that the documents The Inquirer seeks to have unsealed should be unsealed, as MHS has not shown good cause for the continued sealing of these documents. We further find that many of the redactions to these documents that MHS proposes are overbroad. Accordingly, we will order these documents unsealed, subject to only limited redactions to protect the interests of nonparties to this litigation.

**II.     Discussion**

As we have explained, The Inquirer seeks to have multiple docket entries in this case unsealed and argues that the public has a right to access these documents, particularly given the nature of the allegations against the defendants. We agree with The Inquirer that a number of these docket entries should be unsealed, subject to the redaction of the names and/or identifying information of third-parties in order to protect those individuals' privacy interests. However, our review of the proposed redactions reveals that some of these redactions are overbroad, particularly as they relate to the school or medical records of the plaintiffs' daughter, A.B., as the plaintiffs have expressly consented to the release of these records. Thus, in accordance with the standards set forth below, we will order the docket entries

unsealed, but sustain some of the redactions MHS proposes to protect the privacy interests of nonparties.

### A. **<u>Standards Governing an Intervenor's Access to Sealed Court Documents</u>**

The Court of Appeals has recently articulated the different standards governing challenges to the confidentiality of documents. On this score, the Court stated:

> We apply three distinct standards when considering various challenges to the confidentiality of documents. We apply the factors articulated in <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 783–92 (3d Cir. 1994), when we review orders preserving the confidentiality of discovery materials pursuant to Federal Rule of Civil Procedure 26. But we apply the more rigorous common law right of access when discovery materials are filed as court documents. In addition to recognizing fewer reasons to justify the sealing of court records, the public right of access—unlike a Rule 26 inquiry—begins with a presumption in favor of public access. <u>Goldstein v. Forbes</u> (<u>In re Cendant Corp.</u>), 260 F.3d 183, 192–93 (3d Cir. 2001). Finally, the First Amendment right of public access attaches to, *inter alia*, civil trials. <u>Publicker Indus., Inc. v. Cohen</u>, 733 F.2d 1059, 1061 (3d Cir. 1984).

<u>In re Avandia Marketing, Sales Practices and Products Liability Litigation</u>, 924 F.3d 662, 670 (3d Cir. 2019). Thus, the standard we apply, and the scrutiny various records receive, depends on the type of document that the third party is seeking.

### (1) **<u>Discovery Materials and Motions</u>**

Discovery materials can be shielded by the entry of a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure. In order to obtain a protective order, a party must establish "good cause" for the order, which requires "a showing

4

that disclosure will work a clearly defined and serious injury to the party seeking [to prevent] disclosure. The injury must be shown with specificity." Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not establish good cause. Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). In determining whether a party has established good cause for a protective order, courts must consider a number of factors. In Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994), the Third Circuit set forth a nonexhaustive list of factors to be considered:

> 1) whether disclosure will violate any privacy interests;
> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> 3) whether disclosure of the information will cause a party embarrassment;
> 4) whether confidentiality is being sought over information important to public health and safety;
> 5) whether the sharing of information among litigants will promote fairness and efficiency;
> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> 7) whether the case involves issues important to the public.

Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing Pansy, 23 F.3d at 787-91. The Pansy Court noted that in considering these factors, the district court's analysis "should always reflect a balancing of private versus public interests." Pansy, 23 F.3d at 789.

This analysis also applies to a situation in which a nonparty intervenor seeks to modify an existing confidentiality order and inspect documents filed under seal. Leucadia, 998 F.2d at 166. The party seeking to keep the documents confidential must make a showing in accordance with the criteria identified by the court in Pansy that good cause exists for continued protection of the documents. Id.

### (2) Common Law Right of Access

Additionally, it is well-settled that there is a longstanding common law public right of access to judicial proceedings, both criminal and civil, which includes the right to "inspect and copy public records and documents, including judicial records and documents." Leucadia, 998 F.2d at 161 (internal citations and quotations omitted). This right "antedates the Constitution," Bank of America Nat'l Trust and Savings Ass'n v. Hotel Rittenhouse Associates, 800 F.2d 339 (3d Cir. 1986), and "promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." Littlejohn, 851 F.2d at 678. The right of the public to inspect court documents is dependent upon whether such documents are "judicial records," meaning that the record is "a document that 'has been filed with the court . . . or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." Avandia, 924 F.3d at 672 (quoting In re Cendant Corp., 260 F.3d at 192) (internal quotations omitted).

Once a document is determined to be a "judicial record," a presumption of public access applies. In re Cendant Corp., 260 F.3d at 192-93. On this score, the Third Circuit has held that this presumptive right of access applies to "pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." Id. However, it does not apply to discovery motions and their supporting documents. Leucadia, 998 F.2d at 165. Moreover, the presumption may be rebutted if the party seeking protection can show "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." Avandia, 924 F.3d at 672 (quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (internal quotations omitted)).

### (3) First Amendment

Finally, there is a recognized constitutional right of access to civil proceedings under the First Amendment, including documents involved in those proceedings. Publicker Indus., 733 F.2d at 1071. In determining whether the right of access applies, courts apply a two-prong test, asking: (1) "whether the place and process have historically been open to the press" (the "experience" prong), and (2) "whether public access plays a significant role in the functioning of the particular process in question" (the "logic" prong). N. Jersey Media Group Inc. v. United States, 836 F.3d 421, 429 (3d Cir. 2016) (quoting PG Pub. Co. v. Aichele, 705 F.3d 91, 103 (3d Cir.

2013) (internal quotations omitted)). If both prongs are met, the First Amendment right of access presumptively applies, and this presumption will only be rebutted by a showing of "an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Avandia, 924 F.3d at 673 (quoting Publicker Indus., 733 F.2d at 1073)).

### B. The Documents The Inquirer Seeks Shall Be Unsealed Subject to Minor Redactions Protecting Nonparties to this Litigation.

The documents that The Inquirer seeks, and that MHS contends should be continuously sealed or alternatively redacted, fall under the category of "judicial records" subject to the common law right of access. (Docs. 294-96, 298-99). These documents relate to motions for summary judgment, and the Third Circuit has held that the presumptive right of access applies to "pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." In re Cendant Corp., 260 F.3d at 192-93; see also Avandia, 924 F.3d at 672; Leucadia, 998 F.2d at 164.[2] Thus, there is a presumption that these documents

---

[2] MHS vehemently protests that the plaintiffs' motion for summary judgment is not a proper motion for summary judgment, and thus the supporting papers would not fall under the category of "judicial records" subject to the public right of access. However, we note that merits of the plaintiffs' motion are not before us, and thus, we will not decide for the purposes of this motion whether or not the motion for summary judgment is a "proper" motion for summary judgment. Rather, given that these documents were filed in conjunction with the plaintiffs' filing for summary judgment, we will treat these documents as "judicial records" subject to the public right of access.

should be unsealed unless the defendants show that public disclosure of these documents "will work a clearly defined and serious injury to the party seeking closure." Avandia, 924 F.3d at 672 (internal citations omitted). "Specifically, th[e] party [seeking protection] must demonstrate that the material contains the type of information that courts will protect and that there is good cause for continued application of an existing order." In re Gabapentin Patent Litigation, 312 F.Supp.2d 653, 664 (D.N.J. 2004) (citing Publicker, 733 F.2d at 1070-71).

Judged against this analytical paradigm we turn to a consideration of the specific pleadings at issue in this motion.

### (1) Documents 298 and 299

Documents 298 and 299 contain the defendants' brief in support of its motion for summary judgment, supporting exhibits, and its statement of material facts. Much like its opposition to The Inquirer's first motion to unseal in this case, MHS contends that these documents contain information that was given pursuant to a Qualified Protective Order entered in this case, and that the release of this information would harm not only A.B., whose school and medical records are contained in these documents, but the medical providers that disclosed this information. Additionally, MHS seeks to protect the identifying information of its personnel and other nonparties, whose deposition transcripts are contained in these documents.

### (a) Document 298 and Exhibits

With respect to the documents that contain A.B.'s medical records and testimony from third party providers who treated A.B. (Doc. 298, Exs. 14-15, 19, 47-50, and 63-65), MHS contends that the medical providers who disclosed this information will be harmed if these records are unsealed because they have an obligation under the Health Insurance Portability and Accountability Act ("HIPAA") to keep these records confidential. As we have outlined in our memorandum granting The Inquirer's first motion to unseal, HIPAA's general privacy rule "places strict limitations on the ability of health care providers to release a patient's medical records . . . without the consent of the patient." Rodriguez v. City of New Brunswick, 2017 WL 5598217, at *6 (D.N.J. Nov. 21, 2017). While it is undisputed that these records constitute protected health information under HIPAA, the statute provides that:

> A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> > (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
> > (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
> >
> > > (A) The covered entity receives satisfactory assurance ... from the party seeking the information that reasonable efforts have been

> made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
> (B) The covered entity receives satisfactory assurance ... from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1). Entities covered by HIPPA include "(1) a health plan, (2) a health care clearinghouse, and (3) a health care provider." 45 C.F.R. § 160.102.

Here, the third-party providers that disclosed A.B.'s treatment records are undisputedly medical providers within the meaning of the statute. Further, these providers disclosed A.B.'s medical records in compliance with this court's orders, which issued Qualified Protective Orders to protect this information. (Docs. 84, 106, 108). Thus, the medical providers in this case complied with HIPAA when they provided this information pursuant to the court's orders, and there would be no cause of action against these providers for a violation of the statute. This would be so even if A.B.'s parents, the plaintiffs in this case, had not consented to the release of A.B.'s medical records. (Doc. 308-1). Moreover, MHS provides no legal authority for the proposition that these providers would somehow be liable under HIPAA should the court order the unsealing of these documents. Accordingly, the argument that these providers would be harmed by the unsealing of these documents is unavailing and does not meet the showing required by law to justify continued sealing; namely,

11

"that disclosure will work *a clearly defined and serious injury* to the party seeking closure." Avandia, 924 F.3d at 672 (quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (internal quotations omitted))(emphasis added).

MHS also argues that A.B.'s interests would be harmed by the release of her medical records. However, the plaintiffs in this case, A.B.'s parents, have expressly consented to the release of her medical records from these providers. (Doc. 308-1). Indeed, both plaintiffs have signed a "HIPAA Privacy Authorization Form," which provides that the plaintiffs, as A.B.'s personal representatives, have authorized the release of A.B.'s records, whether in the custody of the school or in the custody of third-party providers, to the fullest extent allowable. (Id., at 2, 4). Thus, MHS's concern that A.B.'s interests would be harmed by the unsealing of these records is unpersuasive given the explicit waiver of these privacy interests by A.B.'s representatives.

Finally, MHS asserts that the unsealing of these documents would harm the interests of third parties, particularly MHS personnel or medical providers who were involved with A.B.'s treatment or with decisions about her attendance at MHS. However, we believe that redacting the names of these MHS personnel, rather than allowing the wholesale sealing of these documents, will provide sufficient protection of their interests. Accordingly, because we find that MHS has not shown good cause

for the continued sealing of these documents, we will order these documents unsealed subject to narrowly tailored redactions to protect these third-party interests.

With respect to the exhibits that contain information regarding A.B.'s school records (Doc. 298, Exs. 1, 8, 11-13, and 61-62), we note again that A.B.'s parents have expressly consented to the release of these records. (Doc. 308-1). Thus, as we explained in our memorandum granting The Inquirer's first motion to unseal, even if MHS was considered a "covered entity" under HIPAA, releasing A.B.'s records upon the express consent of her parents would not violate the statute and subject MHS to liability. Moreover, to the extent that MHS asserts that A.B.'s school records are protected from disclosure under the Family Education and Privacy Rights Act ("FERPA"), A.B.'s privacy interests under FERPA lie with her parents until the age of 18. See 34 C.F.R. §§ 99.3-99.5. Accordingly, the plaintiffs' express consent to the release of these records would expel any concerns that MHS has as it relates to disclosure of school records under FERPA, and thus, we will order the unsealing of these documents.

Finally, we recognize that there are some third-party privacy interests at stake with the unsealing of these documents, such as the names and personal information of the third-party providers, MHS personnel, and other individuals. Thus, as with The Inquirer's first motion to unseal, we will order these documents unsealed subject to limited redactions to protect these third-party privacy interests. To this end, MHS

has proposed redactions throughout the exhibits attached to its supporting brief (Doc. 298, 298-1—298-5). However, our review of these redactions reveals that they are somewhat overbroad, seeking to protect more than just the names and personal identifying information of nonparties. Accordingly, we will direct the defendants to provide renewed redactions to these documents, specifically tailoring the redactions to include only the names, personal information (*i.e.* addresses, family information), and any medical treatment information of nonparties.

We reach this conclusion while noting that this is a somewhat closer question since it may be possible through further investigation to tentatively identify some of these third parties by reference to employment histories and job title. The scope of the redactions proposed by the MHS defendants, however, is in our judgment so sweeping, that we cannot justify these additional redactions in light of the presumption of public access which applies here. In re Cendant Corp., 260 F.3d at 192-93. A more narrowly tailored set of redactions supported by a more robust showing of need would be necessary here to justify the continued sealing of this information.

### (b) Document 299

MHS also contends that its statement of material facts should be continuously sealed, as it contains information regarding A.B.'s medical and school records, as well as the testimony of third-party providers. In the alternative, MHS has proposed

redactions to Document 299 to protect this information and the information of nonparties to this case. However, we find that the redactions proposed to shield A.B.'s medical information and school records are inappropriate. As we have explained, the plaintiffs have expressly consented to the release of this information, and thus, there is no need to redact this information from Document 299.[3] With respect to the redactions concerning third-party information, a review of these redactions indicates that MHS has narrowly tailored its redactions in this regard. Accordingly, we will order Document 299 unsealed, subject only to the redactions proposed to protect nonparties names and information.[4]

### (2) Documents 294, 295, and 296

Finally, The Inquirer requests that Documents 294, 295, and 296 be unsealed. These documents consist of the plaintiffs' brief in support of their motion for partial summary judgment and supporting exhibits, which include some of A.B.'s medical records and several deposition transcripts. Unlike the defendants' summary judgment papers, these documents currently contain no redactions.

On this score, as we have explained with respect to Documents 298 and 299, to the extent Documents 295 and 296 contain A.B.'s medical or school records, the defendants have not shown good cause for the continued sealing of these documents.

---

[3] MHS's proposed redactions to A.B.'s school and medical information are redacted in yellow, green, and blue.
[4] The redactions we are sustaining are redacted in orange.

Rather, the plaintiffs' have expressly consented to the release of these records. Accordingly, these documents will be unsealed. (Docs. 295-1, 295-2, 295-4; Doc. 296, at 97-100; Doc. 296-1, at 1-13, 56). Additionally, the deposition transcripts contained in the plaintiffs' summary judgment papers will be unsealed, subject to the redaction of the names of the individuals deposed, along with the names and personal information of any nonparties within the transcripts. (Docs. 295, 295-3; Doc. 296, at 2-96; Doc 296-1, at 14-54, 63-100; Doc. 296-2, at 1-34).

Finally, with respect to the plaintiffs' brief in support of their motion and supporting statement of material facts (Doc. 294), we will unseal this document subject to the limited redaction of third-party identifying information. On this score, because these documents have not yet been redacted, we direct counsel to consult and confer with one another to produce copies of the documents to be unsealed with appropriate, narrowly tailored redactions.

In sum, we recognize that there are third-party privacy interests at stake within these documents. However, much of the information contained in these documents has been expressly released by the plaintiffs, A.B.'s parents, and will not be continuously sealed or subject to redactions by MHS. Accordingly, these documents will be unsealed and shall be redacted in the limited manner we have described above.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE ELLEN WARTLUFT, et al.,** | : | Civil No. 1:16-CV-2145 |
| | : | |
| **Plaintiffs,** | : | |
| | : | **(Judge Jones)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **THE MILTON HERSHEY SCHOOL** | : | |
| **AND SCHOOL TRUST, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## **ORDER**

Accordingly, for the reasons set forth in the accompanying Memorandum Opinion, IT IS HEREBY ORDERED THAT The Inquirer's motion to unseal judicial records (Doc. 303) is GRANTED. IT IS ORDERED THAT:

1. Documents 294, 295, 296, 298, and 299 will be unsealed;

2. To the extent these documents and exhibits contain information that concerns the privacy interests of nonparties to this litigation, these documents shall be unsealed subject to the minimal redactions we have outlined in the accompanying memorandum to protect the interests of third parties;

3. Counsel shall consult and confer regarding the redactions to be made to these documents prior to the documents being unsealed and shall

17

provide the court with appropriate, narrowly tailored redactions to these documents within **30 days** from the date of this order.

4. We recognize the significance and gravity of these judgments for all parties. Therefore, IT IS FURTHER ORDERED as follows: Implementation of this order will be STAYED for 10 days in order to allow the litigants the opportunity to review the court's order and seeks further judicial review of this order, if they deem it appropriate. Furthermore, with respect to redacted records, if the parties do not seek further review of this decision, they shall tender copies of stipulated, redacted records to the clerk for release on the public docket within 30 days from the date of this order.

So ordered this 6th day of March 2020.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge